IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**EHIREMEN BENNARD ERIAKHA**                                            **PLAINTIFF**

**V.**                                            **NO. 3:25-CV-250-DMB-RP**

**UNIVERSITY OF MISSISSIPPI;**
**DR. YI YANG; DR. MARIE**
**BARNARD; DR. ANNETTE**
**KLUCK; and DR. YINAN HUANG**                                  **DEFENDANTS**

**ORDER**

Ehiremen Bennard Eriakha seeks a temporary restraining order against the University of Mississippi and some of its faculty members requiring them to preserve and restore his enrollment and academic standing at the University, as well as a preliminary injunction providing the same. Because Eriakha fails to meet the procedural requirements for such relief, neither a temporary restraining order nor a preliminary injunction will be granted.

**I**
**Procedural History**

On August 25, 2025, Ehiremen Bennard Eriakha filed a pro se "Complaint and Request for Injunction Jury Trial Demanded" in the United States District Court for the Northern District of Mississippi against the University of Mississippi, Dr. Yi Yang, Dr. Marie Barnar, Dr. Annette Kluck, and Dr. Yinan Huang, asserting federal and state law claims premised on allegations that the defendants "retaliate[d] against him for engaging in protected speech, petitioning activity, and association … with his twin brother."[1] Doc. #1 at 14. The same day, Eriakha filed a motion to

---

[1] Eriakha utilized a form to draft his thirty-three-page complaint but it is difficult to fully glean the causes of action he alleges. In the "Basis for Jurisdiction" section, the constitutional provisions" he lists are "First Amendment," Equal Protection Clause of the Fourteenth Amendment," and "Due Process Clause of the Fourteenth Amendment;" the federal statutes he lists are 42 U.S.C. § 1983, and "Title VI [sic] of the Civil Rights Act of 1964;" and the only state

proceed in forma pauperis without paying fees or costs. Doc. #2. In an order granting the motion two days later, United States Magistrate Judge Roy Percy directed the Clerk of the Court "to issue process for the defendants, which the U.S. Marshal must serve in accordance with 28 U.S.C. § 1915(d)."[2] Doc. #5. The next day, on August 28, the Clerk of the Court issued a summons for each defendant pursuant to Judge Percy's order, Doc. #6, and forwarded them to the U.S. Marshal for service.

On September 8, Eriakha filed (1) an "Urgent and Necessitous Motion for Temporary Restraining Order" ("TRO Motion"), Doc. #7; (2) "Plaintiff's Certification of Notice Pursuant to Fed. R. Civ. P. 65(B)(1)(B)" ("Notice Certification"), Doc. #8; (3) an "Urgent and Necessitous Motion for Preliminary Injunction" ("PI Motion"), Doc. #9; (4) "Plaintiff's Motion for Leave to Exceed Page Limit" ("Page Limit Motion"), Doc. #10; (5) a "Declaration of Ehiremen Bennard Eriakha in Support of Motion for Preliminary Injunction and Temporary Restraining Order" ("Declaration"), Doc. #11; and (6) "Plaintiff's Motion to Waive or Reduce Security Requirement Under Rule 65(c)" ("Security Motion"), Doc. #12.

Based on the docket to date, none of the defendants have been served with process.

## II
## Rule 65

Federal Rule of Civil Procedure 65 governs requests for injunctions and temporary restraining orders. With respect to a temporary restraining order, the rule instructs:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney *only* if:

---

law claim he lists is breach of contract. Doc. #1 at 3. In the "Statement of Claim" section, as the facts underlying his claims, he states, "Count I – Retaliation (*First Amendment to the U.S. Constitution, via 42 U.S.C. § 1983)*," followed by a separate "Allegations" section which includes multiple subheadings and sections within it. *Id.* at 5–13.

[2] The order continues, "The United States Marshal Service will serve process upon the defendants under 28 U.S.C. § 1915(d), using good faith efforts to identify and locate the proper individual and obtain service by all approved alternative means as provided by FED.R.CIV.P. 4 and Miss.R.Civ.P. 4 if service by mail is unsuccessful." Doc. #5.

>(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
>(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)–(B) (emphasis added). Regarding a preliminary injunction, Rule 65 makes clear that "[t]he court may issue a preliminary injunction *only* on notice to the adverse party." Fed. R. Civ. 65(a)(1) (emphasis added).

The "specific requirements of Rule 65(b) are not mere technical legal niceties. They are strongly worded mandatory provisions which should be respected." *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 324 (7th Cir. 1984). Thus, the requirements of "Rule 65 must be strictly complied with." *Commercial Sec. Bank v. Walker Bank & Trust Co.*, 456 F.2d 1352, 1356 (10th Cir. 1972); *see Emerging Vision, Inc. v. Glachman*, No. 10-80734-CIV, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) ("[A] party must strictly comply with [Rule 65's] requirements. They are not mere technicalities, but establish minimum due process.") (internal quotation marks omitted).

III
**Discussion**

**A. PI Motion**

Though Eriakha titles the PI Motion as "urgent and necessitious," Doc. #9 at 1, the Court lacks authority at this point to grant the relief sought in the PI Motion because Eriakha has not given the defendants the requisite notice. The PI Motion's certificate of service states only that Eriakha filed the PI Motion "with the Clerk of Court," *id.* at 4, and Eriakha offers nothing to demonstrate that he otherwise provided the defendants notice of it. *See* Fed. R. Civ. 65(a)(1) ("The court may issue a preliminary injunction *only* on notice to the adverse party.") (emphasis added). Consequently, the PI Motion will be denied.

3

### B. Page Limit Motion

In the Page Limit Motion, Eriakha requests "leave to exceed the 35-page limit for supporting memoranda set forth in Local Rule 7(b)(5)" since "[t]he supporting Memorandum Brief [in support of his PI Motion] currently extends to 56 pages, exceeding the default page limit." Doc. #10 at 2.

Local Rule 7(b)(5) dictates that a "movant's original and rebuttal memorandum briefs together may not exceed a total of 35 pages." But the docket indicates Eriakha did not file a memorandum brief in support of the PI Motion. Regardless, the filing of a separate memorandum brief is not required with respect to urgent or necessitious matters. *See* L.U. Civ. R. 7(b)(4) ("At the time the motion is served, *other than motions* or applications that may be heard ex parte or those *involving necessitous or urgent matters*, … movant must file a memorandum brief in support of the motion.") (emphases added). Where no memorandum brief is required, it follows that no page limit applies (unless the Court orders such). Even if Local Rule 7(b)(5)'s page-limit requirement applied to any memorandum brief filed in support of the PI Motion,[3] the Page Limit Motion still would be denied since, as indicated above, the PI Motion will be denied.

### C. TRO Motion

"There are four prerequisites for the extraordinary relief of … [a] temporary restraining order …. A court may grant such relief only when the movant establishes that: (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of [such relief] will

---

[3] Also, if a memorandum brief was required, Local Rule 7(b)(4) requires a memorandum brief to be filed at the same time a motion is filed.

4

not disserve the public interest." *CompuCom Sys., Inc. v. WJ Glob., LLC*, No. 3:14-cv-3625, 2014 WL 5032747, at *1 (N.D. Tex. Oct. 8, 2014) (quoting *Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir. 1987)). "[I]f a party fails to meet any of the four requirements, the court cannot grant the TRO." *Id.*

Before engaging in this four-prong merits analysis in this case, the Court first must determine whether Eriakha has complied with Rule 65's procedural requirements. *See generally Ray v. La. Dep't of Pub. Safety and Corr.*, No. 16-810, 2016 WL 5875947, at *2 (W.D. La. Oct. 7, 2016) (compliance with Rule 65's procedural requirements "a threshold matter").

Eriakha seeks a temporary restraining order against the defendants ex parte—without notice to the defendants. *See* Doc. #8 at 2 ("Plaintiff respectfully requests that the Court consider the Motion for Temporary Restraining Order without prior notice to Defendants, pursuant to Rule 65(b)(1)."). So, to even be considered by the Court, the TRO Motion must be supported by (1) specific facts in an affidavit or a verified complaint, and (2) written certification of Eriakha's efforts to provide notice to the defendants or reasons why notice should not be required. Fed. R. Civ. P. 65(b)(1)(A)–(B)  Eriakha fails in both respects.

### 1. Notice

As to his "efforts" to notify the defendants of the TRO Motion, Eriakha only states in his Notice Certification:

> [He] has not personally served or directly provided notice of this Motion for Temporary Restraining Order to Defendants. On August 27, 2025, this Court granted [his] motion to proceed in forma pauperis and directed the United States Marshals Service to effect service of process on all named Defendants. [He] therefore relies on the Court-order service process and is unable to provide independent notice.

Doc. #8 at 2.

5

As an initial matter, the Court questions whether it should consider the Notice Certification at all. Nowhere in the document does Eriakha expressly certify anything. And unlike his Declaration, Eriakha's Notice Certification is not signed under penalty of perjury. *See* 28 U.S.C. § 1746 ("Wherever … any matter is required or permitted to be supported, evidenced, established, or proved by the … certificate … in writing of the person making the same …, such matter may, with like force and effect, be supported … by the unsworn … certificate … in writing of such person which is subscribed by him, as true under penalty of perjury, and dated.").

Regardless, Eriakha's reliance on the Marshals Service to demonstrate his efforts to serve the TRO Motion on the defendants is patently misplaced. Based on Eriakha's in forma pauperis status, Judge Percy directed the U.S. Marshal to serve only *process* on the defendants, not the TRO Motion. Doc. #5; *see* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all *process*.") (emphasis added). Besides, the definition of "process" generally does not include a motion. *See Process*, Black's Law Dictionary (12th ed. 2024) (defining "process" as "[a] summons or writ, esp. to appear or respond in court."). Nor is it reasonable for Eriakha to expect the Marshals Service would serve the TRO Motion on the defendants when the TRO Motion was filed two weeks after he filed his complaint and a week after Judge Percy granted his in forma pauperis motion. In short, Eriakha fails to show any efforts to effectuate service of the TRO Motion on the defendants.

Similarly, the reasons Eriakha offers in his Notice Certification as to why notice should not be required are unpersuasive. He submits:

> Because [he] is proceeding pro se and in forma pauperis, service is being carried out by the U.S. Marshals under court order, requiring additional notice at this stage would be impracticable. Moreover, the irreparable harms [he] faces—including constructive expulsion, loss of lawful F-1 visa status, and loss of access to healthcare and education—are immediate and ongoing. Delaying relief until service is completed would defeat the purpose of a Temporary Restraining Order.

6

Doc. #8 at 2. As explained above, the U.S. Marshal was not charged with serving the TRO Motion. More, Eriakha's bald assertion that requiring notice—additional or otherwise—would be impracticable is wholly unconvincing since he fails to explain why such would be the case.

Given Eriakha's failure to strictly comply with Rule 65's notice requirements alone, the TRO Motion must be denied. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974) (Rule 65(b)'s "stringent restrictions" regarding "the availability of … temporary restraining orders [without notice] reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute."); *Phillips v. Charles Schreiner Bank*, 894 F.2d 127, 131 (5th Cir. 1990) (noting Rule 65(b)'s "stringent restrictions" apply to ex parte temporary restraining orders); *see also Austin v. Altman*, 332 F.2d 273, 275 (2d Cir. 1964) ("district court should scrupulously observe the requirements of Rule 65 in the delicate business of granting temporary restraining orders.").

### 2. Specific facts

Since Eriakha failed to satisfy Rule 65(b)(1)(B)'s notice requirements, the Court can properly deny the TRO Motion without addressing whether Eriakha complied with Rule 65(b)(1)(A)'s specific facts requirement. However, because Eriakha also failed to comply with that subsection of the rule, an additional basis to deny the TRO Motion exists.

As quoted above, Rule 65(b)(1)(A) mandates that Eriakha's TRO Motion be supported by "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to [him] before the adverse party [defendants here] can be heard in opposition." Given Eriakha's complaint is not verified, the Court presumes he

relies on his Declaration to fulfill the specific facts requirement. But his four-page Declaration[4] merely repeats some, but not all, the factual allegations in his thirty-three-page complaint, and includes conclusory statements of the harm he contends he has suffered due to the defendants' alleged conduct. *See generally* Doc. #11. Although in the Declaration Eriakha claims he will suffer irreparable harm because his downgrade from full time status to provisional status "declare[d] [him] ineligible for Graduate Assistantship reappointment" and "placed [him] in immediate jeopardy of losing lawful F-1 visa status, health insurance coverage, and the ability to continue [his] doctoral studies," *id.* at 2, 3; he does not indicate how or why such alleged harm will result before the defendants could be heard in opposition.[5] Indeed, according to his complaint and his TRO Motion, his status as a full time student was changed to provisional status by the University before he filed his complaint on August 25. *See, e.g.*, Doc #1 at 4 ("August 21, 2025—Dr. Marie Barnard issued a memorandum recommending that [he] be reduced to provisional status" and "August 22, 2025—Dean Annette Kluck ratified the downgrade to provisional status."); Doc. #7 at 2 ("On August 21-22, 2025, Defendants downgraded [him] to provisional status.").[6] Eriakha seems to acknowledge this to the extent he seeks to enjoin the defendants "from enforcing the August 21-22, 2025 reclassification to 'provisional status.'" *Id.* at 4. Because the change from full time to provisional status—which Eriakha claims is the root of his harms—has already occurred, no reason exists not to allow the defendants the opportunity to be heard in response to the allegations Eriakha contends support his request for temporary injunctive relief.

---

[4] The last page contains only Eriakha's certificate of service. Doc. #4 at 4.

[5] Eriakha also references documents in the Declaration not attached to the Declaration. To the extent he references and relies on documents attached to the TRO Motion, those documents are not properly authenticated. To the extent the documents attached to the TRO Motion are not attached to his unverified complaint, the scope of the injunctive relief he seeks appears to impermissibly be greater than the scope of the relief sought in his complaint.

[6] *See also* Doc. #9 at 2 ("On August 21-22, 2025, Defendants downgraded [him] to provisional status."); Doc. #11 at 2 ("On August 21-22, 2025, I was downgraded to provisional status.").

8

For these reasons, Eriakha fails to provide sufficient factual support for the temporary injunctive relief he requests and thus fails to satisfy the requirements of Rule 65(b)(1)(A).

### 3. Result

Having failed to fulfill Rule 65(b)'s strict requirements as it concerns his TRO Motion, Eriakha's TRO Motion will be denied.

### D. Security Motion

Rule 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In the Security Motion, Eriakha requests that the Court "[w]aive the security requirement under Rule 65(c); or [in] the alternative, impose only a nominal bond (e.g., $1.00). Doc. #12 at 1–2. Since the Court will not reach the issue of security for the reasons explained above, the Security Motion will be denied.

### IV
### Conclusion

The TRO Motion [7], the PI Motion [9], the Page Limit Motion [10], and the Security Motion [12] all are **DENIED without prejudice**.

**SO ORDERED**, this 11th day of September, 2025.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

9