# UNITED STATES DISTRICT COURT

RECEIVED

SEP 1 8 2025

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

for the

Northern District of Mississippi

Oxford Division

| | | |
|---|---|---|
| Ehiremen Bennard Eriakha | ) | Case No.   3:25-cv-00250 |
| *Plaintiff(s)* | ) | |
| -v- | ) | |
| | ) | |
| University of Mississippi; Dr. Yi Yang; Dr. | ) | |
| Marie Barnard; Dr. Annette Kluck; Dr. Yinan | ) | |
| Huang | ) | |
| *Defendant(s)* | ) | |

## DECLARATION OF EHIREMEN BENNARD ERIAKHA IN SUPPORT OF MOTION

## FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1

I, Ehiremen Bennard Eriakha, declare under penalty of perjury pursuant to *28 U.S.C. § 1746* that the following is true and correct:

## I.  BACKGROUND

1. I am the Plaintiff in this action. I submit this sworn Declaration in support of my Urgent and Necessitous Motion for Temporary Restraining Order ("TRO") and Renewed Motion for Preliminary Injunction. This Declaration establishes the factual record necessary for the Court's consideration of emergency relief to preserve the status quo ante and prevent irreparable harm.

2. I am an international Ph.D. student in the Department of Pharmacy Administration at the University of Mississippi. Since enrolling in 2023, I have maintained a perfect 4.0 GPA, presented my research at national conferences, and received multiple academic honors. No academic deficiencies or disciplinary issues have ever been recorded against me, and I have continuously remained in good standing. True and correct copies of my academic transcript and awards are attached as **Exhibit W**.

## II.  CONTINUOUS AND ESCALATING RETALIATORY SEQUENCE

3. **Protected Expectations Established**: On July 19, 2024, I executed a department-approved Mentor–Mentee Agreement guaranteeing one-on-one mentorship. This Agreement formally established clear expectations for my doctoral training and professional development and created a stable framework on which I reasonably relied. A true and correct copy of the signed Mentor–Mentee Agreement is attached as **Exhibit A**.

4. **Unilateral Dismantling and Coercive Oversight**: On June 13, 2025, Defendant Dr. Yi Yang unilaterally dismantled my one-on-one Mentor–Mentee Agreement, imposed involuntary co-

mentorship, and began personally attending my research meetings. This abrupt and selective change disrupted the express terms and settled expectations created by the signed Mentor-Mentee agreement, introduced coercive oversight, and undermined the psychological safety essential to effective mentoring. I promptly submitted written objections documenting these concerns. True and correct copies of my objections and correspondence are attached as **Exhibits B, D, E.**

5. **Misuse of the Abilities Transcript ("AT")**: On June 30, 2025, Defendants issued a memorandum alleging "failure" to submit my Abilities Transcript ("AT")—a tool expressly designated by University policy as developmental and non-disciplinary—and threatened to reclassify me to "provisional status". This punitive use of the AT represented a substantial departure from its intended purpose and created a wholly unfounded appearance of academic deficiency, providing strong evidence of retaliatory motive. True and correct copies of the AT form, guide, and memorandum are attached as **Exhibits P, Q, C.**

6. **Due Process Violations**:

   a. On July 9, 2025, I submitted a detailed written letter contesting the June 30 memorandum as factually false, procedurally defective, and retaliatory. In the letter, I specifically requested withdrawal of the memorandum and restoration of my original one-on-one mentoring arrangement. I copied the letter to all relevant administrators, including the Provost, thereby exhausting available internal remedies. The University disregarded my letter entirely, which denied me a meaningful opportunity to be heard—the core requirement of procedural due process. A true and correct copy of my letter is attached as **Exhibit D.**

3

b. On August 21–22, 2025, Defendants downgraded me to "provisional" status. The downgrade memoranda did not identify any documented academic deficiency and were issued during an active academic term, despite the University's M-Book clearly stating that such changes occur between semesters or enrollment periods. True and correct copies of the downgrade memoranda, related correspondence, and the University's M-Book provisions are attached as **Exhibits J–M, R**.

c. Within hours of the downgrade, Defendant Dr. Yi Yang notified me that I am "not eligible" for Graduate Assistantship based on my new "provisional status". This assistantship termination effectively eliminated my stipend, tuition remission, and health insurance— my sole sources of financial support necessary for my livelihood, maintaining full-time enrollment, and F-1 immigration status. A true and correct copy of the assistantship termination correspondence is attached as **Exhibit L**.

## III.  IMMEDIATE AND IRREPARABLE HARM

7. **Loss of Lawful Immigration Status**: Termination of my assistantship eliminated the funding source listed on my SEVIS Form I-20. Under *8 C.F.R. § 214.2(f)*, maintaining adequate funding and full-time enrollment is a mandatory condition of lawful F-1 status. This disruption places me at imminent risk of being declared out of status and having my SEVIS record terminated unless my standing and funding are promptly restored.

8. **Enrollment and Educational Disruption**: As a direct result of my downgrade to "provisional status" and resulting loss of tuition remission, on September 15, 2025, the Office of the University Bursar issued a Balance Notice for $16,300.69 (**Exhibit V**). If left unresolved, this balance will trigger automatic enrollment holds that will prevent future registration and other

4

critical functions, potential administrative withdrawal, and cascading consequences that further imperil my F-1 lawful immigration status.

9. **Financial Crisis and Housing Instability**: As a direct result of my downgrade to "provisional status" and resulting loss of stipend, I am now more than one month in arrears on rent, currently facing imminent eviction, and unable to meet basic living expenses, including food and groceries. These conditions threaten my housing security, physical well-being, and ability to focus on coursework and research—compounding the irreparable harm already underway.

10. **Reputational and Psychological Harm**: The "provisional status" designation places a negative notation on my academic record, inflicts reputational damage that may impair current and future academic and professional opportunities, and exacerbates psychological distress with each passing day.

11. **Loss of Standing**: If forced to leave the United States, I would lose standing to pursue this case, be unable to participate in discovery or hearings, and risk having my claims declared moot—effectively denying me an opportunity for judicial redress.

These harms, hardships, and uncertainties are ongoing, escalating, and cannot be remedied by monetary damages. They represent precisely the type of injury that Temporary Restraining Orders and Preliminary Injunctions are designed to prevent, warranting immediate judicial intervention.

## IV. NOTICE OF SERVICE UNDER RULE 5 (ON-NOTICE PROCEEDING)

Pursuant to *Fed. R. Civ. P. 5(b)(2)(C)* and *28 U.S.C. § 1746*, I certify under penalty of perjury that on September 18, 2025, I served true and correct copies of this Declaration with Exhibits A–T, V, W attached, together with my Temporary Restraining Order and Preliminary Injunction motions, and supporting Memorandum of Law on the University of Mississippi Office of General Counsel (for the University and all official-capacity Defendants) and on each individual-capacity

5

Defendant at their respective campus office addresses by U.S. Mail, first-class, postage prepaid. Service is deemed complete upon mailing under *Rule 5(b)(2)(C)*.

A true and correct copy of the Proof of Mailing is attached as **Exhibit X**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of September, 2025, in Oxford, Mississippi.

Ehiremen Bennard Eriakha

Plaintiff, Pro Se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

## CERTIFICATE OF SERVICE

Pursuant to *Fed. R. Civ. P. 5(b)(2)(C), Fed. R. Civ. P. 65(b)(1)(B),* and *28 U.S.C. § 1746*, I certify under penalty of perjury that on September 18, 2025, I served a true and correct copy of:

- Urgent and Necessitous Renewed Motion for Temporary Restraining Order (TRO)
- Urgent and Necessitous Renewed Motion for Preliminary Injunction
- Memorandum of Law in Support of Preliminary Injunction
- Declaration of Ehiremen Bennard Eriakha in Support of TRO and Preliminary Injunction
- Notice of Service under *Rule 5* and, in the alternative, Certification under Rule *65(b)(1)(B)*
- Motion for Leave to Exceed Page Limit
- Motion to Waive Security Requirement
- Motion and Notice to Correct the Record
- Declaration in Support of Motion and Notice to Correct the Record
- Verified Pleading Declaration (Verification of Complaint)
- Exhibits A–T, V, W

On the following recipients by **U.S. Mail, first-class, postage prepaid** (service complete upon mailing under *Rule 5(b)(2)(C)*):

**The University of Mississippi and all Official-Capacity Defendants:**

- **Office of General Counsel**

  University of Mississippi,

  209 Lyceum,

  University, MS 38677

**Individual-Capacity Defendants (Campus Office Address):**

- **Dr. Yi Yang**

    Chair, Department of Pharmacy Administration

    University of Mississippi, School of Pharmacy

    232 Faser Hall,

    University, MS 38677

    yiyang@olemiss.edu

- **Dr. Marie Barnard**

    Graduate Program Coordinator, Department of Pharmacy Administration

    University of Mississippi, School of Pharmacy

    234 Faser Hall,

    University, MS 38677

    mbarnard@olemiss.edu

- **Dr. Annette Kluck**

    Dean of the Graduate School

    University of Mississippi, Graduate School

    University, MS 38677

    askluck@olemiss.edu

- **Dr. Yinan Huang**

    Faculty Member, Department of Pharmacy Administration

    University of Mississippi, School of Pharmacy

    235 Faser Hall,

    University, MS 38677

yhuang9@olemiss.edu

**Clerk of Court (for filing in the record):**

- **Clerk of Court**

U.S. District Court, Northern District of Mississippi – Oxford Division

Federal Building, 911 Jackson Avenue East

Oxford, MS 38655

(Clerk's copy includes **Exhibit U** [previously signed and stamped memorandum] and **Exhibit X** [proof of mailing]).

Courtesy copies were also transmitted by email to the above recipients on September 18, 2025.

Executed this 18th day of September, 2025, in Oxford, Mississippi.

Ehiremen Bennard Eriakha

Plaintiff, Pro Se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com

Exhibit A ~ 07_19_2024 ~ UMSOP Mentor_Mentee Agreement Form Pg 1

## Agreement Between University of Mississippi School of Pharmacy (UMSOP), Pharmacy Administration Department Graduate Students and Their Developmental Mentors

Predoctoral training entails both formal education in a specific discipline and research experience in which the graduate student trains under the supervision of one or more advisors who will mentor the student throughout graduate school. A positive mentoring relationship between the predoctoral student and the developmental mentor is a vital component of the student's preparation for future careers and mentoring roles.

Individuals who pursue a graduate degree are embarking on a path of lifelong learning and are therefore expected to take responsibility for their scientific and professional learning and development from the onset. Graduate students must be in charge and take ownership of their progress through the graduate program. This means seeking guidance and knowledge regarding course requirements, program requirements, policies, and procedures.

Investing deeply in mentoring relationships is one way to take ownership of your journey from consumer to producer of knowledge. Mentoring is defined as:

> a process for the informal transmission of knowledge, social capital, and psychosocial support perceived by the recipient as relevant to work, career, or professional development; mentoring entails informal communication, usually face-to-face and during a sustained period of time, between a person who is perceived to have greater relevant knowledge, wisdom, or experience (the mentor) and a person who is perceived to have less (the protégé). (Bozeman and Feeney, 2007, p. 731)

Mentoring offers the psychological/emotional support, support for setting goals and establishing a career path, support for developing academic knowledge, and access to experience and guidance that can bolster students' sense of self-efficacy (Crisp and Cruz, 2009). Mentorship is positively correlated with success in post-secondary educational settings (Edney, 2019) and can prove instrumental to maximizing opportunities to develop key skills needed to be successful in post-graduate study (Chaparro and Cyrus, 2022). Mentors provide guidance on and knowledge about course requirements and program requirements, policies, and procedures, and will be essential partners in helping you to develop your Individual Development Plans.

Faculty developmental mentors are expected to serve as a scientific and professional role model for the graduate student. In addition, the mentor offers encouragement as the graduate student completes the annual Abilities Transcript and facilitates the experiences and professional skills development essential for a broad set of career paths.

Acknowledgement: This document was adopted from the AAMC's Compact Between Biomedical Graduate Students and Their Research Advisors, January 2017

Exhibit A ~ 07_19_2024 ~ UMSOP Mentor_Mentee Agreement Form Pg 2

**Responsibilities & Expectations of UMSOP Pharmacy Administration Department Graduate Students (Mentee)**

- **I acknowledge that mentorship is a reciprocal relationship and that I must do my part to maintain it.** This relationship will provide the necessary supports to ensure that I am successful in my graduate program.

- **I acknowledge that I have the primary responsibility for the successful completion of my degree.** I will be committed to my graduate education and will demonstrate this by my efforts in the classroom, the research workspace, and all other related academic and professional activities. I will maintain a high level of professionalism, self-motivation, initiative, engagement, scientific curiosity, and ethical standards, including complying with institutional and research group standards for contributing to an inclusive research environment.

- I will meet regularly with my developmental mentor to provide updates on the progress and results of my course work, research, and professional and career development activities. **I will be responsible for reaching out and scheduling these meetings with my development mentor.**

- **I will be a good citizen.** I agree to take part in shared research responsibilities and will use department resources carefully and frugally. I will maintain a safe and clean work space. I will be respectful of, tolerant of, and work collegially with all department personnel. I will be an active contributing member to all team efforts and collaborations and will respect individual contributions. I will also contribute to an environment that is safe, equitable, and free of harassment.

- **I will demonstrate respect for all individuals without regard to age, sex, gender, race, color, national origin, religion, disability or sexual orientation, and I will cultivate a culture of inclusivity within and outside the department.**

- **I will be knowledgeable of the policies and requirements of my graduate program, graduate school, and institution, such as policies on work hours, medical leave, and vacation, policies on authorship, and policies on attendance at professional meetings.** I will commit to meeting these requirements in the appropriate time frame and will abide by all institutional policies and procedures.

- **I will attend and actively participate in seminars, thesis/dissertation proposals/defenses, journal clubs that are part of my educational program, as my schedule allows.** To enhance research, leadership, and additional professional skills, I will seek out other enrichment opportunities, such as participation in professional organizations and meetings, student representation on institutional committees, and coordination of departmental events.

2

Exhibit A ~ 07_19_2024 ~ UMSOP Mentor_Mentee Agreement Form Pg 3

- **I will be knowledgeable of all institutional research policies.** I will comply with all institutional safety practices and human-research policies. I will participate in my institution's Responsible Conduct of Research Training Program and practice the guidelines presented therein while conducting my research. I will also seek input on and comply with institutional policies regarding my research design and data analysis.

- **I acknowledge that I have the primary responsibility for the development of my own career.** I recognize that I need to explore career opportunities and paths that match and develop my individual skills, values, and interests to achieve my desired career goals. **I understand that I should use the Abilities Transcript and the Individual Development Plan to help me define my career goals and develop my training plan.** I will seek guidance throughout my graduate education from my developmental mentor, thesis/dissertation advisor, academic advisor, career counseling services, thesis/dissertation committee, other mentors, and any other resources that can offer advice on career planning and the wide range of career opportunities available.

**Responsibilities & Expectations of Developmental Mentor**

- **I acknowledge that mentorship is a reciprocal relationship and that I must do my part to maintain it. Throughout the graduate student's time in our program, I will be supportive, equitable, accessible, encouraging, and respectful.** I will foster the graduate student's professional confidence and encourage intellectual development, critical thinking, curiosity, and creativity. I will continue my interest and involvement as the student moves forward into a career.

- I will be committed to meeting one-on-one with the student on a regular basis. I will regularly review the student's progress and provide timely feedback and goal-setting advice.

- I will facilitate an environment that is intellectually stimulating, emotionally supportive, safe, equitable, and free of harassment.

- **I will demonstrate respect for all graduate students as individuals without regard to age, sex, gender, race, color, national origin, religion, disability or sexual orientation, and I will cultivate a culture of inclusivity among the entire department.**

- **I will not require the graduate student to perform tasks that are unrelated to the training program and professional development.**

- **I will expect the graduate student to share common graduate student responsibilities and use resources carefully and frugally.**

- **I will discuss with the student intellectual policy issues regarding disclosure, patent rights, and publishing research discoveries.**

Exhibit A ~ 07_19_2024 ~ UMSOP Mentor_Mentee Agreement Form Pg 4

- **I will expect the graduate student to abide by policies and requirements of the graduate program, graduate school, and institution.** These policies include but are not limited to policies on work hours, medical leave, and vacation, policies on authorship, and policies on attendance at professional meetings. I will encourage the graduate student to discuss these policies with appropriate advisors.
- **I will encourage the graduate student to attend and present their research at a minimum of one scientific/professional meeting.**
- **I will promote the training of the graduate student in professional skills needed for a successful career.** These skills include but are not limited to oral and written communication, grant writing, management and leadership, collaborative research, responsible conduct of research, teaching, and mentoring. I will encourage the student to seek opportunities to develop skills in other areas, even if not specifically required by the student's program. I will also encourage the graduate student to seek input from multiple mentors such as their thesis/dissertation advisor and teaching/research assistantship advisor.
- **I will facilitate an environment in which the student can discuss and explore career opportunities and paths that match their skills, values, and interests and be supportive of their career path choices.** I will be accessible to give advice and feedback on career goals.
- **I will work with the student on their Abilities Transcript and Individual Development Plans to help define career goals and identify training milestones.**

By signing this document, the developmental mentor and the graduate student agree to each other's responsibilities and expectations.

_____

Graduate Student (Mentee) Signature & Date

_____

Developmental Mentor (Mentor) Signature & Date

4

Exhibit A ~ 07_19_2024 ~ UMSOP Mentor_Mentee Agreement Form Pg 5

## Agreement Between University of Mississippi School of Pharmacy (UMSOP), Pharmacy Administration Department Graduate Students and Their Developmental Mentors

Predoctoral training entails both formal education in a specific discipline and research experience in which the graduate student trains under the supervision of one or more advisors who will mentor the student throughout graduate school. A positive mentoring relationship between the predoctoral student and the developmental mentor is a vital component of the student's preparation for future careers and mentoring roles.

Individuals who pursue a graduate degree are embarking on a path of lifelong learning and are therefore expected to take responsibility for their scientific and professional learning and development from the onset. Graduate students must be in charge and take ownership of their progress through the graduate program. This means seeking guidance and knowledge regarding course requirements, program requirements, policies, and procedures.

Investing deeply in mentoring relationships is one way to take ownership of your journey from consumer to producer of knowledge. Mentoring is defined as:

a process for the informal transmission of knowledge, social capital, and psychosocial support perceived by the recipient as relevant to work, career, or professional development; mentoring entails informal communication, usually face-to-face and during a sustained period of time, between a person who is perceived to have greater relevant knowledge, wisdom, or experience (the mentor) and a person who is perceived to have less (the protégé). (Bozeman and Feeney, 2007, p. 731)

Mentoring offers the psychological/emotional support, support for setting goals and establishing a career path, support for developing academic knowledge, and access to experience and guidance that can bolster students' sense of self-efficacy (Crisp and Cruz, 2009). Mentorship is positively correlated with success in post-secondary educational settings (Edney, 2019) and can prove instrumental to maximizing opportunities to develop key skills needed to be successful in post-graduate study (Chaparro and Cyrus, 2022). Mentors provide guidance on and knowledge about course requirements and program requirements, policies, and procedures, and will be essential partners in helping you to develop your Individual Development Plans.

Faculty developmental mentors are expected to serve as a scientific and professional role model for the graduate student. In addition, the mentor offers encouragement as the graduate student completes the annual Abilities Transcript and facilitates the experiences and professional skills development essential for a broad set of career paths.

Acknowledgement: This document was adopted from the AAMC's Compact Between Biomedical Graduate Students and Their Research Advisors. January 2017

Exhibit A ~ 07_19_2024 ~ UMSOP Mentor_Mentee Agreement Form Pg 6

Responsibilities & Expectations of UMSOP Pharmacy Administration Department Graduate Students (Mentee)

- **I acknowledge that mentorship is a reciprocal relationship and that I must do my part to maintain it.** This relationship will provide the necessary supports to ensure that I am successful in my graduate program.

- **I acknowledge that I have the primary responsibility for the successful completion of my degree.** I will be committed to my graduate education and will demonstrate this by my efforts in the classroom, the research workspace, and all other related academic and professional activities. I will maintain a high level of professionalism, self-motivation, initiative, engagement, scientific curiosity, and ethical standards, including complying with institutional and research group standards for contributing to an inclusive research environment.

- I will meet regularly with my developmental mentor to provide updates on the progress and results of my course work, research, and professional and career development activities. **I will be responsible for reaching out and scheduling these meetings with my development mentor.**

- **I will be a good citizen.** I agree to take part in shared research responsibilities and will use department resources carefully and frugally. I will maintain a safe and clean work space. I will be respectful of, tolerant of, and work collegially with all department personnel. I will be an active contributing member to all team efforts and collaborations and will respect individual contributions. I will also contribute to an environment that is safe, equitable, and free of harassment.

- I will demonstrate respect for all individuals without regard to age, sex, gender, race, color, national origin, religion, disability or sexual orientation, and I will cultivate a culture of inclusivity within and outside the department.

- **I will be knowledgeable of the policies and requirements of my graduate program, graduate school, and institution, such as policies on work hours, medical leave, and vacation, policies on authorship, and policies on attendance at professional meetings.** I will commit to meeting these requirements in the appropriate time frame and will abide by all institutional policies and procedures.

- **I will attend and actively participate in seminars, thesis/dissertation proposals/defenses, journal clubs that are part of my educational program, as my schedule allows.** To enhance research, leadership, and additional professional skills, I will seek out other enrichment opportunities, such as participation in professional organizations and meetings, student representation on institutional committees, and coordination of departmental events.

2

Exhibit A ~ 07_19_2024 ~ UMSOP Mentor_Mentee Agreement Form Pg 7

- **I will be knowledgeable of all institutional research policies.** I will comply with all institutional safety practices and human-research policies. I will participate in my institution's Responsible Conduct of Research Training Program and practice the guidelines presented therein while conducting my research. I will also seek input on and comply with institutional policies regarding my research design and data analysis.

- **I acknowledge that I have the primary responsibility for the development of my own career.** I recognize that I need to explore career opportunities and paths that match and develop my individual skills, values, and interests to achieve my desired career goals. **I understand that I should use the Abilities Transcript and the Individual Development Plan to help me define my career goals and develop my training plan.** I will seek guidance throughout my graduate education from my developmental mentor, thesis/dissertation advisor, academic advisor, career counseling services, thesis/dissertation committee, other mentors, and any other resources that can offer advice on career planning and the wide range of career opportunities available.

Responsibilities & Expectations of Developmental Mentor

- **I acknowledge that mentorship is a reciprocal relationship and that I must do my part to maintain it.** Throughout the graduate student's time in our program, I will be supportive, equitable, accessible, encouraging, and respectful. I will foster the graduate student's professional confidence and encourage intellectual development, critical thinking, curiosity, and creativity. I will continue my interest and involvement as the student moves forward into a career.

- I will be committed to meeting one-on-one with the student on a regular basis. I will regularly review the student's progress and provide timely feedback and goal-setting advice.

- I will facilitate an environment that is intellectually stimulating, emotionally supportive, safe, equitable, and free of harassment.

- I will demonstrate respect for all graduate students as individuals without regard to age, sex, gender, race, color, national origin, religion, disability or sexual orientation, and I will cultivate a culture of inclusivity among the entire department.

- I will not require the graduate student to perform tasks that are unrelated to the training program and professional development.

- I will expect the graduate student to share common graduate student responsibilities and use resources carefully and frugally.

- I will discuss with the student intellectual policy issues regarding disclosure, patent rights, and publishing research discoveries.

3

Exhibit A ~ 07_19_2024 ~ UMSOP Mentor_Mentee Agreement Form Pg 8

- I will expect the graduate student to abide by policies and requirements of the graduate program, graduate school, and institution. These policies include but are not limited to policies on work hours, medical leave, and vacation, policies on authorship, and policies on attendance at professional meetings. I will encourage the graduate student to discuss these policies with appropriate advisors

- I will encourage the graduate student to attend and present their research at a minimum of one scientific/professional meeting.

- I will promote the training of the graduate student in professional skills needed for a successful career. These skills include but are not limited to oral and written communication, grant writing, management and leadership, collaborative research, responsible conduct of research, teaching, and mentoring. I will encourage the student to seek opportunities to develop skills in other areas, even if not specifically required by the student's program. I will also encourage the graduate student to seek input from multiple mentors such as their thesis/dissertation advisor and teaching/research assistantship advisor

- I will facilitate an environment in which the student can discuss and explore career opportunities and paths that match their skills, values, and interests and be supportive of their career path choices. I will be accessible to give advice and feedback on career goals

- I will work with the student on their Abilities Transcript and Individual Development Plans to help define career goals and identify training milestones.

By signing this document, the developmental mentor and the graduate student agree to each other's responsibilities and expectations

_____ 7/19/2024

Graduate Student (Mentee) Signature & Date

_____ 7/19

Developmental Mentor (Mentor) Signature & Date

Exhibit B ~ 06_24_2025 ~ Email thread Abilities Transcript (Dr. Huang, Chair, GPC, Dean) Pg 1

 **THE UNIVERSITY OF MISSISSIPPI**

Ehiremen Eriakha <eberiakh@go.olemiss.edu>

## Developmental meeting for Bennard
34 messages

**Yinan Huang** <yhuang9@olemiss.edu>                                      Wed, Jun 11, 2025 at 3:30 PM
To: Yi Yang <yiyang@olemiss.edu>
Cc: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>

Dear Dr. Yang,
Will you be available tomorrow at around 3pm, as Bennard and I have decided to meet tomorrow at around 3pm to discuss about his IDP and Abilities transcript.

So sorry to ask on a short notice. If not, we are also available tomorrow morning at around 11am-1pm.

Thank you for your support in advance.

Yinan

**Yinan Huang** <yhuang9@olemiss.edu>                                      Wed, Jun 11, 2025 at 3:31 PM
To: Yi Yang <yiyang@olemiss.edu>
Cc: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>

If not, I am also available on Friday. Thank you Dr. Yang and Bennard in advance.

**From:** Yinan Huang
**Sent:** Wednesday, June 11, 2025 3:30 PM
**To:** Yi Yang <yiyang@olemiss.edu>
**Cc:** eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>
**Subject:** Developmental meeting for Bennard

[Quoted text hidden]

**Yi Yang** <yiyang@olemiss.edu>                                           Wed, Jun 11, 2025 at 5:11 PM
To: Yinan Huang <yhuang9@olemiss.edu>
Cc: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>

Hi Yinan and Bennard,

Sorry that I am not available tomorrow or Friday. I can do next Wednesday, from 9:30 – 4:00.

Thanks, Yi

Yi Yang, MD, PhD

Chair and Professor

Exhibit B ~ 06_24_2025 ~ Email thread Abilities Transcript (Dr. Huang, Chair, GPC, Dean) Pg 2

Department of Pharmacy Administration

(662) 915 1062

225 Faser Hall
[Quoted text hidden]

---

**Yinan Huang** <yhuang9@olemiss.edu>                    Wed, Jun 11, 2025 at 5:20 PM
To: Yi Yang <yiyang@olemiss.edu>
Cc: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>

Thanks Dr. Yang for your replies.
I am also available next Wednesday, from 9:30 – 4:00.

@Bennard, please pick the time that works best for you next Wednesday.

Thanks,

Yinan

---

**From:** Yi Yang <yiyang@olemiss.edu>
**Sent:** Wednesday, June 11, 2025 5:11 PM
**To:** Yinan Huang <yhuang9@olemiss.edu>
**Cc:** eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>
**Subject:** RE: Developmental meeting for Bennard

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>           Wed, Jun 11, 2025 at 6:51 PM
To: Yinan Huang <yhuang9@olemiss.edu>
Cc: Yi Yang <yiyang@olemiss.edu>

Dear Dr. Huang,

I hope this message finds you well.

I would like to kindly request that we hold our future meetings virtually moving forward. This format will help ensure greater consistency in our communication and allow me to remain fully engaged regardless of location or scheduling constraints.

Thanks for your understanding

Best regards,
Bennard
[Quoted text hidden]

---

**Yinan Huang** <yhuang9@olemiss.edu>                    Thu, Jun 12, 2025 at 3:30 PM
To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>

Hi Bennard,
Does next Wednesday 1pm work for you? If so, I can update an invite for three of us.

Yinan

Exhibit B ~ 06_24_2025 ~ Email thread Abilities Transcript (Dr. Huang, Chair, GPC, Dean) Pg 3

**From:** Ehiremen Eriakha <eberlakh@go.olemiss.edu>
**Sent:** Wednesday, June 11, 2025 6:51 PM
**To:** Yinan Huang <yhuang9@olemiss.edu>
**Cc:** Yi Yang <yiyang@olemiss.edu>
[Quoted text hidden]

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberlakh@go.olemiss.edu>                    Thu, Jun 12, 2025 at 6:02 PM
To: Yinan Huang <yhuang9@olemiss.edu>
Cc: Yi Yang <yiyang@olemiss.edu>

Dear Dr. Huang,

I hope you're doing well.

I wanted to remind you that the deadline for submitting my abilities transcript is June 15th.

I would like to finalize the required forms, so I can ensure timely submission before the deadline.

If you could let me know a convenient time that works for you tomorrow (Friday, 13th June), I will send out a zoom invite accordingly.

Thank you again for your continued guidance and support.

Best regards,
Bennard

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberlakh@go.olemiss.edu>                    Fri, Jun 13, 2025 at 10:13 AM
To: Yinan Huang <yhuang9@olemiss.edu>
Cc: Yi Yang <yiyang@olemiss.edu>

Dear Dr. Huang,

I hope this message finds you well.

I'm writing to kindly follow up on my previous message regarding the June 15th deadline for submitting my abilities transcript, which happens to be a weekend (Sunday)

I would appreciate it if you could let me know a time that works best for you to meet today so we could finalize the required forms to ensure timely submission. I will send out a zoom invitation accordingly as soon as you confirm your availability.

Thank you again for your ongoing support and guidance.

Best regards,
Bennard
[Quoted text hidden]

---

**Yi Yang** <yiyang@olemiss.edu>                    Fri, Jun 13, 2025 at 1:43 PM
To: "eberlakh@go.olemiss.edu" <eberlakh@go.olemiss.edu>, Yinan Huang <yhuang9@olemiss.edu>, Jen Blakley <jmblakle@olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>

Hi Bennard,

I believe Dr. Huang has been busy with her own work and may not have checked her emails...

Exhibit B ~ 06_24_2025 ~ Email thread Abilities Transcript (Dr. Huang, Chair, GPC, Dean) Pg 4

Moving forward, I will serve as your co-developmental mentor with Dr. Huang. For your developmental meeting, let's plan to meet on June 18 at 1:30 PM in Faser 217. I will send a calendar invite soon. Dr. Huang has requested a delay for you to submit your AT and IDP till June 19th earlier this week, and the request was granted.

I am copying Dr. Barnard, our department GPC, on this email for department records.

@Jen Blakley, please reserve Faser 217 for us on June 18 from 1:30 to 2:30 pm. Thanks!

Thanks, Yi

Yi Yang, MD, PhD

Chair and Professor

Department of Pharmacy Administration

(662) 915 1062

225 Faser Hall

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>     Fri, Jun 13, 2025 at 2:32 PM
To: eriakha b <eriakhab@gmail.com>

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>     Fri, Jun 13, 2025 at 3:26 PM
To: Yi Yang <yiyang@olemiss.edu>
Cc: Yinan Huang <yhuang9@olemiss.edu>, Jen Blakley <jmblakle@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>

Hi Dr. Yang,

Thank you very much for your email. I appreciate your support and your interest in contributing to my professional development.

Dr. Huang had previously informed me of her intention to meet either yesterday or today and expressed flexibility in meeting virtually. Given this, I am surprised by the sudden change in the developmental mentoring arrangement—particularly since I've already established a positive and constructive rapport with Dr. Huang and have found her guidance both helpful and encouraging.

I reviewed the departmental policies and did not see any provision stating that developmental mentors can be reassigned or restructured without mutual agreement between the mentor and mentee. I would appreciate any clarification you could provide regarding this sudden change.

Lastly, I had already communicated my preferred meeting modality with Dr. Huang, and she had kindly expressed flexibility in accommodating that preference.

Thank you again for your time and guidance.

Best regards,
Bennard

Exhibit B ~ 06_24_2025 ~ Email thread Abilities Transcript (Dr. Huang, Chair, GPC, Dean) Pg 5

[Quoted text hidden]

---

**Yinan Huang** <yhuang9@olemiss.edu>                                     Fri, Jun 13, 2025 at 3:53 PM
To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>, Yi Yang <yiyang@olemiss.edu>
Cc: Jen Blakley <jmblakle@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>

Dear Dr. Yang and Bennard,
I am sorry for the delayed responses.

**I am flexible for all the time proposed. I have accepted the invitation to meet.**

Thank you Dr. Yang and Bennard!

Thanks,

Yinan

**From:** Ehiremen Eriakha <eberiakh@go.olemiss.edu>
**Sent:** Friday, June 13, 2025 3:26 PM
**To:** Yi Yang <yiyang@olemiss.edu>
**Cc:** Yinan Huang <yhuang9@olemiss.edu>; Jen Blakley <jmblakle@olemiss.edu>; Marie Barnard
<mbarnard@olemiss.edu>
[Quoted text hidden]

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                            Fri, Jun 13, 2025 at 3:56 PM
To: eriakha b <eriakhab@gmail.com>

[Quoted text hidden]

---

**Yi Yang** <yiyang@olemiss.edu>                                         Fri, Jun 13, 2025 at 4:07 PM
To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>
Cc: Yinan Huang <yhuang9@olemiss.edu>, Jen Blakley <jmblakle@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>

Hi Bennard,

The change in your developmental mentor structure was approved by all tenured faculty recently in the department to
support Dr. Huang's professional development as a faculty member.

I just spoke with Dr. Huang, and she confirmed that she planned for your developmental meeting to be in person.

Thanks, Yi

Yi Yang, MD, PhD

Chair and Professor

Department of Pharmacy Administration

(662) 915 1062

Exhibit B ~ 06_24_2025 ~ Email thread Abilities Transcript (Dr. Huang, Chair, GPC, Dean) Pg 6
225Transcript_Bennard) Pg 1

**From:** Ehiremen Eriakha <eberiakh@go.olemiss.edu>
**Sent:** Friday, June 13, 2025 3:27 PM
**To:** Yi Yang <yiyang@olemiss.edu>
**Cc:** Yinan Huang <yhuang9@olemiss.edu>; Jen Blakley <jmblakle@olemiss.edu>; Marie Barnard <mbarnard@olemiss.edu>

[Quoted text hidden]

[Quoted text hidden]

---

**Yinan Huang** <yhuang9@olemiss.edu>                                    Fri, Jun 13, 2025 at 4:45 PM
To: Yi Yang <yiyang@olemiss.edu>, "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>
Cc: Jen Blakley <jmblakle@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>

Thanks Dr. Yang for taking a lead in organizing it so well and supporting me and Bennard in the developmental mentor meeting.
Bennard, we look forward to discussing with you in person at Faser 217 on June 18 from 1:30 to 2:30 pm for your developmental mentoring meeting.

Have a good weekend!

Thanks,

Yinan

**From:** Yi Yang <yiyang@olemiss.edu>
**Sent:** Friday, June 13, 2025 4:07 PM
**To:** eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>
**Cc:** Yinan Huang <yhuang9@olemiss.edu>; Jen Blakley <jmblakle@olemiss.edu>; Marie Barnard <mbarnard@olemiss.edu>
**Subject:** RE: Developmental meeting for Bennard

[Quoted text hidden]

---

**Yinan Huang** <yhuang9@olemiss.edu>                                    Fri, Jun 13, 2025 at 4:53 PM
To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>
Cc: Yi Yang <yiyang@olemiss.edu>

Hi Bennard,
I am sorry that I missed this message. **Just to clarify, as discussed with Dr. Yang yesterday, the developmental meeting will be preferred as in person meeting.**
**However, I am flexible for the research meeting to support your publication of IDS RA aim 1 as virtual given the need to share SAS and R coding on the screen.**

Again, I thank you for proactively communicating with me on this and I am apologized if any miscommunication between us yesterday.

Thanks Bennard!

Best regards,

Yinan

**From:** Ehiremen Eriakha <eberiakh@go.olemiss.edu>
**Sent:** Friday, June 13, 2025 10:13 AM
[Quoted text hidden]

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                                   Fri, Jun 13, 2025 at 6:26 PM
To: eriakha b <eriakhab@gmail.com>

---------- Forwarded message ----------
From: **Yi Yang** <yiyang@olemiss.edu>
Date: Fri, Jun 13, 2025, 4:07 PM
Subject: RE: Developmental meeting for Bennard
[Quoted text hidden]
[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                                   Fri, Jun 13, 2025 at 6:26 PM
To: eriakha b <eriakhab@gmail.com>

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                                   Fri, Jun 13, 2025 at 6:28 PM
To: eriakha b <eriakhab@gmail.com>

---------- Forwarded message ----------
From: **Yinan Huang** <yhuang9@olemiss.edu>
[Quoted text hidden]
[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                                   Sat, Jun 14, 2025 at 8:56 AM
To: Yi Yang <yiyang@olemiss.edu>
Cc: Yinan Huang <yhuang9@olemiss.edu>, Jen Blakley <jmblakle@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>,
John P Bentley <phjpb@olemiss.edu>, askluck@olemiss.edu

Dear Dr. Yang and Dr. Huang,

Thank you both for your emails and for your ongoing commitment to supporting my academic and professional
development.

I would like to respectfully request clarification on two matters concerning the structure and format of the proposed
developmental mentoring meeting.

**1. Proposed Change in Mentorship Structure**

I understand from Dr. Yang's recent message that there is a proposal to transition my existing one-on-one developmental
mentoring relationship with Dr. Huang into a co-mentoring arrangement. While I recognize and appreciate the
department's broader objective of supporting faculty development, I must respectfully express concern that this proposed
change was not preceded by any prior discussion or mutual agreement between Dr. Huang and me. Furthermore, I
reviewed the departmental policies and did not find any provision stating that developmental mentoring arrangements can
be restructured without mutual agreement between the mentor and mentee. In light of this, I would be grateful for
clarification regarding the policy basis guiding this decision.

Mentor-mentee agreements—such as the one formally signed by Dr. Huang and me—are **bilateral** arrangements
grounded in mutual consent, confidentiality, trust, psychological safety, and clearly defined roles. The intent of our
agreement was to create a dedicated, individualized, and safe space to support my professional development.

Exhibit B ~ 06_24_2025 ~ Email thread Abilities Transcript (Dr. Huang, Chair, GPC, Dean) Pg 8

The introduction of a co-mentor at this stage—particularly without my prior input—constitutes a **unilateral** modification of the existing agreement. As a student and contractual party to that agreement, I believe I retain the right to help define the terms of my engagement and to set appropriate boundaries regarding who participates in meetings specifically designed to support my academic and professional growth.

While I understand that the proposed adjustment may be intended to support Dr. Huang's professional development, this rationale does not override my right to a safe, supportive, and non-coercive mentoring environment. Nor does it justify bypassing my agency or compromising the autonomy that is fundamental to effective mentorship. Faculty development objectives—however valid—should be pursued independently of student-focused mentorship sessions and should not encroach upon agreements built on mutual trust and consent.

Accordingly, and in the absence of any formal policy supporting such restructuring, I respectfully request that the original one-on-one mentoring arrangement be preserved in full—consistent with widely accepted standards of ethical, student-centered mentoring.

## 2. Meeting Modality Preference

During a virtual meeting with Dr. Huang on Thursday, June 12, 2025, she expressed clear flexibility and a willingness to accommodate my preference for conducting our developmental mentoring meeting virtually. However, during the course of that meeting, Dr. Yang entered Dr. Huang's office and indicated that the meeting must be held in person. This directive was conveyed without any accompanying reference to relevant departmental or institutional policy.

I would like to respectfully reiterate my original request for a virtual meeting format. If there is a formal policy—either at the departmental or university level—that mandates in-person developmental mentoring meetings, I would appreciate the opportunity to review that documentation. In the absence of such a policy, I believe it is both reasonable and appropriate for my request to be honored, particularly in light of the flexibility already extended by Dr. Huang and the effectiveness of prior virtual interactions.

Mentoring is most effective when it is collaborative, supportive, and responsive to the mentee's expressed preferences and needs. Imposing an in-person format without clear justification or mutual agreement risks compromising psychological safety and may diminish the openness and quality of the mentoring exchange.

Accordingly, I respectfully request that our upcoming meeting proceed in a virtual format, consistent with both my expressed preference and Dr. Huang's prior flexibility.

In conclusion, I remain fully committed to engaging constructively in the developmental mentoring process. I am hopeful that we can uphold both the structure and spirit of ethical mentoring—anchored in transparency, collaboration, and respect for student agency.

Thank you again for your time and continued support.

Best regards,
Bennard Eriakha
[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
To: eriakha b <eriakhab@gmail.com>

Sun, Jun 15, 2025 at 8:57 AM

[Quoted text hidden]

---

**Yi Yang** <yiyang@olemiss.edu>
To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>
Cc: Yinan Huang <yhuang9@olemiss.edu>, Jen Blakley <jmblakle@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>, Annette Kluck <askluck@olemiss.edu>

Mon, Jun 16, 2025 at 2:20 PM

Hi Bennard,

The developmental mentor for PHAD graduate students is assigned by the department chair. Dr. Huang and I look forward to meeting with you in person on Wednesday, 6/18, at 1:30 pm in Faser 217.

Exhibit B ~ 06_24_2025 ~ Email thread Abilities Transcript (Dr. Huang, Chair, GPC, Dean) Pg 9

[Quoted text hidden]

**Yinan Huang** <yhuang9@olemiss.edu>                              Mon, Jun 16, 2025 at 2:50 PM
To: Yi Yang <yiyang@olemiss.edu>, "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>
Cc: Jen Blakley <jmblakle@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>,
Annette Kluck <askluck@olemiss.edu>

Dear Dr. Yang,

Thank you very much for your kind responses.

I look forward to meeting with you and Bennard in person this Wednesday, June 18th, at 1:30 PM in Faser
217.


Warm regards,


Yinan


---

**From:** Yi Yang <yiyang@olemiss.edu>
**Sent:** Monday, June 16, 2025 2:20 PM
**To:** eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>
**Cc:** Yinan Huang <yhuang9@olemiss.edu>; Jen Blakley <jmblakle@olemiss.edu>; Marie Barnard
<mbarnard@olemiss.edu>; John P Bentley <phjpb@olemiss.edu>; Annette Kluck <askluck@olemiss.edu>
**Subject:** RE: Developmental meeting for Bennard

[Quoted text hidden]

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                        Mon, Jun 16, 2025 at 3:16 PM
To: eriakha b <eriakhab@gmail.com>

---------- Forwarded message ---------
From: **Yi Yang** <yiyang@olemiss.edu>
Date: Mon, Jun 16, 2025, 2:20 PM
Subject: RE: Developmental meeting for Bennard
[Quoted text hidden]
[Quoted text hidden]

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                        Mon, Jun 16, 2025 at 3:16 PM
To: eriakha b <eriakhab@gmail.com>

---------- Forwarded message ---------
From: **Yinan Huang** <yhuang9@olemiss.edu>
Date: Mon, Jun 16, 2025, 2:50 PM
Subject: Re: Developmental meeting for Bennard
To: Yi Yang <yiyang@olemiss.edu>, eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>
[Quoted text hidden]
[Quoted text hidden]

Exhibit B ~ 06_24_2025 ~ Email thread Abilities Transcript (Dr. Huang, Chair, GPC, Dean) Pg 10

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                                    Mon, Jun 16, 2025 at 4:05 PM
To: Yi Yang <yiyang@olemiss.edu>
Cc: Yinan Huang <yhuang9@olemiss.edu>, Jen Blakley <jmblakle@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>,
John P Bentley <phjpb@olemiss.edu>, Annette Kluck <askluck@olemiss.edu>

Hi Dr. Yang,

Thank you for your response.

I would like to note that the specific concerns outlined in my previous email were neither acknowledged nor addressed. I
believe these concerns merit thoughtful consideration, and I respectfully reiterate the importance of engaging with them
directly.

I remain committed to participating in the developmental mentoring process constructively and collaboratively, in
alignment with university policy, professional standards, and ethical academic practice.

I trust that the concerns I have raised will be addressed in good faith.

Best regards,
Bennard Eriakha

[Quoted text hidden]

---

**Yinan Huang** <yhuang9@olemiss.edu>                                           Wed, Jun 18, 2025 at 1:38 PM
To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>, Yi Yang <yiyang@olemiss.edu>
Cc: Jen Blakley <jmblakle@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>,
Annette Kluck <askluck@olemiss.edu>

Hi Bennard,
I am just checking if everything is okay with you.

Dr. Yang and I have been in the room Faser 217 for your developmental meeting. Will you be coming or not?

Thanks,

Yinan

**From:** Ehiremen Eriakha <eberiakh@go.olemiss.edu>
**Sent:** Monday, June 16, 2025 4:05 PM
**To:** Yi Yang <yiyang@olemiss.edu>
[Quoted text hidden]

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                                  Wed, Jun 18, 2025 at 4:23 PM
To: eriakha b <eriakhab@gmail.com>

---------- Forwarded message ---------
From: **Yinan Huang** <yhuang9@olemiss.edu>
Date: Wed, Jun 18, 2025, 1:38 PM
Subject: Re: Developmental meeting for Bennard
To: eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>, Yi Yang <yiyang@olemiss.edu>
Cc: Jen Blakley <jmblakle@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, John P Bentley
<phjpb@olemiss.edu>, Annette Kluck <askluck@olemiss.edu>

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                                  Tue, Jun 24, 2025 at 10:01 AM

Exhibit B ~ 06_24_2025 ~ Email thread Abilities Transcript (Dr. Huang, Chair, GPC, Dean) Pg 11

To: Yi Yang <yiyang@olemiss.edu>
Cc: Yinan Huang <yhuang9@olemiss.edu>, Jen Blakley <jmblakle@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>, Annette Kluck <askluck@olemiss.edu>

Hi Dr. Yang,

I hope you are doing well. I'm writing to follow up on my June 16 email regarding two unaddressed concerns:

1. The proposed transition of my existing one-on-one developmental mentoring relationship with Dr. Huang into a **co-mentoring** arrangement—initiated without prior discussion, mutual agreement, or my input—which raises serious concerns about my right to a **safe, supportive, and non-coercive** mentoring environment, as well as my agency and autonomy in this process.

2. The attempt to **impose** an in-person meeting format between me and my developmental mentor despite our previously agreed-upon virtual arrangement, which was based on a collaborative and mutually respectful decision aligned with my expressed preferences and needs.

Resolution of these concerns directly impacts my ability to proceed with the developmental mentoring process, including meeting with my mentor and completing the Abilities Transcript. The Graduate Program Coordinator (copied here) has recently followed up regarding this form, and I remain eager to move forward in a timely and informed manner—**within a mentoring environment that is respectful, student-centered, and aligned with institutional expectations.**

Thank you for your time and consideration.

Best regards,
Bennard Eriakha
[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                                          Tue, Jun 24, 2025 at 10:02 AM
To: "eriakha b <eriakhab@gmail.com>

[Quoted text hidden]

---

**Annette Kluck** <askluck@olemiss.edu>                                                    Tue, Jun 24, 2025 at 4:11 PM
To: "eberlakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>
Cc: Yinan Huang <yhuang9@olemiss.edu>, Jen Blakley <jmblakle@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, John P Bentley <phjpb@olemiss.edu>, Yi Yang <yiyang@olemiss.edu>

Hi Barnard,

I hope you are well. I met with the chair and GPC today. The change in the mentor structure is appropriate as outlined in the information provided by Dr. Yang.

Best,

**Annette S. Kluck, Ph.D. (she/her)**

Dean of the Graduate School

Professor, Leadership and Counselor Education

GRADUATE SCHOOL

The University of Mississippi

P.O. Box 1848

University, MS 38677-1848

Exhibit B ~ 06_24_2025 ~ Email thread Abilities Transcript (Dr. Huang, Chair, GPC, Dean) Pg 12

USA

O: 662-915-7474 F:662-915-6557

Exhibit C ~ 06_30_2025 ~ Retaliation (Threats Abilities Transcript_Bennard) Pg 1

askluck@olemiss.edu

Licensed Psychologist, AL #1533

Associate Editor, Psychology of Women Quarterly

https://journals.sagepub.com/home/pwq

Fellow Status, American Psychological Association, Division 35: Society for the Psychology of Women

Interested in giving to the Graduate School at The University of Mississippi? Please visit https://nowandever.olemiss.edu/schools-and-units/the-graduate-school/.

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
To: eriakha b <eriakhab@gmail.com>

Tue, Jun 24, 2025 at 4:12 PM

[Quoted text hidden]

---

**Marie Barnard** <mbarnard@olemiss.edu>
To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>
Cc: Yi Yang <yiyang@olemiss.edu>

Tue, Jun 24, 2025 at 4:34 PM

Hi Bennard,

I appreciate being copied on this email. Please see the email I sent you yesterday. As I noted in that email, we need your Abilities Transcript for the discussion at the faculty retreat that begins Thursday morning. Submission of the Abilities Transcript is a program requirement. As is indicated in our Department Policies and Procedures Guide, reappointment for assistantship is contingent on several factors including a student's performance and progress. If you do not submit this by end of business tomorrow, June 25, 2025, the faculty will not have this to guide their discussion of your performance and progress. I encourage you to please submit your Abilities Transcript.

Thank you,
mb

**Marie Barnard, Ph.D.**
*Associate Professor of Pharmacy Administration*
*Research Associate Professor in the Research Institute of Pharmaceutical Sciences*
*Associate Professor of Public Health*
*Graduate Program Coordinator, Pharmacy Administration*
**Department of Pharmacy Administration**
**University of Mississippi**
mbarnard@olemiss.edu | www.olemiss.edu

---

**From:** Ehiremen Eriakha <eberiakh@go.olemiss.edu>
**Sent:** Tuesday, June 24, 2025 10:01 AM
[Quoted text hidden]

[Quoted text hidden]

_____

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                    Tue, Jun 24, 2025 at 4:37 PM
To: eriakha b <eriakhab@gmail.com>


---------- Forwarded message ----------
From: **Marie Barnard** <mbarnard@olemiss.edu>
Date: Tue, Jun 24, 2025, 4:34 PM
Subject: Re: Developmental meeting for Bennard
To: eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>
Cc: Yi Yang <yiyang@olemiss.edu>

[Quoted text hidden]

## Exhibit C ~ 06_30_2025 ~ Retaliation (Threats Abilities Transcript_Bennard)

**Interoffice Memorandum**
**Department of Pharmacy Administration**
**University of Mississippi**

**TO:** Ehiremen (Bennard) Eriakha (Student Number 10955677)

**CC:** Yi Yang, Chair

**FROM:** Marie Barnard, Graduate Program Coordinator

**DATE:** June 30, 2025

**SUBJECT:** Warning and Remediation Plan to Address Failure to Meet a Non-Course Work Academic Performance Expectation

This memo serves as a formal warning that you have failed to meet a non-course work academic performance expectation, specifically, the required annual submission of the Abilities Transcript (AT). The required annual submission of the AT is made clear in the Department of Pharmacy Administration Policies and Procedures Guide. The AT is utilized by the department faculty as part of the annual review of graduate students. You received multiple email notifications requesting that you submit your AT. As of June 30, 2025, you have still not submitted your AT.

In order to remediate this issue, you must meet with your development mentors and submit your updated Abilities Transcript to the department chair by August 15, 2025. Failure to do so will result in a recommendation to the Graduate Dean that you have a change of status to provisional status.

Exhibit D ~ 07_09_2025 ~ Response Abilities Transcript Threats (Bennard) Pg 1

| | |
|---|---|
| **TO:** | **Marie Barnard**, Graduate Program Coordinator |
| **CC:** | **Noel Wilkin**, Provost & Executive Vice Chancellor for Academic Affairs |
| | **Annette S. Kluck**, Dean of the Graduate School |
| | **Yi Yang**, Chair, Department of Pharmacy Administration |
| **FROM:** | Ehiremen (Bennard) Eriakha (Student Number 10955677) |
| **DATE:** | July 9, 2025 |
| **SUBJECT:** | Formal Response to June 30, 2025, Memorandum Alleging Failure to Meet a Non-Course Work Academic Performance Expectation |

**Dear Dr. Barnard,**

I hope this letter finds you well. I write this letter with deep concern and principled disappointment. The memorandum issued on June 30, 2025, titled *"Warning and Remediation Plan to Address Failure to Meet a Non-Course Work Academic Performance Expectation,"* presents a narrative that is not only factually and procedurally flawed, but also profoundly troubling in its disregard for the very values that should guide academic mentoring and student development.

At its core, the memorandum mischaracterizes my actions. It reframes structural barriers—created and sustained by the department—as evidence of personal noncompliance. It omits critical context, disregards written concerns I raised in good faith, and imposes a disciplinary framing on what has, from my side, been a consistent and professional effort to engage in a process that has systematically excluded me.

Most of all, it treats a developmental document—intended to foster reflection and growth—as a mechanism of enforcement. What should have been a collaborative process has instead become coercive. And what should have empowered me as a student has instead diminished my agency, silenced my voice, and eroded my sense of safety within the academic environment.

## Exhibit D ~ 07_09_2025 ~ Response Abilities Transcript Threats (Bennard) Pg 2

Below, I offer a detailed response and respectfully request a resolution grounded not only in policy, but in fairness, mutual respect, and the values we are expected to uphold as an academic community.

### 1. Incomplete and Selective Narrative

The June 30 memorandum presents a version of events that omits critical context: my efforts to complete the Abilities Transcript (AT) were repeatedly obstructed by a lack of procedural clarity, unilateral decision-making, and a breakdown of trust in the mentoring process.

It is deeply concerning that my documented communications—which raised timely and thoughtful concerns about informed consent, transparency, and psychological safety—were entirely excluded from the department's narrative. This omission does more than misrepresent my conduct; it erases the very real impact of the department's actions on my ability to engage meaningfully in a process that should have supported, rather than hindered, my development.

As the Graduate Program Coordinator and author of the memorandum, you were copied on these communications and were fully aware of both the barriers created by departmental decisions and the good-faith efforts I made to resolve them. Issuing a formal warning while omitting this critical context raises serious ethical concerns and significantly undermines the credibility of the memorandum as an institutional document.

The timing is especially concerning: the memorandum was issued shortly after I raised formal objections to two significant procedural changes—the unilateral restructuring of my signed mentoring agreement and the imposed in-person meeting format. These objections, grounded in university policy and professional ethics, constitute protected academic expression and may also

Exhibit D ~ 07_09_2025 ~ Response Abilities Transcript Threats (Bennard) Pg 3

fall within the scope of federal civil rights protections, including those afforded under Title VI and Title IX.

The memorandum misrepresents the circumstances surrounding the non-submission of the Abilities Transcript (AT) by:

- Selectively referencing that I received multiple email reminders to submit the AT, while omitting my repeated and well-documented efforts to schedule the required mentoring session;
- Failing to acknowledge that the barriers to submission were created by departmental decisions—not by inaction on my part;
- Ignoring my documented concerns regarding informed consent, procedural transparency, and psychological safety;
- Overlooking the fact that these concerns remain unresolved; and
- Reframing department-created obstacles as evidence of personal "noncompliance."

Taken together, these omissions construct a narrative that is incomplete at best and misleading at worst. By advancing a partial account while excluding critical material facts, the memorandum falsely characterizes the situation as a *"failure to meet a non-course work academic performance expectation."*

Should institutional action proceed on the basis of such a narrative, it risks not only causing unwarranted harm to my academic standing, but also undermining the broader principles of fairness, transparency, and accountability that are meant to underpin graduate education.

In light of these omissions, I respectfully urge the department to reexamine the narrative presented in the June 30 memorandum and to consider whether it truly reflects the university's professed values of integrity, fairness, and transparency.

Exhibit D ~ 07_09_2025 ~ Response Abilities Transcript Threats (Bennard) Pg 4

### 2. Unaddressed Concerns Continue to Obstruct AT Completion

To suggest that I have "failed" to submit the Abilities Transcript (AT) is not only inaccurate—it is deeply unjust. At no point have I refused to complete the transcript. What I have consistently sought is a mentoring environment that is respectful, student-centered, and aligned with institutional policy—conditions essential to authentic developmental mentoring engagement.

For the sake of transparency, I have included in the attachment an email thread that documents my sustained efforts and the department's lack of substantive response. As this record shows, I have:

- Repeatedly reached out to initiate and complete the AT process;
- Clearly communicated a willingness to proceed once key structural barriers were addressed;
- Requested clarification in accordance with university policy and professional norms; and
- Received, in return, either vague replies or no meaningful engagement at all.

Taken together, this record reflects consistent engagement on my part—marked by professionalism, clarity, and a sincere commitment to restoring a mentoring environment grounded in **trust, mutual respect, transparency,** and **psychological safety.**

### 3. Unilateral Restructuring of a Signed One-on-One Mentoring Agreement

Perhaps the most troubling of these unresolved obstructions is the department's unilateral restructuring of my signed one-on-one developmental mentoring agreement—carried out without prior discussion, mutual consent, or any opportunity for input.

This action directly contradicts the terms of the developmental mentoring agreement, an institutionally recognized commitment that outlines specific roles, expectations, and safeguards. That agreement explicitly states that *"the mentor will be committed to meeting **one-on-one** with*

*the student"* and is responsible for fostering a developmental space that is *"intellectually stimulating, emotionally supportive, safe, equitable, and free of harassment."*

This commitment affirms more than a meeting format; it guarantees a confidential one-on-one structure designed to promote professional growth in a psychologically safe environment. To alter that agreement without the student's knowledge or consent is not only **procedurally invalid**—it is **ethically indefensible**.

Despite this, on June 13, 2025, I was informed—without prior notice—that a co-developmental mentor had been added to my mentoring arrangement. No relevant policy was cited to justify this change. No consent was sought. I was given no opportunity to ask questions, raise concerns, or understand the rationale. Instead, I was presented with a finalized decision, justified solely on the grounds that it would support my assigned mentor's professional development.

While I respect and support faculty development in principle, it must never come at the expense of students' rights to a safe, supportive, and student-centered mentoring environment. Faculty development is not a valid justification for bypassing student agency or unilaterally altering a mentoring agreement grounded in mutual trust. Such objectives should be pursued through separate channels—not imposed at the expense of student rights.

In good faith, I raised formal concerns about the legitimacy of this restructuring. Specifically, I requested clarification as to what departmental or university policy—if any—permits the revision of a signed mentoring agreement without the mutual consent of both the mentor and the mentee. To date, this question has gone unanswered. My concerns have not been acknowledged, let alone addressed.

Compounding the issue, the June 30 memorandum replaced all references to "mentor" with "mentors," reinforcing the appearance that this restructuring was final, uncontested, and procedurally sound—when in fact it was imposed over my documented objections and without mutual consent.

While it might be convenient to describe what occurred as a lapse in communication, doing so obscures a deeper breakdown in process, transparency, and respect for student rights. When a one-on-one mentoring relationship is unilaterally converted into a multi-party arrangement; when that arrangement is imposed without consultation, consent, or policy basis; and when the student is excluded from decisions that directly affect their academic progress, the mentoring relationship ceases to be developmental. It becomes coercive.

## 4. Coercive Imposition of an In-Person Meeting Format

Further eroding my rights as a student was the department chair's unilateral attempt to impose an in-person format for my developmental mentoring session—despite a clearly communicated preference for a virtual meeting and a mutual agreement already established with my assigned mentor.

When a student articulates a clear preference—particularly regarding the setting or format of a developmental mentoring meeting—there is a reasonable expectation that it will be honored, or at the very least, discussed openly and respectfully. In this case, I respectfully requested that the meeting be held virtually. My assigned mentor affirmed that the request was entirely appropriate and agreed without hesitation.

That agreement was abruptly overridden—without notice—when, during a scheduled Zoom session with my assigned mentor, the department chair unilaterally mandated that the meeting take

place in person. This directive was issued without citing any applicable policy, without offering justification, and without regard for the preference I had clearly communicated. Beyond its procedural irregularity, the action was emotionally destabilizing and undermined the psychological safety essential for open reflection and honest dialogue.

Such a directive:

- Contradicts the ethical obligation of academic leaders to be accessible, responsive, and student-centered;

- Introduces a dynamic of compulsion that fundamentally compromises the mentoring relationship; and

- Replaces collaboration with a hierarchical assertion of control.

Unilateral decisions that override prior agreements and disregard student needs do not foster trust or development—they impose coercion. Mandating a change in meeting format under these circumstances violated the foundational principles of ethical mentorship.

Mentorship is not about enforcement. It is about fostering a relationship in which students are supported to grow, reflect, and navigate challenges within a space that is safe, affirming, and respectful. When that space is reshaped by pressure and disregard, the relationship ceases to be developmental. It becomes restrictive, adversarial, and ultimately counterproductive.

## 5. The Developmental Mentoring Meeting & The Abilities Transcript

The developmental mentoring meeting serves a vital purpose: to support the thoughtful and collaborative completion of the Abilities Transcript (AT). This document is intended to reflect a trust-based mentoring exchange—not one carried out under duress, coercion, or ethically

questionable conditions. Completing it under such circumstances would fundamentally compromise the integrity of the developmental process it is meant to represent.

Regrettably, the June 30 memorandum implies that non-submission of the AT may warrant reclassification to provisional status. This punitive framing distorts the transcript's intended role as a formative support tool. Repurposing it as an instrument of compulsion contradicts its core educational purpose and undermines the university's broader responsibility to promote ethical, student-centered mentorship.

At no point have I refused to complete the AT. On the contrary, I have consistently welcomed the opportunity to reflect on my academic progress—precisely what the AT was designed to support. I have repeatedly affirmed my readiness to proceed, once my formally signed one-on-one mentoring agreement is either honored or reconsidered through a transparent, policy-consistent, and mutually agreed process.

Given this clear and well-documented willingness, I find no valid justification for the June 30 memorandum's attempt to compel me—or any student—into submission under unresolved and ethically troubling conditions. Doing so risks turning a tool of academic reflection into an instrument of coercion, thereby undermining both the letter and the spirit of ethical graduate mentorship.

## 6. Remedies Requested

In light of the facts and concerns outlined above, I respectfully request the following actions to ensure that this matter is resolved in a manner that is fair, transparent, and consistent with the values of ethical graduate education:

Exhibit D ~ 07_09_2025 ~ Response Abilities Transcript Threats (Bennard) Pg 9

- **Withdrawal of the June 30 memorandum,** along with the removal of any language that mischaracterizes my conduct as "failure" or "noncompliance";

- **Acknowledgment of my documented good-faith efforts,** as well as formal recognition of the department's procedural role in contributing to the delay;

- **Restoration of the original one-on-one mentoring agreement,** in accordance with the terms mutually signed by both mentor and mentee, with any future modifications made only through transparent discussion and mutual consent;

- **Reinstatement of the virtual meeting format,** unless a clearly documented institutional policy mandates otherwise, with any access-related considerations addressed collaboratively and in good faith,

- **Written assurance of non-retaliation,** including protections against adverse academic consequences or assistantship termination resulting from this unresolved matter; and

- **Disclosure of relevant written policies,** if they exist, that authorize:
  - The restructuring of a signed mentoring agreement by a third party without the consent of both mentor and mentee; and
  - The mandatory imposition of in-person meetings absent a documented policy or agreed rationale.

These remedies are not requested as a matter of preference, but as a matter of principle. They are submitted in the interest of restoring procedural fairness, reaffirming institutional commitments to ethical mentorship, and enabling me to continue my academic development in an environment grounded in mutual respect, trust, and student-centered values.

**7. Conclusion**

In closing, I wish to reiterate that mentorship must be a negotiated and collaborative process—not one imposed through unilateral decisions. When faculty convenience is prioritized over student well-being, when valid concerns are treated as obstacles rather than opportunities for reflection, and when policy is bypassed to enforce compliance rather than uphold fairness, the integrity of the educational process is fundamentally compromised.

Despite these concerns, my commitment to academic progress remains unchanged. I remain fully prepared to complete all program requirements, including submission of the Abilities Transcript, once the process is restored to a framework that is fair, respectful, and ethically sound. I respectfully urge the department of Pharmacy Administration to resolve this matter in a manner that reflects those values. My sincere hope is to continue my academic journey in an environment where **fairness, mutual respect**, and **student agency** are not merely stated ideals, but actively practiced.

At the same time, I must be clear about the boundaries of acceptable participation. While I remain open to constructive engagement, I cannot in good conscience participate in a mentoring structure shaped by **silence, coercion**, or **disregard for student rights**. If these concerns remain unresolved, I reserve the right to pursue redress through internal grievance procedures or external administrative channels, including the Office for Civil Rights.

Ultimately, this letter is not a rejection of mentorship—but a call to restore its meaning. I hope it is received in the spirit in which it was written: a principled appeal for **fairness, transparency, and mutual respect**.

Thank you for your time, attention, and consideration.

Sincerely,

Exhibit D ~ 07_09_2025 ~ Response Abilities Transcript Threats (Bennard) Pg 11

**Ehiremen (Bennard) Eriakha**

Graduate Student, Department of Pharmacy Administration

The University of Mississippi

7/24/25, 2:25 PM
Gmail - Fwd: Abilities Transcript notice

Exhibit E ~ 07_24_2025 ~ Email Thread Abilities Transcript Pg 1

 **Gmail**

eriakha b <eriakhab@gmail.com>

---

## Fwd: Abilities Transcript notice
10 messages

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
To: eriakha b <eriakhab@gmail.com>

Mon, Jun 30, 2025 at 2:05 PM

---------- Forwarded message ---------
From: **Marie Barnard** <mbarnard@olemiss.edu>
Date: Mon, Jun 30, 2025, 2:00 PM
Subject: Abilities Transcript notice
To: eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>
Cc: Yi Yang <yiyang@olemiss.edu>

Dear Bennard,
Your Abilities Transcript has not been submitted by the deadline. Please see that attached memo regarding this deficiency and required remediation.
Thank you,
mb

**Marie Barnard, Ph.D.**
*Associate Professor of Pharmacy Administration*
*Research Associate Professor in the Research Institute of Pharmaceutical Sciences*
*Associate Professor of Public Health*
*Graduate Program Coordinator, Pharmacy Administration*
**Department of Pharmacy Administration**
**University of Mississippi**
mbarnard@olemiss.edu | www.olemiss.edu

📄 **Bennard Eriakha Memo RE ABT June 30 2025.pdf**
91K

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
To: eriakha b <eriakhab@gmail.com>

Sat, Jul 19, 2025 at 11:57 AM

---------- Forwarded message ---------
From: **Yi Yang** <yiyang@olemiss.edu>
Date: Fri, Jul 18, 2025, 5:48 PM
Subject: RE: Abilities Transcript notice
To: eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, Yinan Huang <yhuang9@olemiss.edu>

Dear Bennard,

I am writing to follow up regarding the submission of your Abilities Transcript (AT). As of today, we have not yet received your AT.

We understand that you may have concerns regarding the AT process. However, please be advised that annual submission of the AT is a mandatory requirement for all students in our program. To ensure compliance with program requirements, please contact your Development Mentors, Dr. Yinan Huang (copied on this email) and myself, to schedule a meeting, complete, and submit your AT by **August 15, 2025.** Please be aware that failure to do so will result in a formal recommendation to the Graduate Dean for a change of your status to provisional status.

Please let me know if you have any questions.

Thanks, Yi

Yi Yang, MD, PhD

Chair and Professor

Department of Pharmacy Administration

(662) 915 1062

225 Faser Hall

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
To: eriakha b <eriakhab@gmail.com>

Sat, Jul 19, 2025 at 3:31 PM

---------- Forwarded message ----------
From: **Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
Date: Sat, Jul 19, 2025 at 3:31 PM
Subject: Re: Abilities Transcript notice
To: Yi Yang <yiyang@olemiss.edu>
Cc: Noel E Wilkin <nwilkin@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, Annette Kluck <askluck@olemiss.edu>, <provost@olemiss.edu>, Yinan Huang <yhuang9@olemiss.edu>, <jasimmon@olemiss.edu>

Hi Dr. Yang,

Thank you for your email.

As communicated previously, I remain fully committed to completing all academic requirements, including submission of the Abilities Transcript (AT).

However, as you acknowledged in your email, I have raised serious and ongoing concerns about the structure, format, and procedural integrity of the AT process—concerns that remain unresolved despite having been formally communicated to departmental and university leadership.

**These concerns specifically include:**

1. Documented objections to the **unilateral restructuring** of my **signed** developmental mentoring agreement,

2. The **imposition** of an in-person meeting format, and

3. The **ethical implications** of completing the AT under conditions that compromise **trust, psychological safety, transparency, student agency,** and **ethical mentoring.**

In light of your acknowledgment of these concerns, could you help me understand why, instead of addressing these concerns, the department issued a disciplinary memorandum on June 30 that included threatened sanctions—even though the concerns were raised in good faith and have remained unresolved?

Case: 3:25-cv-00250-MPM-JMV Doc #: 17 Filed: 09/18/25 45 of 119 PageID #: 479

7/24/25, 2:25 PM     Exhibit E ~ 07_24_2025 ~ Email Thread Abilities Transcript Pg 3
University of Mississippi Mail - Abilities Transcript notice

Specifically:

**1.** *What departmental or university policy permits the restructuring of a signed one-on-one mentoring agreement by a third party without mutual consent from both mentor and mentee?*

**2.** *What policy authorizes the mandatory imposition of in-person meetings absent a documented institutional policy or a mutually agreed-upon rationale between student and assigned mentor?*

I respectfully request written clarification on both points.

Additionally, **new concerns** arose during a recent Zoom research meeting (dated July 17, 2025) with Dr. Huang, my assigned developmental mentor.

Dr. Huang subsequently sent a follow-up email (dated July 17, 2025) that **omitted critical context** and created the **misleading impression** that my concerns had been fully discussed and resolved. In reality, the core issues remain unresolved, and aspects of our conversation have given rise to **additional concerns**.

Because Dr. Huang's July 17 email is now part of the institutional record—particularly given my pending formal complaint—it is essential that the full context of that meeting be accurately represented. To ensure the record remains transparent, complete, and continuous, I will provide a complete account of our conversation, including new concerns arising from that meeting, within the same email thread where my initial concerns were formally documented.

Lastly, since Dr. Huang is copied here, I would like to clarify one point for the record, as I have not yet received a response to the question I sent directly to Dr. Huang's email following our meeting.

Dr. Huang, *during our Zoom meeting on July 17, the only participants present were you and me—correct?* At least, *that was clearly the impression you conveyed to me.* If this understanding is mistaken, I would appreciate your clarification.

For reference and continuity, I have re-attached the June 30, 2025, memorandum, along with my formal response submitted on July 9, 2025, which outlines my documented concerns and proposed remedies in detail.

Thank you once again for your time and attention to this matter.

Sincerely,
Bennard
[Quoted text hidden]

---

**3 attachments**

📄 **Bennard Eriakha Memo RE ABT June 30 2025 (1).pdf**
91K

📄 **09_07_25 ~ Response Abilities Transcript Threats (Bennard) (1).pdf**
283K

📄 **University of Mississippi Mail - Developmental meeting for Bennard (1).pdf**
570K

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                                      Mon, Jul 21, 2025 at 11:16 AM
To: eriakha b <eriakhab@gmail.com>


---------- Forwarded message ---------
From: **Yinan Huang** <yhuang9@olemiss.edu>
Date: Mon, Jul 21, 2025, 11:15 AM
Subject: Re: Abilities Transcript notice
To: eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>, Yi Yang <yiyang@olemiss.edu>
Cc: Noel E Wilkin <nwilkin@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, Annette Kluck
<askluck@olemiss.edu>, provost <provost@olemiss.edu>, Jennifer A Simmons <jasimmon@olemiss.edu>


Hi Bennard,

Sorry for my late reply. Yes, it was only you and I whom were participated in your Zoom meeting.

Thanks,

Yinan

**From:** Ehiremen Eriakha <eberiakh@go.olemiss.edu>
**Sent:** Saturday, July 19, 2025 3:31 PM
**To:** Yi Yang <yiyang@olemiss.edu>
**Cc:** Noel E Wilkin <nwilkin@olemiss.edu>; Marie Barnard <mbarnard@olemiss.edu>; Annette Kluck <askluck@olemiss.edu>; provost <provost@olemiss.edu>; Yinan Huang <yhuang9@olemiss.edu>; Jennifer A Simmons <jasimmon@olemiss.edu>
**Subject:** Re: Abilities Transcript notice

[Quoted text hidden]

---

Ehiremen Eriakha <eberiakh@go.olemiss.edu>
To: eriakha b <eriakhab@gmail.com>

Mon, Jul 21, 2025 at 11:51 AM

---------- Forwarded message ----------
From: **Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
Date: Mon, Jul 21, 2025 at 11:50 AM
Subject: Re: Abilities Transcript notice
To: Yinan Huang <yhuang9@olemiss.edu>
Cc: Yi Yang <yiyang@olemiss.edu>, Noel E Wilkin <nwilkin@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, Annette Kluck <askluck@olemiss.edu>, provost <provost@olemiss.edu>, Jennifer A Simmons <jasimmon@olemiss.edu>

Hi Dr. Huang,

Thank you for confirming that only you and I **participated** in the July 17 Zoom meeting.

For context, that meeting is part of a recurring weekly research session typically attended by three individuals: you, Dr. Yang, and myself.

While Dr. Yang did not attend on July 17, there were still three accounts logged into the Zoom session: my own, and two accounts under your name—one of which was not actively participating.

For the sake of accuracy, clarity, and completeness of the institutional record, could you kindly confirm whether anyone else was **present** during that meeting, even if they did not speak or actively participate?

Thank you again for your assistance with this clarification.

Warm regards,
Bennard
[Quoted text hidden]

---

Ehiremen Eriakha <eberiakh@go.olemiss.edu>
To: eriakha b <eriakhab@gmail.com>

Mon, Jul 21, 2025 at 1:36 PM

---------- Forwarded message ----------
From: **Yinan Huang** <yhuang9@olemiss.edu>
Date: Mon, Jul 21, 2025, 1:30 PM
Subject: Re: Abilities Transcript notice
To: eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>

7/24/25, 2:25 PM Exhibit E ~ 07_24_2025 ~ Email Thread Abilities Transcript Pg 5

Cc: Yi Yang <yiyang@olemiss.edu>, Noel E Wilkin <nwilkin@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, Annette Kluck <askluck@olemiss.edu>, provost <provost@olemiss.edu>, Jennifer A Simmons <jasimmon@olemiss.edu>

Hi Bennard,
I would like to kindly confirm with you again that, yes, it was only you and I whom were participated in your Zoom meeting on July 17th, last Thursday. Hope it provides clarity.

Thanks,

Yinan

---

**From:** Ehiremen Eriakha <eberiakh@go.olemiss.edu>
**Sent:** Monday, July 21, 2025 11:50 AM
**To:** Yinan Huang <yhuang9@olemiss.edu>
**Cc:** Yi Yang <yiyang@olemiss.edu>; Noel E Wilkin <nwilkin@olemiss.edu>; Marie Barnard <mbarnard@olemiss.edu>; Annette Kluck <askluck@olemiss.edu>; provost <provost@olemiss.edu>; Jennifer A Simmons <jasimmon@olemiss.edu>
[Quoted text hidden]

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
To: eriakha b <eriakhab@gmail.com>

Mon, Jul 21, 2025 at 2:07 PM

---------- Forwarded message ---------
From: **Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
Date: Mon, Jul 21, 2025 at 2:06 PM
Subject: Re: Abilities Transcript notice
To: Yinan Huang <yhuang9@olemiss.edu>
Cc: Yi Yang <yiyang@olemiss.edu>, Noel E Wilkin <nwilkin@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, Annette Kluck <askluck@olemiss.edu>, provost <provost@olemiss.edu>, Jennifer A Simmons <jasimmon@olemiss.edu>

Hi Dr. Huang,

Thank you for your reply and for confirming once again that only you and I **"participated"** in the July 17 Zoom meeting.

However, the intent of my original question was not to confirm who **"participated,"** but rather to confirm whether anyone else was **"present"** during that meeting—even if they did not speak or actively participate.

I would greatly appreciate your confirmation. Thank you again for your time.

Warm regards,
Bennard
[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
To: eriakha b <eriakhab@gmail.com>

Mon, Jul 21, 2025 at 3:05 PM

---------- Forwarded message ---------
From: **Yinan Huang** <yhuang9@olemiss.edu>
Date: Mon, Jul 21, 2025, 3:04 PM
Subject: Re: Abilities Transcript notice
To: eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>

7/24/25, 2:25 PM    Exhibit E ~ 07_24_2025 ~ Email _Inread Abilities _Transcript Pg 6

Cc: Yi Yang <yiyang@olemiss.edu>, Noel E Wilkin <nwilkin@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, Annette Kluck <askluck@olemiss.edu>, provost <provost@olemiss.edu>, Jennifer A Simmons <jasimmon@olemiss.edu>

Hi Bennard,

I would like to kindly confirm with you that only you and I whom were participated in your Zoom meeting on July 17th, last Thursday, and also to confirm with you that no one else was **"present"** during that meeting. Hope it provides clarity.

Thanks,

Yinan

**From:** Ehiremen Eriakha <eberiakh@go.olemiss.edu>
**Sent:** Monday, July 21, 2025 2:06 PM
[Quoted text hidden]

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>               Mon, Jul 21, 2025 at 3:35 PM
To: eriakha b <eriakhab@gmail.com>

---------- Forwarded message ----------
From: **Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
Date: Mon, Jul 21, 2025 at 3:34 PM
Subject: Re: Abilities Transcript notice
To: Yinan Huang <yhuang9@olemiss.edu>
Cc: Yi Yang <yiyang@olemiss.edu>, Noel E Wilkin <nwilkin@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, Annette Kluck <askluck@olemiss.edu>, provost <provost@olemiss.edu>, Jennifer A Simmons <jasimmon@olemiss.edu>

Hi Dr. Huang,

Thank you for the clarification and for confirming that no one else was present during the July 17 Zoom meeting.

I sincerely appreciate your time.

Warm regards,
Bennard
[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>               Tue, Jul 22, 2025 at 5:12 PM
To: eriakha b <eriakhab@gmail.com>

---------- Forwarded message ----------
From: **Annette Kluck** <askluck@olemiss.edu>
Date: Tue, Jul 22, 2025, 4:34 PM
Subject: RE: Abilities Transcript notice
To: eberiakh@go.olemiss.edu <eberiakh@go.olemiss.edu>, Yi Yang <yiyang@olemiss.edu>
Cc: Noel E Wilkin <nwilkin@olemiss.edu>, Marie Barnard <mbarnard@olemiss.edu>, provost <provost@olemiss.edu>, Yinan Huang <yhuang9@olemiss.edu>, Jennifer A Simmons <jasimmon@olemiss.edu>

Hi Bernard,

I am writing to provide clarification regarding questions you raised in the email below.

First, there are no policies that prohibit program faculty from making changes to mentoring assignments when the faculty deem such changes to be appropriate. In addition, programs can set reasonable expectations about the format of meetings. When a program is a face-to-face full-time program, it is not unreasonable for a program to require students to attend meetings in person, on campus, during regular university business hours.

I also want to be sure that you understand that even when a student has concerns about some aspect(s) of their program, they still need to complete program requirements. As such, I encourage you to complete the Abilities Transcript by the deadline set by the program.

Best,

**Annette S. Kluck, Ph.D. (she/her)**

Dean of the Graduate School

Professor, Leadership and Counselor Education

GRADUATE SCHOOL

The University of Mississippi

P.O. Box 1848

University, MS 38677-1848

USA

O: 662-915-7474  F:662-915-6557

askluck@olemiss.edu


Licensed Psychologist, AL #1533

Associate Editor, Psychology of Women Quarterly

https://journals.sagepub.com/home/pwq

Fellow Status, American Psychological Association, Division 35: Society for the Psychology of Women


Interested in giving to the Graduate School at The University of Mississippi? Please visit https://nowandever. olemiss.edu/schools-and-units/the-graduate-school/.

[Quoted text hidden]

 **THE UNIVERSITY OF** **MISSISSIPPI.**

Ehiremen Eriakha <eberiakh@go.olemiss.edu>

---

## Follow-up email about scheduling a developmental mentor meeting

8 messages

---

**Yinan Huang** <yhuang9@olemiss.edu>                                          Thu, Jul 17, 2025 at 3:44 PM
To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>

Hi Bennard,
Thank you again for taking the time to meet with me today.

As I mentioned during our conversation, I will be leaving our department within the next year due to
family reasons. It has been a pleasure working with you, and I truly appreciate your dedication and
collaboration over the past months.

I have spoken with Dr. Yang regarding this transition. She has been very supportive and has kindly
offered to serve as a co-developmental mentor alongside me during this period. **Of note, as I
discussed with you during our meeting, please schedule a meeting with Dr. Yang and me in-
person before August 15 to complete and submit your signed Abilities Transcript, which is
required by the department for all students.** Also, I would like to let you know that given my
personal situation, Dr. Yang will assign a new developmental mentor for you after August 15, 2025.

Also, since you prefer to meet via Zoom for your summer research meetings, I will appreciate if
your video is turned on to facilitate more effective communication.

Please feel free to reach out if you have any questions or concerns.

Thanks,

Yinan

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                                 Thu, Jul 17, 2025 at 4:18 PM
To: eriakha b <eriakhab@gmail.com>

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                                 Fri, Jul 18, 2025 at 1:08 PM
To: Yinan Huang <yhuang9@olemiss.edu>

Hi Dr. Huang,

Thank you for your follow-up email.

I would like to **clarify** several important points that were either **omitted** or **framed in a way that may create a
misleading impression** of our July 17, 2025, discussion.

As you know, the concerns I raised relate to serious and unresolved matters regarding **trust, psychological safety,
mutual respect, transparency, student agency, and ethical mentoring**. These concerns have also been previously
communicated in writing to the Graduate Program Coordinator, Department Chair, and university leadership.

Unfortunately, your follow-up email omits critical context and conveys the misleading impression that these concerns were
fully discussed and agreed upon, when, in reality, the issues remain unresolved. *In fact, our discussion gave rise to
additional concerns, which I intend to document fully in the interest of transparency and accuracy.*

Exhibit F ~ 07_17_2025 ~ Email Thread Retroactive Retraming Pg 2

Because your email from July 17, 2025, now forms part of the institutional correspondence trail, it is essential to ensure that the official record accurately reflects the full context of our conversation—particularly given my formal complaints to departmental and university leadership.

Accordingly, I intend to provide a complete account of our conversation, including new concerns arising from our meeting, within the same email thread where my initial concerns were formally documented. This step is necessary to preserve continuity and to ensure a clear and complete institutional record.

Regarding your concern about my camera usage during Zoom meetings, I appreciate your interest in facilitating effective communication. While I prefer keeping my camera off—*as I've found this format helps me feel more at ease and better supports open and thoughtful dialogue*—I'm happy to turn it on if doing so would indeed facilitate more effective communication from your end.

Lastly, I would like to clarify one point for the record. ***During yesterday's meeting, the only participants present were you and me—correct?*** At least, that was the clear impression I was given. If this understanding is mistaken, I would appreciate any clarification.

Thank you again for your time. I remain committed to pursuing a constructive and principled resolution.

Sincerely,
Bennard
[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
To: eriakha b <eriakhab@gmail.com>

Fri, Jul 18, 2025 at 1:08 PM

[Quoted text hidden]

---

**Yinan Huang** <yhuang9@olemiss.edu>
To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>

Mon, Jul 21, 2025 at 10:09 AM

Sorry for my late reply. Bennard. There are lots of things, good and bad that I am dealing with in my life recently.

Yes, it was only you and I whom were participated in your Zoom meeting.

Please let me know if you have any question.
Thanks,

Yinan

---

**From:** Ehiremen Eriakha <eberiakh@go.olemiss.edu>
**Sent:** Friday, July 18, 2025 1:08 PM
**To:** Yinan Huang <yhuang9@olemiss.edu>
**Subject:** Re: Follow-up email about scheduling a developmental mentor meeting

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
To: eriakha b <eriakhab@gmail.com>

Mon, Jul 21, 2025 at 10:14 AM

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
To: Yinan Huang <yhuang9@olemiss.edu>

Mon, Jul 21, 2025 at 11:55 AM

Exhibit F ~ 07_17_2025 ~ Email Thread Retroactive Reframing Pg 3

Hi Dr. Huang,

Thank you for your reply. I hope you're finding moments of peace and strength amidst any challenges you might currently be navigating. I sincerely appreciate you taking the time to respond, especially given what you shared.

Thank you as well for confirming that only you and I **participated** in the July 17 Zoom meeting.

For context, that meeting is part of a recurring weekly research session typically attended by three individuals: you, Dr. Yang, and myself.

While Dr. Yang did not attend on July 17, there were still three accounts logged into the Zoom session: my own, and two accounts under your name—one of which was not actively participating.

For the sake of accuracy, clarity, and completeness of the institutional record, could you kindly confirm whether anyone else was **present** during that meeting, even if they did not speak or actively participate?

Thank you again for your assistance with this clarification, and I truly hope things improve for you soon.

Warm regards,
Bennard
[Quoted text hidden]

---

**Yinan Huang** <yhuang9@olemiss.edu>                                      Tue, Jul 22, 2025 at 11:15 AM
To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>

Thanks Bennard.

**From:** Ehiremen Eriakha <eberiakh@go.olemiss.edu>
**Sent:** Monday, July 21, 2025 11:55 AM
[Quoted text hidden]

[Quoted text hidden]

 THE UNIVERSITY OF
**MISSISSIPPI**

Ehiremen Erlakha <eberiakh@go.olemiss.edu>

---

## Your TA Team for Fall 2025
3 messages

---

**Alicia S Bouldin** <abouldin@olemiss.edu>                           Fri, Aug 8, 2025 at 4:57 PM
To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>
Cc: Erin Renee Holmes <erholmes@olemiss.edu>, Jen Blakley <jmblakle@olemiss.edu>

Greetings, Bennard!

I'm following up on my earlier email about the Aug 26 noon TA Orientation with a specific note to you about your TA assignment for this semester.

Each TA this term is assigned both a primary course role, and a secondary proctoring role for a different course. (This is designed to enable two proctors to be available for exams—a need identified by the SOP faculty.) This process is similar to that of the previous year.

- The **primary course** you will be supporting as TA for Fall 2025 is **PHCY 502** (Cardiovascular Module). The team leader, Dr. Jay Pitcock, will reach out to you soon to let you know what the team's expectations are for your course contributions.
- Your **secondary proctoring role** is for **PHCY 581** (Pharmacy Practice Applications/Skills Lab 3). Most of our courses have 3-4 exams, and the exam calendar (available soon) will include dates for exams in both courses you will proctor (primary and secondary). Watch for emails from Dr. Lindsey Miller regarding exam proctoring in that class.

All TAs are responsible for finding their own replacement, if for any reason they cannot complete an assigned task or proctor an exam. You can refer to the P123 TA Roster in Box to find contact information for all TAs.

We will go over this and more at our noon 8/26 TA Orientation on Zoom. For the remainder of the semester, other TA seminars will continue to provide professional development and networking. If, as the semester rolls on, you encounter areas in which you perceive that additional TA development is warranted, please contact me and I'll make every effort to bring those topics to the group.

I hope that your Fall TA experiences are rewarding. We appreciate your willingness to assist others in their teaching and learning.

All best,
Alicia


**Alicia S. Bouldin, R.Ph., Ph.D., FAPhA**
Associate Dean for Outcomes Assessment and Learning Advancement
Professor of Pharmacy Administration
The University of Mississippi School of Pharmacy
209 Faser
University, Mississippi 38677-1848

## Exhibit G ~ 08_08_2025 ~ TA Reach out Pg 2

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
To: eriakha b <eriakhab@gmail.com>

Fri, Aug 8, 2025 at 5:26 PM

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>
To: Alicia S Bouldin <abouldin@olemiss.edu>
Cc: Erin Renee Holmes <erholmes@olemiss.edu>, Jen Blakley <jmblakie@olemiss.edu>

Sat, Aug 9, 2025 at 10:34 AM

Hi Dr. Bouldin,

Thank you for the update on my Fall 2025 TA assignment.

I'm glad to support PHCY 502 as my primary course and assist with proctoring for PHCY 581. I'll watch for details from Dr. Pitcock and Dr. Miller, and will review the TA Roster in case coverage is ever needed.

I look forward to the August 26 orientation and to contributing this semester.

Best regards,
Bennard

[Quoted text hidden]

Exhibit H ~ 08_18_2025 ~ TA Coordinator Reach out Pg 1

 **THE UNIVERSITY OF MISSISSIPPI**

Ehiremen Eriakha <eberiakh@go.olemiss.edu>

## 2025 Exam Proctoring for PHCY 502: CV Module
2 messages

**James J. Pitcock** <jpitcock@umc.edu>
To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>, "jlhawkin@go.olemiss.edu" <jlhawkin@go.olemiss.edu>
Cc: Jamie Stewart <jastewa7@olemiss.edu>, Noa Valcarcel <mvalcarc@olemiss.edu>, "srearl@olemiss.edu"
<srearl@olemiss.edu>, "Seongbong Jo (seongjo@olemiss.edu)" <seongjo@olemiss.edu>, Joseph Dikun
<jadikun@olemiss.edu>, Vitor H Pomin <vpomin@olemiss.edu>, "James J. Pitcock" <jpitcock@umc.edu>, "Kayla R. Stover"
<kstover@umc.edu>

Mon, Aug 18, 2025 at 2:34 PM

Greetings Bennard and James,

This is Jay Pitcock, the TL for PHCY 502 CV module. I have been informed that you are going to help with proctoring our exams, so welcome to the team. Not sure how much experience you have with proctoring, so I've outlined the below basic exam procedures in case anyone needs a refresher. The only SOP initiated change for this year is that exams are now Monday instead of Tuesday.

Kayla and I sat down to discuss exam procedures as the ID exam is before ours – as we wanted to be on the same page. She will go over all of this with her module and I will cover it again in orientation, so it should not be a surprise to them.

There are a few other "changes" that we wanted to implement for this year based on some things that happened in the Spring 2025 term. I thing some of these we were supposed to be already doing and we may have already been doing it, but just wanted to make sure.

- It is my understanding that students should be assigned a certain seat via the "scratch paper seating ticket" system. We need to make sure that students are sitting in those seats. With such a small class, they should be able to spread out in the lower section and not sit in the upper level. There should be no reason to go into the upper level.
- We have to look at every student's "green exam uploaded screen" before they are allowed to leave the room at the end of the text. Make sure you check the date or exam name to make sure it's the correct green screen. If they closed it out before we see it, then they can pull up the confirmation screen that will show that it's uploaded.
- I want students to exit the room by one door only – preferably the one on the right side as you face the stage. Not the one at the back of the classroom. It doesn't matter if it's to go potty or leave the exam for good. This will help us with looking at the green screen and lessen the likelihood that students can sneak out without closing Examsoft.
- NO electronics on their person. This is anything – phones, apple watch, air pods or other headphones, Google glasses, Kindle, Ipad, etc. Doesn't matter if it's in their pocket or not, if we discover you have it then exam procedure violation. Not electric noise cancelling things are fine – i.e. ear plugs,

If a student has specific SDS accommodations that conflicts with something above, then we can accommodate that. I can let the proctors know if that is part of the any student's SDS accommodations.

Below are the dates for the 4 exams and the current faculty proctors.

Exam 1 – Monday, 8th

Exam 2 – Monday, 15th

Exam 3 – Monday, 22nd

Exam 4, Monday, 29th

# Exhibit H ~ 08_18_2025 ~ TA Coordinator Reach out Pg 2

SDS starts at 7:30 in Faser 325 and the rest of the class starts at 8:00 in TCRC. The students will have had one exam already, so hopefully they will be somewhat familiar with the procedure. I will send the exam access information prior to the exam to the designated faculty exam proctors. I will also send out a how many SDS students there are Monday, so you will know how many to expect. I want to wait to the last possible minute in case someone gets approved.

**Day Before the Exam - Gather Supplies** --- Remember the exam is early Monday AM, so this will need to be done Friday.

- Check out the Key for Faser 325 for SDS. (faculty team)
- Check out the Key for TCRC 1000. (faculty team)
- Print 5 copies of the exam just in case there is a tech issue that cannot be resolved. (faculty team)
- Print Seating Tickets to serve as scratch paper. (faculty team)
- Code for SDS Room. (entered by proctor)
- PPT Slide with Code to show at the start of the Exam on the screen in TCRC 1000 for students to see at 7:30 AM.
- Universal Code. (relaunch student exam)
- ExamSoft Support: https://examsoft.com/contact/

## Schedule for Day of Exam, Seating Charts, and Process

### 7:15 AM arrive for SDS Exam for P2 at 7:30 AM

- SDS Proctor and SDS students arrive at a little before 7:30 **AM to get set up.**
- Go to Faser 325.
- Begin at 7:30 AM.
- SDS Proctor manually types into the student computer the code for ExamSoft.
- Have students **call ExamSoft** if they have a tech issue.

### 8:00 AM Exam Prep

- Proctor and students arrive at **7:45 AM to get set up.**
- Go to TCRC 1000.
- Instruct students to turn off cell phones.
- Instruct students to leave backpacks in the atrium.
- Shuffle UMSOP Exam Seating Tickets.
- Hand one UMSOP Exam Seating Ticket to each student.
- Quiet on the set!
- Close the door at **8:00 AM.**
- Proctor waits to give the code at **8:00 AM.**
- Turn on the display at the podium.
- Type in Code on PPT in large font (~100 pt).
- Each student types in the code individually on their own device.
- Have students call ExamSoft if they have a tech issue.
- 

## Reminders for Students

- Backpacks and cell phones remain outside the testing room.
- Randomized seating with tickets given out (also used as scratch paper).
- All quiet on the set!
- Engage in original work: Honor Code.
- 

## Reminders for Proctors

- Walk the room (active proctoring).
- Refrain from using your cell phone.

- "Do the best you can" response to questions.
- Text/call TL/AC of the course if there is an issue with the exam or an item on the exam.



## Contact ExamSoft

### Telephone

**Sales & Technical Support:**
866.429.8889  or  954.429.8889

**Hours of Operation:** Monday - Friday
8:30am - 8:30pm EST

Please let me know if you have any issues, questions, or concerns.

Jay

Jay Pitcock, Pharm.D., BCPS

Clinical Associate Professor of Pharmacy Practice

The University of Mississippi School of Pharmacy

University of Mississippi Medical Center

2500 North State Street

Jackson, Mississippi 39216

T: (601) 984 – 2794 / F: (601) 984 – 2751

jpitcock@umc.edu

## Exhibit H ~ 08_18_2025 ~ TA Coordinator Reach out Pg 4

To schedule a meeting:

James J. Pitcock

calendly.com/jpitcock

Individuals who have received this information in error or are not authorized to receive it must promptly return or dispose of the information and notify the sender. Those individuals are hereby notified that they are strictly prohibited from reviewing, forwarding, printing, copying, distributing or using this information in any way.

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                    Tue, Aug 19, 2025 at 7:48 AM
To: "James J. Pitcock" <jpitcock@umc.edu>
Cc: "jlhawkin@go.olemiss.edu" <jlhawkin@go.olemiss.edu>, Jamie Stewart <jastewa7@olemiss.edu>, Noa Valcarcel <mvalcarc@olemiss.edu>, "srearl@olemiss.edu" <srearl@olemiss.edu>, "Seongbong Jo (seongjo@olemiss.edu)" <seongjo@olemiss.edu>, Joseph Dikun <jadikun@olemiss.edu>, Vitor H Pomin <vpomin@olemiss.edu>, "James J. Pitcock" <jpitcock@umc.edu>, "Kayla R. Stover" <kstover@umc.edu>

Hi Dr. Pitcock,

Thank you for providing a detailed overview of the exam procedures and expectations. I have noted the updated policies, exam dates, SDS process, and preparation steps, and I look forward to assisting with proctoring.

Please let me know if there are any additional tasks you would like me to complete in advance.

Best Regards,
Bennard
[Quoted text hidden]

Exhibit I ~ 08_18_2025 ~ TA Coordinator Reach out Pg 1

 THE UNIVERSITY OF
MISSISSIPPI

Ehiremen Eriakha <eberiakh@go.olemiss.edu>

## TA Information about PHCY 502: CV Module
2 messages

**James J. Pitcock** <jpitcock@umc.edu>                                                  Mon, Aug 18, 2025 at 1:48 PM
To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>, Jamie Stewart <jastewa7@olemiss.edu>, Noa Valcarcel
<mvalcarc@olemiss.edu>, Vitor H Pomin <vpomin@olemiss.edu>, "srearl@olemiss.edu" <srearl@olemiss.edu>, "Seongbong
Jo (seongjo@olemiss.edu)" <seongjo@olemiss.edu>, Joseph Dikun <jadikun@olemiss.edu>
Cc: "James J. Pitcock" <jpitcock@umc.edu>

Greetings Bennard,

This is Jay Pitcock, the TL for PHCY 502: Integrated CV module. I am dropping a quick note to
give you a warm welcome to our module team and give you some brief information, expectations,
etc.

I have added you to the Blackboard Ultra course, so you should have access now.   Our module
will take place from September 2 – 26th. As with all the other modules it will happen in the main
auditorium, Monday – Friday from 9:00 to Noon.

We will not have class on Monday, September 1 due to Labor Day Holiday and Friday, September
12 due to PLS Leadership Conference.

Main expectations/duties: make sure that the Zoom is recording lectures, help grade or input
graded assignments, help proctor exams, and help facilitation in-class activities as applicable.

If any of the module team will need your assistance with grading or facilitating, they will reach out
to you individually with instructions. I found that working directly with them one-on-one makes
things more efficient.

We can talk in more detail on Monday, September 2 after/before class. Please let me know ASAP
if you have any issues, questions, or concerns.

Again, welcome and looking forward to working with you.

Jay

Jay Pitcock, Pharm.D., BCPS

Exhibit I ~ 08_18_2025 ~ TA Coordinator Reach out Pg 2

Clinical Associate Professor of Pharmacy Practice

The University of Mississippi School of Pharmacy

University of Mississippi Medical Center

2500 North State Street

Jackson, Mississippi 39216

T: (601) 984 – 2794 / F: (601) 984 – 2751

jpitcock@umc.edu


To schedule a meeting:

James J. Pitcock

calendly.com/jpitcock


Individuals who have received this information in error or are not authorized to receive it must promptly return or dispose of the information and notify the sender. Those individuals are hereby notified that they are strictly prohibited from reviewing, forwarding, printing, copying, distributing or using this information in any way.

---

**Ehiremen Erlakha** <eberiakh@go.olemiss.edu>                                    Tue, Aug 19, 2025 at 7:43 AM
To: "James J. Pitcock" <jpitcock@umc.edu>
Cc: Jamie Stewart <jastewa7@olemiss.edu>, Noa Valcarcel <mvalcarc@olemiss.edu>, Vitor H Pomin
<vpomin@olemiss.edu>, "srearl@olemiss.edu" <srearl@olemiss.edu>, "Seongbong Jo (seongjo@olemiss.edu)"
<seongjo@olemiss.edu>, Joseph Dikun <jadikun@olemiss.edu>, "James J. Pitcock" <jpitcock@umc.edu>

Hi Dr. Pitcock,

Thank you for the warm welcome and for sharing the details regarding the PHCY 502: Integrated CV module. I appreciate the clarity on expectations and duties, and I look forward to working with you and the rest of the module team.

Thank you again, and I look forward to connecting further on the first day of class.

Best regards,
Bennard
[Quoted text hidden]

Exhibit J ~ 08_21_2025 ~ Provisional Status Recommendation

Interoffice Memorandum
Department of Pharmacy Administration
University of Mississippi

**TO:**       Ehiremen (Bennard) Eriakha (Student Number 10955677)

**CC:**       Yi Yang, Chair

**FROM:**     Marie Barnard, Graduate Program Coordinator

**DATE:**     August 21, 2025

**SUBJECT:**  Recommendation for a Change in Status

On June 30, 2025 I sent you a memo as a warning that you had failed to meet a non-course work academic performance expectation, specifically, the required annual submission of the Abilities Transcript (AT). That memo specified that you could remediate this issue by meeting with your development mentor and submitting your updated Abilities Transcript to the department chair by August 15, 2025. That memo further indicated that failure to do so would result in a recommendation to the Graduate Dean that you have a change of status to provisional status.

Because you have not submitted your Abilities Transcript as of August 21, 2025, this memo serves as formal notice that the Department of Pharmacy Administration is recommending that the Graduate Dean change your admission status to provisional status. As Graduate Program Coordinator I concur with this recommendation. In order to be returned to full standing in the Pharmacy Administration graduate program for the Spring 2026 semester, you must do the following:

1. Meet with your development mentor to complete the Abilities Transcript and submit it to the department chair by September 30, 2025.
2. Meet weekly throughout the Fall semester with your thesis advisor to make progress on your thesis.
3. Successfully complete your Fall 2025 courses.

All of these actions must be completed per the deadlines in each item. Upon completion of all of these actions, I will submit a recommendation to the Graduate Dean that you be returned to full-standing in the graduate program in Pharmacy Administration.

Exhibit K ~ 08_21_2025 ~ Provisional Status Recommendation

---

**Interoffice Memorandum**
**Department of Pharmacy Administration**
**University of Mississippi**

---

**TO:**      Annette Kluck, Dean - Graduate School

**CC:**      Ehiremen (Bennard) Eriakha (Student Number 10955677)

Yi Yang, Chair - Department of Pharmacy Administration

**FROM:**    Marie Barnard, Graduate Program Coordinator - Department of Pharmacy Administration

**DATE:**    August 21, 2025

**SUBJECT:** Recommendation for a Change in Status for Ehiremen (Bennard) Eriakha (Student Number 10955677)

The Department of Pharmacy Administration recommends that the admission status of Ehiremen (Bennard) Eriakha (Student Number 10955677) be changed to provisional status. As Graduate Program Coordinator I concur with this recommendation. In order to be returned to full standing in the Pharmacy Administration graduate program for the Spring 2026 semester, we have asked Bennard to do the following:

1. Meet with his development mentor to complete the Abilities Transcript and submit it to the department chair by September 30, 2025.
2. Meet weekly throughout the Fall semester with his thesis advisor to make progress on his thesis.
3. Successfully complete his Fall 2025 courses.

We requested that all of these actions be completed per the deadlines in each item. Upon completion of all of these actions, I will submit a recommendation to you that Bennard be returned to full-standing in the graduate program in Pharmacy Administration.

Exhibit L ~ 08_22_2025 ~ Chair Assistantship Termination Pg 1

 THE UNIVERSITY OF
**MISSISSIPPI**

Ehiremen Eriakha <eberiakh@go.olemiss.edu>

---

## Assistantship Appointment Letter Status

4 messages

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                     Tue, Aug 19, 2025 at 9:32 AM
To: Yi Yang <yiyang@olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, Erin Renee Holmes <erholmes@olemiss.edu>, Jen Blakley
<jmblakle@olemiss.edu>, Alicia S Bouldin <abouldin@olemiss.edu>

Hi Dr. Yang,

I hope this email finds you well.

I am writing to kindly inquire about the status of my assistantship appointment letter for the upcoming Fall 2025 semester.
While I have received communication regarding my assigned teaching assistant responsibilities, I have not yet received
the official appointment letter from the department.

Could you please provide an update on when I might expect to receive it? Please also let me know if any additional
information is needed from me to help facilitate the process.

Thank you very much for your time and assistance.

Best regards,
Bennard

---

**Yi Yang** <yiyang@olemiss.edu>                                   Fri, Aug 22, 2025 at 5:20 PM
To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, Erin Renee Holmes <erholmes@olemiss.edu>, Jen Blakley
<jmblakle@olemiss.edu>, Alicia S Bouldin <abouldin@olemiss.edu>

Hi Bennard,

Thank you for reaching out. I regret to inform you that you are not eligible for a graduate assistantship for the Fall 2025
semester due to your provisional status.

As outlined in the Graduate School policies available at https://catalog.olemiss.edu/graduate-school/admission/categories,
*"Students admitted in this category are not eligible for graduate assistantships or federal financial aid."*

I understand this may not be the response you were hoping for. However, I encourage you to complete the necessary
requirements recommended by our program by the stated deadline to be returned to full standing in the graduate program
in Pharmacy Administration.

Thanks, Yi

Yi Yang, MD, PhD

Chair and Professor

Department of Pharmacy Administration

## Exhibit L ~ 08_22_2025 ~ Chair Assistantship Termination Pg 2

University of Mississippi School of Pharmacy

662-9151062

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                    Fri, Aug 22, 2025 at 5:25 PM
To: eriakha b <eriakhab@gmail.com>

[Quoted text hidden]

---

**Ehiremen Eriakha** <eberiakh@go.olemiss.edu>                    Fri, Aug 22, 2025 at 6:08 PM
To: Yi Yang <yiyang@olemiss.edu>
Cc: Marie Barnard <mbarnard@olemiss.edu>, Erin Renee Holmes <erholmes@olemiss.edu>, Jen Blakley
<jmblakie@olemiss.edu>, Alicia S Bouldin <abouldin@olemiss.edu>

Hi Dr. Yang,

Thank you for letting me know — I really appreciate your response.

Best regards,
Bennard

[Quoted text hidden]

Exhibit M ~ 08_22_2025 ⌐ Dean Provisional Status



THE UNIVERSITY OF
**MISSISSIPPI.** | **Graduate School**

August 22, 2025

Dear Ehiremen (Bennard) Eriakha (#10955677),

Your academic program faculty, via the Graduate Program Coordinator, submitted a recommendation to change your admission status to provisional on August 21, 2025.

The relevant policy can be found at
https://policies.olemiss.edu/ShowDetails.jsp?istatPara=1&policyObjidPara=11142506. The policy states, "Departments/programs may establish non-course related academic performance expectations...", "The advisor, graduate program coordinator, or department chair must provide reasonable warning to the student, in writing...", and "An appropriate faculty group, which may be the student's advisory committee or the graduate education committee of a department/program, may recommend dismissal or change in the admission status of a student."

Individuals on provision status must complete the requirements to attain full standing within 9 credit hours. Only students in full standing are eligible for an assistantship, federal financial aid, preregistration for enrollment for the next term, and sitting for the comprehensive examination.

Given the requirements within the program handbook and written warning, I support the recommendation of the program faculty to change your enrollment status to provisional. The program has provided the requirements to return to full standing in the memo to you dated August 21, 2025.

I regret that this is likely not the news you were hoping to receive. I wish you well as you complete the requirements outlined by the program.

Sincerely,

Annette S. Kluck, Ph.D.
Dean of the Graduate School
Professor of Leadership and Counselor Education
University of Mississippi

Cc:  Dr. Marie Barnard
     Dr. Yi Yang
     Ms. Robin Wiebe Bourgeois

Exhibit N ~ 07_29_2025 ~ Office of Civil Rights DOE (Bennard) Pg 1

| | |
|---|---|
| **TO:** | **Kristen R. Marrazza,** General Attorney, Office for Civil Rights |
| **FROM:** | Ehiremen (Bennard) Eriakha (Student Number 010955677) |
| **DATE:** | July 29, 2025 |
| **SUBJECT:** | Formal Complaint of Retaliation by Association and Retaliation for Engaging in Protected Activity |

**Dear Attorney Marrazza,**

I appreciate your ongoing evaluation of my twin brother's complaint—Omokhodion (Alfred) Eriakha (Student Number 10859637)—against the University of Mississippi, a public institution of higher education that receives federal financial assistance.

I am writing in good faith and pursuant to my rights under federal civil rights law to formally submit a **complaint of retaliation by association** and **retaliation for engaging in protected activity,** carried out by the University of Mississippi through its Department of Pharmacy Administration.

On **June 30, 2025**, both Alfred and I were simultaneously issued coordinated disciplinary memoranda by the Department of Pharmacy Administration. These actions were not only abrupt and unjustified—they were deeply distressing and have caused lasting harm to our psychological and emotional well-being. To describe the impact on our mental health as serious would be a profound understatement.

Despite our sustained good-faith efforts to raise concerns with university leadership, we have received no meaningful support, remedy, or acknowledgment. Instead, the University's continued silence, deflection, and lack of accountability have only amplified the harm and compounded our vulnerability.

## Exhibit N ~ 07_29_2025 ~ Office of Civil Rights DOE (Bennard) Pg 2

This submission is intended to both support Alfred's existing OCR complaint (#06252375, submitted July 1, 2025) and to serve as an independent formal complaint under federal civil rights law, as enforced by the U.S. Department of Education's Office for Civil Rights (OCR). Supporting documentation is included as Exhibits A through F. They include signed agreements, dated correspondence, formal memoranda, and email communications that collectively substantiate both the factual timeline and legal grounds for my complaint.

### I. Context

I began attending the University of Mississippi in August 2023 as a graduate student in the Department of Pharmacy Administration and remain enrolled in the Ph.D. program as of the date of this submission.

Until recently, I was engaged in a productive, one-on-one developmental mentoring relationship with Dr. Yinan Huang, a faculty member in the Department of Pharmacy Administration. This relationship was formally established in Fall 2024 through a signed mentoring agreement approved by the Department. It fostered a supportive environment grounded in mutual trust, psychological safety, and clear academic guidance.

However, in Summer 2025, this mutually agreed-upon mentoring relationship was unilaterally restructured—**without my knowledge, consent, written explanation, or reference to any applicable policy or procedural basis**. Specifically, Dr. Yi Yang, the Department Chair, inserted herself as a co-mentor into what had previously been a clearly defined and effective one-on-one arrangement, directly violating the terms of the mentoring agreement signed by both Dr. Huang and me.

Exhibit N ~ 07_29_2025 ~ Office of Civil Rights DOE (Bennard) Pg 3

Around the same time, Dr. Yang also began attending weekly research meetings that had, up to that point, been held exclusively between Dr. Huang and me. These one-on-one meetings had been an essential source of academic feedback, professional development, and psychological safety.

These abrupt and unexplained changes occurred during the same period that my twin brother, Omokhodion (Alfred) Eriakha, submitted formal complaints raising protected concerns regarding breach of contract, due process violations, retaliation, and the denial of disability-related accommodations—all within the Department of Pharmacy Administration.

During this period, I respectfully expressed concerns about the coercive nature of the unilateral restructuring of my mentoring arrangement, the lack of transparency, and the sudden sense of heightened surveillance and pressure I began to experience. I communicated these concerns clearly, professionally, and in writing, explicitly noting the emotional distress these changes were causing.

Rather than engaging with my concerns in good faith, the Department responded with silence, deflection, and ultimately, retaliatory action.

**II. Heightened Scrutiny and Surveillance**

Following Alfred's protected activities—most recently on June 3, 2025, when he formally raised concerns regarding departmental policy violations, denial of disability-related accommodations, and threats of retaliation—I experienced a marked increase in departmental scrutiny, coercion, intimidation, and ultimately, retaliation for raising protected concerns of my own. This escalation culminated in the issuance of a selectively framed disciplinary memorandum against me.

Exhibit N ~ 07_29_2025 ~ Office of Civil Rights DOE (Bennard) Pg 4

The timing, coordination, and lack of any legitimate justification for this adverse action strongly suggest that I am being targeted not only in response to my own protected activity but also in retaliation for my familial association with Alfred.

OCR's January 2025 *Revised Guidance on Retaliation* explicitly states that adverse actions taken against the family members or siblings of individuals who engage in protected activity may constitute unlawful retaliation—especially when such actions appear designed to penalize past reporting or deter future disclosures.

The following timeline illustrates the close temporal proximity between Alfred's protected disclosures and the sudden shift in my academic environment—marked by increased surveillance, coercive oversight, and adverse changes consistent with retaliation:

- **June 3, 2025:**
  *Alfred followed up with the Dean of the Graduate School, copying the Department Chair, Dr. Yi Yang, and Graduate Program Coordinator Dr. Marie Barnard, to report the Department's ongoing disregard for institutional policies, procedural fairness, and disability accommodation obligations.*

- **June 11, 2025:**
  *I was informed that Department Chair Dr. Yi Yang would begin attending my weekly research meetings with Dr. Yinan Huang. These meetings had previously been consistently one-on-one and served as a vital source of academic support, psychological safety, and professional development.*

- **June 13, 2025:**
  *I was notified that Dr. Yi Yang would now also serve as my co-developmental mentor alongside Dr. Huang. This abrupt and imposed change occurred without my request or consent and directly violated the mentoring agreement signed by Dr. Huang and me. No justification, policy reference, or procedural explanation was provided.*

Exhibit N ~ 07_29_2025 ~ Office of Civil Rights DOE (Bennard) Pg 5

Since these unilateral changes, what was once a supportive and secure mentoring environment has been replaced with one defined by intensified oversight, coercive pressure, and disregard for both procedural fairness and student well-being. I now question whether the Department Chair's presence extends to all of Dr. Huang's academic interactions—or whether this heightened scrutiny has been selectively and disproportionately imposed on me due to my familial association with Alfred, or for other undisclosed reasons.

## III. Shifting Rationales

The explanations I have received for the increased surveillance, heightened monitoring, and unilateral restructuring of my mentoring relationship have been consistently vague, contradictory, evasive, or entirely withheld. At no point have these justifications reflected transparency, consistency, or genuine concern for my academic development and psychological safety.

Instead, they appear designed primarily to protect or advance faculty interests—at the direct expense of student rights, autonomy, and well-being.

Specific examples of these shifting and inconsistent rationales include:

1. **Dr. Yi Yang** (Department Chair) initially stated that the restructuring was intended *"to support Dr. Yinan Huang's professional development,"* and claimed that it had been approved by *"all tenured faculty."*

2. **Dr. Yinan Huang**, however, disclosed during a virtual meeting on July 17, 2025, that Dr. Yang's decision to insert herself as co-mentor was actually to **"protect her"** (Dr. Huang), as she was planning to leave the university. This admission strongly suggests that the restructuring was not implemented to support my academic growth, but rather to shield faculty from

Exhibit N ~ 07_29_2025 ~ Office of Civil Rights DOE (Bennard) Pg 6

scrutiny—at the direct cost of my autonomy, psychological safety, and continuity of mentoring support.

3. **Dr. John Bentley,** another faculty member, explicitly told me that he could not disclose the reason for the restructuring due to unspecified "faculty rights." Yet in the same conversation, he advised me to set aside my concerns and to "just go along" without further inquiry— implicitly pressuring me to forfeit my rights in deference to unnamed faculty interests.

4. **Dr. Annette Kluck** (Dean of the Graduate School) offered only a generalized assertion that the changes were "*appropriate as outlined in the information provided by Dr. Yang.*" She neither addressed the detailed concerns I had documented nor offered any policy-based justification for the abrupt restructuring or its psychological and procedural harms.

These justifications—not only inconsistent but wholly lacking in procedural transparency, educational rationale, or reference to written policy—appear deliberately opaque and self-protective.

Additional troubling remarks made by Dr. Huang during the July 17, 2025, meeting further underscore this problematic dynamic:

- *"I am still searching for a job, transitioning to California, she [Dr. Yang] wants to protect me, that's why we did not tell you the truth."*
- *"We need to keep the faculty happy. If they are not happy, we may not be able to use data for our projects."*
- *"Dr. Yang was the one who recruited me. She sponsored you during the summer. She pays you."*
- *"The developmental session wouldn't take much of your time. It could last only three minutes."*
- *"You don't need to say much during the developmental session—just do me the favor... I know it must be hard, but this is the decision."*
- *"You will be smart enough to make the right decision—to make my life easier, your life easier, and everybody's life easier."*

## Exhibit N ~ 07_29_2025 ~ Office of Civil Rights DOE (Bennard) Pg 7

Following my respectful yet firm objections to the coercive and emotionally manipulative tone of this interaction, Dr. Huang sent a follow-up email (dated July 17, 2025) attempting to retroactively reframe the meeting as a neutral "notification." This after-the-fact recasting only reinforces the lack of transparency, the use of pressure tactics, and the overall pattern of bad-faith communication.

Taken together, these contradictory rationales, coercive strategies, and retroactive justifications reinforce the conclusion that the unilateral restructuring of my mentoring arrangement was neither procedurally legitimate nor educationally motivated—and may in fact have been pretextual.

This concerning pattern aligns directly with the U.S. Department of Education's January 2025 *Revised Guidance on Retaliation*, which cites **"inconsistent or shifting explanations"** as a core indicator of retaliatory motive—particularly in academic settings where power imbalances may be used to suppress student concerns and rights. The parallels here are unmistakable and strongly support the conclusion that the actions I experienced were retaliatory in nature.

## IV. Protected Activities

Between June 13 and June 24, 2025, I raised multiple good-faith concerns—each squarely within the domains of procedural fairness, transparency, mentoring integrity, and graduate student rights. These communications, which were made respectfully and in writing, addressed the following:

- The **coercive restructuring** of my mentoring agreement—specifically, the unilateral imposition of the Department Chair, Dr. Yi Yang, as a co-mentor for the 2024–2025 academic year. This unilateral restructuring directly violated a mutually signed, department-approved mentoring agreement (dated July 19, 2024) that formalized a one-on-one developmental mentoring relationship with Dr. Yinan Huang (see Exhibit A).

Exhibit N ~ 07_29_2025 ~ Office of Civil Rights DOE (Bennard) Pg 8

- The **breach of multiple provisions** of that agreement, executed without my knowledge, consent, or any policy-based explanation or procedural justification (see Exhibit D).

- Dr. Yi Yang's attempt to **impose an in-person meeting** format for my developmental mentoring sessions—despite my clearly documented preference for a virtual format and prior mutual agreement with Dr. Huang confirming virtual engagement (see Exhibit B).

- Unwarranted surveillance, intrusion, and coercive oversight by Dr. Yi Yang, who inserted herself into previously one-on-one weekly research meetings with Dr. Huang and intended to do the same for my developmental mentoring sessions.

- The resulting erosion of psychological safety, trust, and student autonomy within what had previously been a respectful and developmentally productive mentoring relationship.

These concerns were communicated clearly, respectfully, and in accordance with institutional policy to both departmental and university leadership. I made every effort to engage constructively, inviting dialogue and resolution. Yet rather than respond in good faith, the Department engaged in direct retaliation.

Several individuals were aware of my protected activities as well as the subsequent retaliatory actions taken against me. These include both witnesses and institutional actors who received direct communication about my concerns:

- **Alfred Eriakha**

  Relationship: Twin brother

  Email: eriakhab@gmail.com

  Role: Witness to multiple key events, including procedural concerns, written communications, adverse actions taken against me, and also a co-complainant in related retaliation concerns.

- **Dr. Yinan Huang**

## Exhibit N ~ 07_29_2025 ~ Office of Civil Rights DOE (Bennard) Pg 9

Role: Assigned developmental mentor, recipient of protected concerns

Email: yhuang9@olemiss.edu

Affiliation: Department of Pharmacy Administration, University of Mississippi

- **Dr. Yi Yang**

  Role: Chair, Department of Pharmacy Administration; directly implicated in both mentoring coercion and retaliatory action

  Email: yiyang@olemiss.edu

- **Dr. Marie Barnard**

  Role: Graduate Program Coordinator, author of the June 30 disciplinary memorandum

  Email: mbarnard@olemiss.edu

- **Dr. Annette Kluck**

  Role: Dean of the Graduate School; recipient of escalated concerns

  Email: askluck@olemiss.edu

- **Dr. John Bentley**

  Role: Faculty Member; copied on protected correspondence

  Email: phjpb@olemiss.edu

These individuals were either recipients of my protected communications or were directly involved in the retaliatory action(s). Documentation sent to them includes dated emails, attachments, and rebuttals outlining procedural irregularities, violations of the signed mentor-mentee agreement, and concerns regarding student agency, autonomy, and psychological safety.

I have no reason to believe that any of the witnesses or named individuals would refuse to speak with the Office for Civil Rights. I expect that they will provide truthful and accurate information if contacted, as they were directly involved in or informed of the relevant events.

Exhibit N ~ 07_29_2025 ~ Office of Civil Rights DOE (Bennard) Pg 10

### V. Retaliation for Protected Activities

On **June 30, 2025**—just days after my protected disclosures—I received a selectively framed disciplinary memorandum falsely alleging non-submission of the Abilities Transcript (AT). The memorandum not only misrepresented the facts, but also explicitly threatened punitive sanctions, including reclassification of my student status from full to provisional, if I did not comply with mentoring conditions I had explicitly identified as coercive and psychologically unsafe.

This adverse action was:

- **Factually inaccurate**, as I had repeatedly communicated my intent to complete the AT under fair and psychologically safe conditions (see Exhibit B),

- **Procedurally deficient**, as it was issued without addressing the unresolved protected concerns I had raised (see Exhibit C), and

- **Retaliatory in nature**, as it closely followed my protected activity and functioned as a punishment for asserting my rights (see Exhibit D).

My communications made clear that the sudden, unexplained restructuring of my mentoring agreement—and its psychological impact—had fundamentally disrupted the trust and developmental foundation the AT was meant to reflect. Rather than engage with these legitimate concerns, the Department chose to reframe my good-faith advocacy for a safe academic environment and a procedurally sound mentoring process as misconduct warranting discipline.

This constitutes a textbook case of retaliation under federal civil rights law. The temporal proximity, lack of justification, punitive tone, factually inaccurate, procedurally deficient, and selectively misleading nature of the June 30 memorandum all align with the indicators outlined in OCR's January 2025 *Revised Guidance on Retaliation*, including:

Exhibit N ~ 07_29_2025 ~ Office of Civil Rights DOE (Bennard) Pg 11

- Temporal proximity between protected activity and adverse action,

- Inconsistent or shifting explanations,

- Heightened scrutiny and surveillance,

- Disproportionate responses to student concerns, and

- Targeting of individuals who assert their rights.

I respectfully submit that my actions were not only protected but also undertaken in the spirit of promoting fairness, transparency, and accountability within an academic setting. The response I received was punitive, psychologically harmful, disproportionate, and unjust.

These adverse actions were taken by individuals within the Department of Pharmacy Administration, including:

- **Dr. Yi Yang**, Chair of the Department of Pharmacy Administration, co-authored the June 30, 2025, disciplinary memorandum and directly engaged in acts of coercion, intimidation, and retaliatory surveillance,

- **Dr. Marie Barnard**, Graduate Program Coordinator, who authored and signed the June 30, 2025, disciplinary memorandum threatening punitive academic sanctions tied to non-submission of the AT—despite having full knowledge of the coercive mentoring restructuring and the unresolved procedural concerns I had raised in good faith.

Even more troubling, the memorandum I received closely mirrored—in tone, timing, and authorship—the simultaneous disciplinary action taken against my twin brother, Omokhodion Alfred Eriakha, on the very same day.

Specifically, the June 30 disciplinary memorandum I received:

Exhibit N ~ 07_29_2025 ~ Office of Civil Rights DOE (Bennard) Pg 12

- Was authored and signed by the **same faculty members** who simultaneously sanctioned Alfred,

- Included **no reference to prior performance issues,** academic misconduct, or violations of clearly documented departmental or university policy,

- Contained explicit threats of punitive academic sanctions, including reclassification from full to provisional student status—threats that carry significant immigration-related consequences for international students, and

- Demanded compliance with mentoring conditions I had already identified as coercive, intimidating, and psychologically unsafe.

These actions have created an atmosphere of intimidation, surveillance, and coercive pressure—enforced under the looming threat of academic penalties and immigration-related consequences. The resulting psychological distress, disruption of academic development, and fear of reprisal have had a profound chilling effect on my ability to participate fully and meaningfully in my academic program. I now hesitate to assert my rights or raise concerns—rights that are explicitly protected under federal civil rights law—because past good-faith efforts have resulted only in punishment.

o When I sought a clear rationale or policy-based justification for the mentoring changes, I received evasive, shifting, and contradictory explanations.

o When I respectfully resisted coercion, I was accused of noncompliance.

o When I documented my concerns and communicated them in writing, I was explicitly punished.

This pattern exemplifies unlawful retaliation—not only in form, but in sustained effect. It has disrupted my educational access, eroded my psychological safety, and left me uncertain whether

Exhibit N ~ 07_29_2025 ~ Office of Civil Rights DOE (Bennard) Pg 13

future academic interactions will be opportunities for mentorship or mechanisms of surveillance and reprisal.

The U.S. Department of Education's January 2025 *Revised Guidance on Retaliation* makes clear that retaliation includes not only discrete adverse actions but also ongoing behaviors and environmental conditions that deter protected activity, impair educational participation, or cause psychological harm. The conditions I have described meet that standard and continue to impact my academic standing, professional development, and personal well-being.

**VI. Legal Context and Request for OCR Action**

I respectfully assert the following:

- My twin brother, Omokhodion Alfred Eriakha, engaged in protected activities by formally reporting concerns regarding breach of contract, denial of disability-related accommodations, and retaliation within the Department of Pharmacy Administration.

- In the immediate aftermath of Alfred's protected disclosures, I began to experience heightened surveillance, coercive pressure, and escalating psychological distress.

- Between June 13 and June 24, 2025, I personally engaged in protected activity by raising formal, written concerns regarding:
  - The **coercive restructuring** of my mentoring arrangement,
  - **Breaches** of a signed and department-approved mentoring agreement, and
  - The **loss of psychological safety** and **autonomy** within my academic environment.

- On June 30, 2025, I was issued a disciplinary memorandum falsely alleging failure to submit the Abilities Transcript (AT), despite:

- o My **documented willingness** and repeated good-faith efforts to complete the AT under psychologically safe and procedurally fair conditions,

- o My **repeated, good-faith requests** for clarification—none of which received a substantive response—regarding the unresolved restructuring,

- o And the **close temporal proximity**—just days—between my protected disclosures and the issuance of the adverse action.

The timing, coordination, and lack of legitimate, policy-based justification for the Department's June 30 actions—combined with prior coercive conduct—are strongly suggestive of pretextual and retaliatory intent. I believe these actions were taken to intimidate, silence, and punish me for asserting my own rights, for my familial association with Alfred, and to deter future lawful advocacy.

**VII. Request for OCR Action**

In light of these facts, I respectfully request that the U.S. Department of Education, Office for Civil Rights (OCR):

1. **Formally incorporate this submission** into Complaint #06252375 as additional evidence of escalating retaliation and procedural violations carried out by the University of Mississippi through its Department of Pharmacy Administration,

2. **Alternatively,** docket this as a new but related complaint, with appropriate cross-referencing under OCR's procedural guidelines,

3. **Investigate the June 30, 2025, adverse actions** as part of a broader pattern of coordinated retaliation, coercion, and intimidation directed at both Alfred and me,

4. **Examine the Department of Pharmacy Administration's mentoring practices** for compliance with federal civil rights obligations—particularly the requirement that mentoring

relationships remain voluntary, developmentally appropriate, transparent, and free from coercion, retaliation, intimidation, surveillance, or psychological harm,

5. **Recommend corrective actions** necessary to restore an educational environment free from coercion, retaliation, and intimidation,

6. **Recommend specific remedies**, including:

   a. Immediate restoration of my **one-on-one mentoring relationship** with Dr. Yinan Huang, as formalized in the signed agreement dated July 19, 2024 (Exhibit A),

   b. **Removal** of the June 30, 2025, disciplinary memorandum—and any related threats, sanctions, or adverse notations—from my official student record,

   c. A formal written **non-retaliation assurance** from the University, guaranteeing my continued participation in graduate education free from reprisal, and

   d. **Implementation of independent oversight measures** to ensure all future mentoring arrangements are voluntary, transparently documented, and fully compliant with university policy and federal civil rights protections.

These requested remedies are essential for restoring procedural fairness, student autonomy, psychological safety, and institutional accountability within the University of Mississippi's Department of Pharmacy Administration.

I have not filed a lawsuit in state or federal court, and to the best of my knowledge, no federal, state, or local civil rights enforcement agency is currently reviewing, investigating, or has resolved the same allegations raised in this submission.

As of the date of this submission, the allegations remain unresolved. The University has not taken any steps toward resolution, remediation, or accountability. The June 30, 2025, disciplinary memorandum remains active, and the coercive mentoring structure and threat of reclassification

of my student status from full to provisional continue to impair my academic safety and participation.

## VIII. Supporting Exhibits

To substantiate the claims and factual narrative presented in this submission, I respectfully include the following exhibits:

- **Exhibit A**: Signed one-on-one mentoring agreement with Dr. Yinan Huang (dated July 19, 2024).

- **Exhibit B**: Email correspondence documenting my protected concerns and the Department's subsequent interference (June 13–24, 2025).

- **Exhibit C**: June 30, 2025, disciplinary memorandum issued against me by the Department of Pharmacy Administration.

- **Exhibit D**: Formal written rebuttal submitted in response to the June 30 disciplinary memorandum.

- **Exhibit E**: Email exchanges illustrating the Department's lack of transparency, evasiveness, and shifting explanations regarding the unilateral restructuring of my mentoring arrangement and related procedural concerns.

- **Exhibit F**: Email correspondence reflecting Dr. Yinan Huang's attempt to retroactively reframe the coercive July 17, 2025, meeting as a neutral "notification," despite prior pressured communication.

## IX. Final Reflection

At its core, this complaint concerns the inappropriate and unlawful exercise of institutional authority—particularly when students seek to assert their legally protected rights.

- I should not have to choose between safeguarding my autonomy, agency, and psychological safety, and preserving my academic standing.

- I should not be forced into silence or compliance out of fear of punitive sanctions, academic retaliation, immigration-related threats, or intrusive surveillance.

- I should never be punished or retaliated against for raising legitimate concerns—especially when those concerns are expressed respectfully, documented in writing, and communicated in good faith under both institutional policy and federal civil rights law.

The actions of the Department of Pharmacy Administration clearly violate the standards and prohibitions articulated under federal civil rights statutes, as enforced by the U.S. Department of Education's Office for Civil Rights (OCR). OCR explicitly prohibits intimidation, coercion, academic penalties, heightened scrutiny, or any form of reprisal in response to protected activity. Students must be able to raise concerns about discrimination, procedural injustice, or unsafe academic conditions without fear of retaliation.

The adverse actions described in this complaint—including the June 30, 2025, disciplinary memorandum, the resulting psychological harm, the coercive restructuring of my mentoring relationship, and the ongoing environment of intimidation—are all consistent with OCR's definition of unlawful retaliation.

I affirm that the information in this submission is true, accurate, and complete to the best of my knowledge. I remain fully willing to provide further documentation, clarification, or testimony as requested and commit to cooperating in good faith throughout the OCR's investigative and resolution process.

Respectfully submitted,

Exhibit N ~ 07_29_2025 ~ Office of Civil Rights DOE (Bennard) Pg 18

Ehiremen (Bennard) Eriakha

Email: eriakhabernard@gmail.com

## Exhibit O ~ 08_29_2025 ~ Differential treatment in mentor assignment

### PHAD Graduate Student Developmental Mentor Assignment – Fall 2025

| Faculty Mentor | Student Mentee |
|---|---|
| **Yang, Yi** | Junnan Qi |
| | *Diamant Gashi* |
| | |
| **Rosenthal, Meagen** | Prachi Prajapati |
| | Arman Arabshomali Mohammad |
| | Shadi Bazzazzadehgan |
| | *James Hawkins* |
| **Ramachandran, Sujith** | *Natalie Minton* |
| | *Ziqi Guo* |
| | |
| **Huang, Yinan (co-mentor, Yang, Yi)** | Ehiremen (Bennard) Eriakha |
| | |
| | |
| **Holmes, Erin** | Joanne Canedo |
| | Nga Weng (Ivy) Leong |
| | *Keerthana Iyer* |
| **Bentley, John** | Alfred Omokhodion Eriakha |
| | Ann Kate Meagher |
| | |
| **Barnard, Marie** | Omkar Ghodke |
| | Liang-Yuan (Claire) Lin |
| | Sai Veeramachaneni |

## A. INSTRUCTIONS

This packet contains all of the materials necessary to complete the *Abilities Transcript*. These instructions are designed to provide a brief overview of the process to be followed. More in-depth information is available in the *Abilities Transcript Student Manual* and *Abilities Transcript Faculty Manual*.

A complete *Abilities Transcript* discussion between the student and his or her Development Mentor should take place at least once a year, when it is completed for submission.

Faculty – Preparing for the Abilities Consensus Meeting:
1. Circulate the Student's AT prior to faculty meeting
2. Consolidate comments from the faculty for discussion with the student at the consensus meeting. Refer to *Abilities Transcript Faculty Manual* for assistance in completing these forms.

Student – Preparing for the Abilities Consensus Meeting:
1. Using notes gathered over the course of the year, complete a copy of the *Abilities Transcript* citing evidence of ability acquisition. Refer to the *Abilities Transcript Student Manual* for assistance.
2. Self reflect on your accomplishments over the year and set goals and objectives for the coming year given your current level of accomplishment.

Abilities Consensus Meeting
The purpose of this meeting is to allow the student and Development Mentor to complete the student's *Abilities Transcript* using the information generated and gathered individually. Together the faculty member and student will discuss each ability and the evidence gathered to support the acquisition of each ability. The information gathered individually and the information discussed during the meeting should be used to complete the final version of the student's Abilities Transcript.

After evaluating all of the evidence supporting ability acquisition, the student and faculty member should jointly decide on the level of ability acquisition by completing the Acquisition Summary section of the Abilities Transcript. Once the form is completed, the faculty member and student should each keep a copy and a copy should be given to the Departmental Chairperson by June 15.

Exhibit P - 2024 ~ AT Form Pg 2

## A. DEMOGRAPHICS

| STUDENT'S NAME | UM STUDENT ID NUMBER | DATE OF LAST REVIEW |
|---|---|---|
| DEVELOPMENT MENTOR | DEGREE SOUGHT (MS OR PhD) | TODAY'S DATE |
| TRACK (MKTG/ MGMT OR Outcomes) | YEAR YOU JOINED THE PROGRAM | ACADEMIC YEAR COVERED BY THIS REPORT 2023-2024 |

## B. ABILITIES EVIDENCE

DIRECTIONS: This form is designed to guide the self and peer evaluation of the student's acquisition of educational abilities. The student and the faculty member should complete the form individually and then meet to complete the form together (using the individually completed forms.) The jointly completed transcript should be given to the Departmental Chairperson by June 15. Individual transcripts will be kept confidential, and aggregate results will be publicly available.

This form enables the student and the faculty advisor to describe the progress made toward acquiring the educational abilities espoused and taught by the department's faculty. Each student will progress at his or her own pace. This form will enable students to monitor that progress, recognize acquisition of abilities, and set goals for developing their abilities.

For each ability:

    (1)    Use the EVIDENCE space to provide specific examples of ability acquisition. These examples should demonstrate the ability in question. Evidence is critical in determining ability acquisition.

    (2)    Use the ACQUISITION SUMMARY to provide your overall evaluation of ability acquisition for each ability and will assist in determining the Level of Ability Acquisition.

| ABILITY | EVIDENCE |
|---|---|
| 1. SCHOLARLY/PROFESSIONAL COMMUNICATION Communicates effectively to various audiences using a variety of mechanisms regarding concepts and research in pharmacy and healthcare | |
| 2. CRITICAL THINKING AND EVALUATION Thinks critically and objectively analyzes and interprets ideas, concepts, and information that influence pharmacy and healthcare; able to assess various perspectives of a subject matter to achieve better understanding of all inherent issues | |

Exhibit P - 2024 ~ AT Form Pg 3

| | |
|---|---|
| **3. THEORETICAL REASONING**<br>Constructs plausible explanations for phenomena that exist in pharmacy and healthcare using theories, conceptual frameworks, and/or other scientific evidence | |
| **4. RESEARCH MANAGEMENT**<br>Generates ideas and questions of interest to pharmacy and healthcare that are suitable for research, develops proposals to address those questions, and completes and defends the research conducted to answer the generated research questions | |
| **5. DATA MANAGEMENT**<br>Selects appropriate datasets to use; creates and manages datasets | |
| **6. STATISTICAL ANALYSIS**<br>Selects appropriate statistical analysis techniques and analyzes data to find answers to research questions | |
| **7. ETHICS**<br>Application of professional ethics to research, scholarship, and education; demonstrates ethical conduct including honesty, integrity, accountability, confidentiality, transparency, and respectfulness | |

Exhibit P - 2024 ~ AT Form Pg 4

| | |
|---|---|
| 8. SCHOLARLY AND PROFESSIONAL CITIZENSHIP<br>Provides leadership and service to scientific and professional organizations, both locally and nationally | |
| 9. SELF-REFLECTION<br>Critically evaluates the quality of your own performance in various roles (academic, professional, personal) and in various settings | |

Exhibit P - 2024 ~ AT Form Pg 5

**C. ACQUISITION SUMMARY**

| | Level 1 | | | Level 2 | | |
|---|---|---|---|---|---|---|
| | Beg. | Inter. | Adv. | Beg. | Inter. | Adv. |
| 1. Scholarly/Professional Communication | | | | | | |
| 2. Critical Thinking and Evaluation | | | | | | |
| 3. Theoretical Reasoning | | | | | | |
| 4. Research Management | | | | | | |
| 5. Data Management | | | | | | |
| 6. Statistical Analysis | | | | | | |
| 7. Ethics | | | | | | |
| 8. Scholarly and Professional Citizenship | | | | | | |
| 9. Self-Reflection | | | | | | |

**ADDITIONAL COMMENTS:**

_____

_____

_____

_____

STUDENT'S SIGNATURE: _____     DATE: _____

FOR FIRST AND SECOND YEAR STUDENTS:
PEER MENTOR SIGNATURE (OPTIONAL): _____     DATE: _____

DEVELOPMENT MENTOR'S SIGNATURE: _____     DATE: _____

Exhibit P - 2024 ~ AT Form Pg 6

**D.** **Transcript Worksheet**

Please report the number of indicated activities in which you have been involved. These numbers should include work that you have completed since the last transcript.

*Scholarly/Professional Communication*

1.   Number of Presentations

|  | Local/Regional | National/International |
|---|---|---|
| Posters | | |
| Podiums | | |
| Invited presentations | | |
| Class Presentations/Seminars | | |
| Lectures | | |
| CE Presentations | | |
| Other | | |
| **Presentations Total** | | |
| **Presentations involving faculty** | | |

2.   Number of Publications

|  | Submitted | Published* |
|---|---|---|
| Peer-reviewed pub | | |
| Non peer-reviewed pub | | |
| Book chapters | | |
| Books | | |
| Monographs | | |
| Newsletters | | |
| Editorial | | |
| Other | | |
| **Publication Total** | | |
| **Publications involving faculty** | | |

*Each contribution should only appear in one column.

Exhibit P - 2024 ~ AT Form Pg 7

*Research Activity*

|  | Quantity |
|---|---|
| Number of Research Prizes Awarded/Research Awards (e.g., poster presentation award) |  |
| Number of Research Proposals Submitted for Funding |  |
| Number of Research Proposals Funded |  |

*Please list all research proposals funded and your role (PI/ investigator/research assistant, etc)*

*1.*
*2.*
*3.*
*4.*

*Analysis*

|  | Quantity |
|---|---|
| Number of manuscript reviews conducted for peer-reviewed journals (independently or with a faculty member) |  |
| Number of abstract reviews for professional/scientific conferences |  |

*Scholarly/Professional Citizenship*
*\*citizenship also includes CE presentations, abstracts/manuscripts reviewed however they are counted above*

|  | Local/Regional | National/International |
|---|---|---|
| Number of association memberships |  |  |
| Number of elected offices held |  |  |
| Number of committee memberships |  |  |
| Conferences attended (Regional or National) |  |  |
| **Citizenship total** |  |  |

*Please circle each organization listed below if you are a member:*
*ISPOR*
*PMRG*

Exhibit P - 2024 ~ AT Form Pg 8

*APhA*
*ASHP*

## E.   Future Goals and Objectives

Goals for the upcoming academic year:                    Current Academic Year: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Objectives that will enable accomplishment of your goals:

_____

_____

_____

_____

_____

_____

_____

_____

_____

Exhibit Q - 2024 ~ AT Guide Pg 1

# The Abilities Transcript Student Manual

## Version 1.3
### (2012)

**Instrument to Facilitate Graduate Development**
**Department of Pharmacy Administration**
**The University of Mississippi**

Exhibit Q - 2024 ~ AT Guide Pg 2

© 1999, Alicia Bouldin, Noel Wilkin

Developed by:
Alicia Bouldin and Noel Wilkin
The University of Mississippi
School of Pharmacy
Faser Hall
University, MS 38677
(601) 232-7262

The Abilities Transcript is an educational adaptation of an existing model for Performance Appraisal that was used by Eli Lilly and Company.

# WHY ASSESS?

The concept of assessment is often associated with course examinations, project grades, and other tools used to assign "grades" on an end-of-term report or to rank students. When thought of only in those terms, assessment may carry the connotation of "judgment." And while those activities do comprise one way in which assessment is used in higher education today, the value of assessment is being increasingly recognized as a constructive tool, to guide improvement—both personal and institutional.

In order to provide that guidance for continued improvement, expectations must be developed. How will we know if we are on track, unless we have a path delineated and markers of progress along the path?

Each graduate student has the opportunity to choose an individualized course of instruction during his/her tenure as a student in this department. And along those lines, each student will have his/her own expectations regarding the desired outcome of his/her education. "Where am I? Where do I want myself to be in two years? and How well is the department enabling me to arrive at that destination?" These are individualized expectations.

In addition to individual expectations for your own education, the Department has general expectations of every student in the graduate program. These expectations correspond to the core of instruction that has been prescribed by the department. Each student member of the department is expected to develop a set of general abilities. Those abilities are multidimensional attributes, composed of knowledge, skills, and attitudes.

---

### Ability = Knowledge + Skills + Attitude

The knowledge in the equation above refers not to knowledge in a content area, but in knowledge about the ability being developed (i.e., if communication is the ability in question, it is not the knowledge of the content of a presentation, but the knowledge of the process of communication itself.) Likewise, the skills and attitude referred to apply to the ability itself.

---

The general abilities identified by the Department are *scholarly/professional communication, research, analysis, scholarly/professional citizenship, ethics, theoretical reasoning, and self-reflection.* These abilities are defined in more detail on the **Abilities Transcript** (attached) and in the **Departmental Assessment Record** (on file in the Departmental Office).

These seven abilities may be acquired at differing rates, depending upon student emphasis and progression. While the rate of development through the program may be individual, the department does expect each student to function at a given level (Level 1) upon completion of the Master's curriculum and thesis, and at a more advanced level (Level 2) upon completion of the Doctoral work.

Exhibit Q - 2024 ~ AT Guide Pg 4

**Self-assessment**
Self-assessment is a valuable tool. If approached properly, it provides the opportunity to be the biggest contributor to your own development. With the pressures that so often accompany our learning environments, few of us have made the time to take a detailed look at our own selves, identifying our strengths and resolving to improve our shortcomings as learners. Self-assessment increases your involvement in your own learning, and can even heighten your awareness of how you learn and how you relate to classroom teaching styles.

You have probably been asked to assess your learning or your development in situations prior to graduate school, although the label "assessment" may not have been attached to many of those situations or activities. Several examples may come from your class experiences, including the "What I Did on My Summer Vacation" and other autobiographical essays. Case studies of ethical dilemmas may have required you to assess your position, reflective of your values. Classroom debates may have encouraged you to evaluate your ability to form a suitable argument before proposing it. You probably reviewed and revised your own papers before submitting them. Or you may have been required to rate your own performance on a group project.

Self-assessment also occurs in formats less structured than classroom activities. You may have written an e-mail message to a friend including dialogue about your study habits ("I always seem to wait until the last minute..."); an innovative idea ("What if we came up with a website to share information about ____?"); or your performance on the tennis court ("I played better this afternoon than I have in several weeks!"). Also, some individuals maintain journals of their thoughts and activities. Recording goals in your iPad or iPhone requires an evaluation of what you have done and what you expect to do. Each of these activities requires a certain amount of self-evaluation and reflection, albeit perhaps not consciously labeled as such.

If you have not yet encountered a need to assess yourself and your abilities, you soon will. Every job interview requires some self-assessment in order to provide the information that your future employer seeks ("What are your strengths? What abilities do you have that would be useful to us as an employer? How will you apply what you have learned to this job?").

Beyond its value to you as an individual student, assessment of your development has direct value the Department of Pharmacy Administration (and thus indirectly to students who follow you in the program).

**Departmental Assessment**
One of the major advantages to the department of your individual assessment is in the contribution to the improvement of coursework. Your input is a valuable evaluation of the effectiveness of the program in aiding students to meet expectations. As you review your own development, you may be able to identify ways in which the department could have better facilitated that development.

Graduate students are highly visible products "manufactured" by the department. Therefore, quality of the department is reflected in the quality of the products generated. Take, as an analogy, an automobile ordered from the factory to customer specifications (color, trim, accessories, etc.). Ideally, each graduate student will be such a product--individualized

according to his/her own expectations, but the sturdy foundation supplied according to core specs will be common to each.

Those products, or students, having gone through each station of the manufacturing process, have a unique opportunity and perspective from which to identify areas for improvement in those stations. (Equating a statistics course with a welding station on an automobile assembly line: "I would feel more solid had my frame been better welded." Or equating a marketing theory course with engine installation: "I could not feel more confident in my ability to understand what creates the driving force. What would the car be without its engine?")

Student contributions to departmental assessment are not disregarded. In fact, they are highly regarded. In the past, student suggestions and assessment of their experiences within the department have led to curricular change, including the deletion of courses that did not add significant value to the experience, addition of courses that provide integral information, and modification of the order in which courses should be taken.

Not only is assessment valuable to the department. It is also mandated of the department by Southern Atlantic Conference Schools (SACS). This and other governing bodies have recognized the need to ensure the value to taxpayers of public education. Therefore, SACS is requiring that value in education be demonstrated through a variety of assessment plans. The University of Mississippi is participating in this assessment for value. Assessment plans for the graduate programs within the School of Pharmacy are individualized by department, and are created by members of each department and submitted for the approval of the University Assessment officials and SACS.

**The Purposes of Timely Assessment**
A single assessment in the form of an exit interview has some value to the department, but the benefit to you as a student is limited. It is much more difficult for the student to redirect efforts or improve on any shortcomings when the graduate experience is already completed. How much more valuable to the individual would be periodic evaluations, allowing any needed changes in direction to occur before traveling for years down a road that is unlikely to satisfy the expectations of the student or the department.

By enabling assessment at the end of every year, this allows you as a student to chart your progress; you can identify where you are and where you have been during the year. It also allows you to provide timely objective feedback that might be useful for immediate improvements in the coursework you have completed.

# THE ABILITIES TRANSCRIPT

The "Abilities Transcript" is one of the chosen tools for assessment within the graduate programs of the Department of Pharmacy Administration. It is not a "grading" instrument, used as a "report card" for passing or failing grades. The graduate experience involves learning and growth in areas much broader than that represented by graded coursework. A tool was needed to aid in fostering that growth and development.

No ideal method of graduate assessment could be found among the models that were identified. Therefore, this instrument was developed by individuals within the Department of Pharmacy Administration, and is based in part on existing industry models designed to evaluate the professional development of employees.

The Abilities Transcript approach to assessment recognizes the uniqueness of each graduate student. How can a reliable and valid measure of development be standardized for graduate education within our department? Every student's experience is different, and those differences are encouraged and celebrated. Your own graduate experience should be tailored to you and your needs. You will find that the Department of Pharmacy Administration is willing extend itself wherever possible to make your graduate experience fit your expectations. Regular assessment through the use of the Abilities Transcript will enable the progressive realization of both your expectations and those of the department.

The Abilities Transcript is not a perfect tool. It has both advantages and disadvantages.

DISADVANTAGES:
- Time involved (both your time and that of the faculty members associated)

ADVANTAGES:
- Input to encourage improvement in departmental offerings (a formal voice)
- Timely feedback from faculty on your performance and their expectations
- Goal-directed guidance of your personal educational program
- Structured management of your graduate "career," enabling you to better get what you want out of your education
- Facilitation of well-rounded professional development
- Learning that occurs through the assessment process itself
- Preparation for curriculum vitae or teaching portfolio

# COMPLETING THE ABILITIES TRANSCRIPT

1. Preparing for the development consultation
   - Assemble (brief descriptions of) collected evidence supporting your development of the core abilities recognized by the department.
   - Obtain a copy of the Abilities Transcript forms, including the Transcript Worksheet, to help you gather information.
   - Review your year's experience, and make an effort to identify areas of professional growth over that time. (Allow yourself to think of areas of growth outside the core abilities. Your graduate experience is likely to include exposures

and experiences that are not necessarily subsumed under those seven abilities described.)

- Identify the core abilities in which you feel you have strengths, and those in which you see opportunities for improvement.
- Review the objectives outlined during your previous development consultation (where applicable). Were they met? If not, why?
- Note any personal goals or objectives that you would like to attain during the next semester, given your current level of accomplishment.

2. Preparing a draft Abilities Transcript
   - Complete a draft copy of the Abilities Transcript, citing evidence of your ability acquisition during the most recent year completed.
   - You should be able to notice progress in your development from semester to semester. This may be reflected in your own "Level assignments" on the Acquisition Summary portion (page 2) of the Abilities Transcript. Level 1 is for Master's Level development, and Level 2 is expected for Doctoral students.
   - The evidence that you include should support your opinion (reflected in your level assignment) of your ability acquisition for this semester. Spend some time in truthful reflection of your year's labors, and be realistic in the assessment of your abilities.
   - The level assignments cannot in all cases be made given easily quantifiable evidence; by nature, the assessment of ability acquisition will involve a significant subjective element. However, the table below may serve as a guide to help you summarize your ability acquisition for the semester:

| Level Assignment | Possible Interpretation |
|---|---|
| Beginning | Acquisition of this ability has begun, and is still in its infancy. |
| Intermediate | The evidence available demonstrates an increasing acquisition of this ability, and increasing opportunities to utilize the skills and knowledge contributing to that ability. |
| Advanced | You demonstrate a proficiency in this ability that is conducive to graduation (MS/PhD). Evidence suggests that you have acquired the ability to the extent that satisfactory performance (at Level 1/Level 2) may be anticipated in environments beyond the Departmental setting. |

- Not all abilities are expected to develop at the same rate. There may be semesters when your time management efforts enhance the development of certain abilities but leave others stagnant (ex., a heavy courseload may give you ample opportunity to develop your analytical abilities, but may reduce the time you have available to devote to activities supporting scholarly/professional citizenship).

Exhibit Q - 2024 ~ AT Guide Pg 8

3. Consultation with Development Mentor (a faculty member of your choice)

> You and your Development Mentor will schedule a consultation meeting at least one week prior to its occurrence.

> In preparation for the consultation, your Development Mentor will complete a copy of an Abilities Transcript evaluation for you--independently of your input, but using input collected from other faculty with whom you have had contact during the year. (If you would like for your Mentor to have input from other sources, such as a summer internship mentor, provide your Mentor with that information.)

> Several steps will occur during the consultation:
> - The two of you will, together, review the evidence (that which you have collected and that from external sources) regarding ability development during the current semester.
> - Discussion will follow, during which levels indicating your current development status for each of the core abilities will be agreed upon. This is a joint decision, and equal contribution on the part of both the Student and the Mentor are expected. Understand that this assessment, which combines both objective and subjective elements, is not a "grade." The level assignments provide evidence of your developmental progress through the course of the graduate program.
> - The level assignments also enable you and your Mentor to see where strengths lie and where improvements may be made — both in yourself, and in the department's delivery of course content.
> - Based on your discussion, the Development Mentor will assist you in the formulation of realistic goals and objectives for the next semester, and develop a tentative plan (on paper) for accomplishing them.

4. File completed Abilities Transcript
   - Retain a copy of your completed Abilities Transcript and your goals statement for your records.
   - Your Development Mentor will also keep a copy and will provide a copy to the department chair, for retention in the Departmental Assessment File that is kept in the Departmental Office.

## SUGGESTIONS FOR YOUR ABILITIES TRANSCRIPT

Don't wait until the last minute to consider your progress and to assemble your evidence. However, do not be intimidated if you do find yourself at the end of the semester without having given it a thought. Procrastinating may necessitate a more concerted effort at the end of the semester; but any time dedicated to your own development is time well-spent.

Keep a "personal" file folder in the front of one of your desk drawers. Throughout the semester, drop things into it that will help you assimilate supporting evidence of your development. Having these items centrally located will also help in the assembly of an updated CV.

Exhibit Q - 2024 ~ AT Guide Pg 9

Items you might wish to include in the folder:

- <u>Kudos</u> – Throughout the course of the semester, you may receive notes of appreciation, or e-mailed compliments, or letters of commendation for a job well-done. Save them.
- <u>Abstracts</u> – Whether your presentation or article submissions are accepted or not, chances are that you spent a significant amount of time on those efforts.
- <u>Publications</u> – Include published evidence of your written communication skills. These may be journal articles, web pages, newsletters, etc.
- <u>Evidence of involvement</u> – Many graduate students are involved with organizations, local and national (AGSB, ISPOR, PMRG, student chapters of the professional fraternities, APhA, NCPA, etc.).
- <u>Calendar</u> – Filing your calendar pages may help you to remember things that you did, long after you did them.
- <u>Teaching journal entries</u> – Those involved with Teaching Assistant responsibilities may have an opportunity to reflect upon those experiences. Keeping a "teaching journal" (what worked for a topic, what didn't, ideas for next time, etc.) is a good example of reflective self-assessment.
- <u>Slides/handouts</u> from seminar presentations, undergraduate lectures, etc. – These provide documentation of the information that you have shared, and how you have shared it.

Refer to your most recently completed Abilities Transcript periodically (weekly? monthly? it's a personal choice) throughout the semester to keep yourself focused on the goals and objectives set by you and your advisor.

# EXAMPLES OF EVIDENCE

Following are examples of tangible things that might be considered as evidence for each of the core abilities that our department seeks to develop. The examples listed are primarily to give students an idea of items that may qualify; each project, communication, etc. must be considered on an individual basis. Don't get caught up, however, in tallying these quantitative and tangible examples. Learn also to recognize less tangible evidence of your development in these abilities.

DOCUMENTATION will be very helpful in your review. It will also be a useful (perhaps even necessary) practice in virtually any career path you choose. So begin developing the habit of documentation now.

Make notes of your own progress in the identified areas. Your notes need not be extremely detailed (although you may benefit from the details later), as long as they can remind you sufficiently of your discussions, projects, thoughts, etc. to support your opinion of your progress.

The following are ideas or examples of evidence that you can begin collecting. **The lists merely provide suggestions, and are not by any means inclusive.** Many other opportunities exist, as each graduate experience is an intensely personal one.

**Scholarly/Professional Communication**
*Communicates effectively to various audiences using a variety of mechanisms regarding concepts and research in pharmacy and healthcare*

Examples of evidence include:
Oral communication
> Poster, podium, and invited presentations at local, regional, national, and international meetings
> Research seminars and presentation ratings from seminar
> Provide lectures in class
> Presentation of continuing education segment in a live program
> Speeches to student or alumni groups
> Oral comprehensive exam
> Thesis/dissertation defense
> Internship/job interview

Written communication
> Publications (peer-reviewed, non-peer reviewed, book chapters, books, monographs)
> Alumni or practitioner newsletters
> Web pages authored
> Grant proposal
> Abstract submission (writing abstract) and poster development
> Thesis/dissertation prospectus and final
> Written comprehensive exams

**Critical Thinking and Evaluation**
*Thinks critically for the purpose of evaluating and interpreting ideas, concepts, and information that influence the fields of pharmacy and health care; be able to evaluate a subject matter from different perspectives to achieve a better understanding of the issue*

Examples of evidence include:
> Conduct literature review and summarize information about topic
> Review of books or journal articles- peer-review a manuscript
> Condense a broad topic into concise points for discussion in seminar setting
> Justify one's position or perspective
> Compare different philosophies and ideas; including comparing ideals with actual practice
> Develop succinct analogies for describing complex topics (e.g, in an undergraduate lecture)
> Evaluate or critique a research seminar/presentation, abstract, or publication

**Theoretical Reasoning**
*Constructs plausible explanations for phenomena that exist in pharmacy and healthcare using theories, conceptual frameworks, and/or other scientific evidence*

Examples of evidence include:
> Development of a conceptual model or framework for a research project

Exhibit Q - 2024 ~ AT Guide Pg 11

Application of theories from healthcare or from other disciplines in research project or proposal

Coherent participation in theoretical discussions in class or seminar

Formation of logical arguments rooted in theories

Interpret and explain study results based on theories or other evidence from the literature

Propose or explain relationships between study variables based on theories, conceptual frameworks, or other evidence from the literature; perhaps in class, seminar, or written proposal

Conceptualize a study idea and propose research objectives/hypotheses

**Research Management**
*Generates ideas and questions of interest to pharmacy and healthcare that are suitable for research, develops proposals to address those questions, and completes and defends the research conducted to answer the generated research questions*
*(Note-it is important for students to be able to conduct a research project or participate on a research team. Students must be able to propose a research project at appropriate level of detail, conduct the project, and adapt the plan appropriately as the project progresses.)*

Examples of evidence include:

Generation of research ideas as course requirements (e.g., conceptual papers)

Written research proposals

Research/grant proposals submitted to a funding agency

Research prizes awarded

Research projects conducted as PI or co-investigator (e.g., project as a RA, thesis project)

Participate on a research team and be responsible for a component of the project

Defense of ideas and methods (e.g., in seminar, in dissertation defense)

Can explain rationale for research methods utilized

Can collect data using primary data collection techniques

Can utilize secondary databases for research; including awareness of databases and ensuring appropriate data use agreements

Completion of a research project through an independent study

**Data Management**

Examples of evidence include:

Entering data into database

Creating and managing datasets

Knowing sources of data and the strengths and weaknesses of databases

Demonstrating knowledge of various types of databases

Data cleaning for a project or a dataset

Selecting an appropriate data set for answering a research question

**Statistical Analysis**
*analyzes data to find answers to research questions*

Exhibit Q - 2024 ~ AT Guide Pg 12

Examples of evidence include:

Looking for patterns in data to improve a program or answer a research question (may include qualitative data analysis)

Demonstrate use of statistical software in a class project or research project

Determining which statistical test is most appropriate to conduct to test the hypothesis

Conducting a statistical analysis

Testing data assumptions for analysis procedures

**Ethics**
*Application of professional ethics to research, scholarship, and education*

Examples of evidence include:

Discussion of research ethics with faculty members and/or graduate students

Complete CITI IRB training and other UM training pertaining to research ethics

Address ethical issue in capacity of teaching assistant (e.g., cheating, discrimination)

Confront unethical behavior among peers (e.g., in group classwork, data access)

List of ethical dilemmas explored in context of class or seminar

Informed ethical decisions you have made

Including ethical perspective (where appropriate) in lectures

Completing ethics quiz in research methods course

Discussion of authorship on a manuscript or abstract with a faculty member from an ethical perspective

Not engaging in unethical behavior or conduct

**Scholarly and Professional Citizenship**
*Provides leadership and service to scientific and professional organizations, both locally and nationally*

Examples of evidence include:

Association membership

Participation in student organization activities

Elected offices held

Committee service

Attend discipline business meeting at a professional meeting

Sharing your learning at association meetings with colleagues who did not attend

Service to pharmacy student organization as advisor or participation in an event

Volunteer work in the community

Provide service to organization (e.g., abstract reviewer, CE presentation)

**Self-reflection**
*Critically evaluate the quality of your own performance in various roles (academic, professional, personal) and in various settings*

Examples of evidence include:

Prepare abilities transcript

Written record of goals and steps taken toward achievement annually

Exhibit Q - 2024 ~ AT Guide Pg 13

Research journal (log of steps taken, research ideas, literature search methods)
Teaching assistant journal/teaching journal or portfolio
Evidence of receiving feedback and then working to improve knowledge/skill

## Exhibit S - 2024–25 Department Policies and Procedures Document

*Policy Guide — Page 21*

**ABILITIES TRANSCRIPT**

Each graduate student has the opportunity to choose an individualized course of instruction during his/her tenure as a student in this department. And along those lines, each student will have his/her own expectations regarding the desired outcome of his/her education. In addition to individual expectations for your own education, the Department has general expectations of every student in the graduate program. These expectations correspond to the core of instruction that has been prescribed by the department.

Each student member of the department is expected to develop a set of general abilities. The general abilities identified by the Department are *scholarly/professional communication, critical thinking and evaluation, theoretical reasoning, research management, data management, statistical analysis, ethics, scholarly and professional citizenship, and self-reflection.* These abilities are defined in more detail on the Abilities Transcript. These nine abilities may be acquired at differing rates, depending upon student emphasis and progression. While the rate of development through the program may be individual, the Department does expect each student to function at a given level (Level 1) upon completion of the Master's curriculum and thesis, and at a more advanced level (Level 2) upon completion of the Doctoral work. The Abilities Transcript is a useful tool for self-assessment. Additionally, the transcript contributes to the Department's graduate program assessment process. The graduate program assessment is mandated by the Southern Association of Colleges and Schools (SACS).

A complete *Abilities Transcript* discussion between the student and his or her Development Mentor should take place at least once a year, when it is completed for submission. Each student is assigned a Development Mentor. The Abilities Transcript should be completed according to the following schedule:

- Student Abilities Transcripts completed and signed by the mentor and student by May 31 every year

Student – Preparing for the Abilities Consensus Meeting:
1. Using notes gathered over the course of the year, complete a copy of the *Abilities Transcript* citing evidence of ability acquisition. Refer to the *Abilities Transcript Student Manual* for assistance.
2. Self-reflect on your accomplishments over the year and set goals and objectives for the coming year given your current level of accomplishment. The goals and objectives should be measurable.

Abilities Consensus Meeting

The purpose of this meeting is to allow the student and Development Mentor to complete the student's *Abilities Transcript* using the information generated and gathered individually. Together the faculty member and student will discuss each ability and the evidence gathered to support the acquisition of each ability. The information gathered individually and the information discussed during the meeting should be used to complete the final version of the student's Abilities Transcript.

After evaluating all of the evidence supporting ability acquisition, the student and faculty member should jointly decide on the level of ability acquisition by completing the Acquisition Summary section of the Abilities Transcript. Once the form is completed, the faculty member and student should each keep a copy and a copy should be submitted to the Department Chair.

For more information about the Abilities Transcript, please refer to the Abilities Transcript Student Manual and the Abilities Transcript Form. These two documents should be provided to students upon entry into the program.

**INDIVIDUAL DEVELOPMENT PLANS**

The purpose of individual development plans (IDP) is to promote the process of self-reflection, assessment, and goal-setting for graduate students in the department. The IDP is a dynamic self-evaluation and career exploration tool that can be used for setting goals for research projects, skills development, and career planning. It is a student's written list of objectives mapped to a timeline. Your IDP should also serve as a framework for discussion between you and your Development Mentor. To be

requirements would take effect between semesters or enrollment periods. If a student is dismissed from a graduate program, he or she will be considered a non-degree II student and may re-apply to a graduate program.

### Dismissal or Change in Status Based Upon Failure to Meet Non-Course Work Academic Performance Expectations:

In addition to graded courses, a graduate student is expected to pass examinations and perform research or other creative activities. A student may be dismissed from a graduate program if he or she fails to meet such expectations of the program. Departments/programs may establish non-course related academic performance expectations, such as whether or not a comprehensive examination may be repeated or timelines for research accomplishment or the successful completion of examinations. The advisor, graduate program coordinator, or department chair must provide reasonable warning to the student, in writing, about academic performance deficiencies. Typically, these warnings would occur as part of a periodic review process for students in the program. An appropriate faculty group, which may be the student's advisory committee or the graduate education committee of a department/program, may recommend dismissal or change in the admission status of a student. This recommendation shall be forwarded by the graduate program coordinator or department chair to the Graduate Dean and to the affected student with an indication whether the chair or program coordinator concurs with the faculty recommendation. The Graduate Dean will act on the faculty recommendation and inform the student and the graduate program coordinator or department chair of the action taken. Ordinarily, dismissal or change of status for failure to meet non-course work academic performance expectations would take effect between semesters or enrollment periods. If a student is dismissed from a graduate program, he or she will be considered a non-degree II student and may re-apply to a graduate program.

The Graduate School has also established time limitations for master's, specialist, and doctoral degree programs. Students who do not complete degree requirements within the established time limits will be changed to non-degree seeking II status.

### Dismissal or Change in Status Based Upon Failure to Meet Professional, Ethical, And Behavioral Expectations:

Graduate students are also expected to behave in a collegial manner and to adhere to the professional and ethical standards of the discipline. Students are expected to develop collaborative and collegial relationships with and to work with graduate faculty, students, and other professionals in research, academic, or professional settings. If in the judgment of the appropriate faculty group a student fails to meet the above expectations, or otherwise fails to act in ways that are consistent with the norms and standards of the profession or discipline, an appropriate faculty group may recommend dismissal or change in the admission status of that graduate student. This recommendation shall be forwarded by the graduate program coordinator or department chair to the Graduate Dean and to the affected student, with an indication whether the chair or program coordinator concurs with the faculty recommendation. The Graduate Dean will act on the faculty recommendation and inform the student and the graduate program coordinator or department chair of the action taken. Ordinarily, if a student is dismissed from a graduate program for the above reasons, he or she will be considered a non-degree II student and may re-apply to a graduate program. The judgment of the Graduate Dean may be to prohibit the individual from re-applying to some programs.

**2024-2025 POLICIES AND PROCEDURES GUIDE**

**GRADUATE PROGRAM OF THE
DEPARTMENT OF PHARMACY ADMINISTRATION
THE UNIVERSITY OF MISSISSIPPI**

*Last Major Revision: June 2024*
*Minor revisions in August 2018, August 2019, August 2020, August 2021, December 2021, June 2024,*
*September 2024*

(Social and Administrative Pharmacy I), which includes an introduction to the U.S. health care system.

PHAD 698 Non-Thesis Research will consist of a submission ready manuscript for a targeted journal. Project concept and target journal must be approved in advance by the faculty advisor. Final results will be presented in a departmental level seminar. At least two additional faculty members will serve as reviewers.

It is important to note that if an applicant has a Master's degree, he or she may petition in writing to the Department Chair for substitution or waiver of certain courses upon entry into the program. The Faculty will evaluate the request, following the Graduate School policies, and determine which courses, if any, can be waived or substituted. If an applicant has completed a thesis, he or she is asked to provide a copy of the thesis for review to determine whether waiver of PHAD 698 and other courses is acceptable. Substitution or waiver of courses will then be documented on the student's progression form.

### The Comprehensive Examination

The purpose of the Comprehensive Examination is to allow the student to demonstrate the competencies necessary to conduct independent research at the doctoral level. **The Comprehensive Examination precedes the formal dissertation proposal and follows the completion of required course work.**

The comprehensive examination is given three times annually: January, June, and September (the exam will start the second Monday of each of these months). The student is responsible for coordinating with the GPC/Department Chair to schedule the examination at least two months in advance. **The GPC/Department Chair will complete the Authorization to Sit for a Comprehensive Exam Form (Form GS5) and submit it to the Graduate School.** This form can be found online on the Graduate School website.

The examination will involve the development of a written exam with knowledge and application questions followed by an oral examination. The student will have one week to complete the written exam independently. The exam will be developed by a committee of three faculty members familiar with the student's research interests. The faculty committee will be appointed by the GPC/Department chair. A list of competencies to be demonstrated are listed below.

*Competencies to be Demonstrated*

1. Familiarity with and an understanding of major theoretical issues in the major field and in the minor track.

2. Ability to evaluate critically research literature, identifying strengths and weaknesses in research design, statistical analysis, and conclusions.

3. Understanding of the process for formulating and testing of research hypotheses and the design consideration necessary for use in this process.

   a. Understanding the importance of and the distinction between theoretical models, conceptual models, concepts and variables.

   b. Understanding of the benefits and disadvantages of the major recognized techniques of data gathering, such as personal interview, mail survey, telephone survey, observation, use of secondary data, etc.

   c. Understanding of levels of measurement and the methodological and statistical compromises required by their respective choices.

# 2025-2026 POLICIES & PROCEDURES GUIDE

for the

GRADUATE PROGRAMS
of the
DEPARTMENT OF PHARMACY ADMINISTRATION
THE UNIVERSITY OF MISSISSIPPI

Last Major Revision: June 2025
Minor revisions in
August 2018, August 2019, August 2020, August 2021,
December 2021, June 2024, September 2024, June 2025

Other Academic Requirements

In addition to the course requirements, each student must participate and complete an orientation to the discipline of pharmacy administration and register for a departmental seminar (PHAD 543/544) each semester (1 credit hour per semester). Each student must pass a comprehensive examination, prepare and successfully defend a dissertation prospectus, and complete and defend his/her dissertation project, which is based on original, independent research.

Notes

Non-pharmacists and international students are encouraged to audit the course in the PharmD program that includes an introduction to the U.S. health care system.

PHAD 698 Non-Thesis Research will consist of a submission ready manuscript for a targeted journal. Project concept and target journal must be approved in advance by the faculty advisor. Final results will be presented in a departmental level seminar. At least two additional faculty members will serve as reviewers.

It is important to note that if an applicant has a Master's degree, he or she may petition in writing to the Department Chair for substitution or waiver of certain courses upon entry into the program. The Faculty will evaluate the request, following the Graduate School policies, and determine which courses, if any, can be waived or substituted. If an applicant has completed a thesis, he or she is asked to provide a copy of the thesis for review to determine whether waiver of PHAD 698 and other courses is acceptable. Substitution or waiver of courses will then be documented on the student's progression form.

The Comprehensive Examination

The purpose of the Comprehensive Examination is to allow the student to demonstrate the competencies necessary to conduct independent research at the doctoral level. This follows the Graduate School's requirement which indicates that the purpose of this examination is to establish that the student has satisfactorily mastered the body of academic material appropriate to the degree. **The Comprehensive Examination precedes the formal dissertation proposal and follows the completion of required course work.**

The comprehensive examination is given three times annually: January, June, and September (the exam will start the second Monday of each of these months). The student is responsible for coordinating with the GPC/Department Chair to schedule the examination at least two months in advance. The GPC/Department Chair will complete the Authorization to Sit for a Comprehensive Exam Form (Form GS5) and submit it to the Graduate School. This form can be found online on the Graduate School website.

The examination will involve the development of a written exam with knowledge and application questions followed by an oral examination. The student will have one week to complete the written exam independently. The exam will be developed by a committee of faculty members familiar with the student's research interests. The faculty committee will be appointed by the GPC/Department chair. A list of competencies to be demonstrated are listed below.

19

Exhibit V ~ UM Account Balance Notice



**The University of Mississippi**
Oxford • Jackson • Tupelo • Southaven

Office of the Bursar
P. O. Box 1848
University, MS 38677
Office of the Bursar

September 15, 2025

Ehiremen Eriakha
No 5, Quarry road, Abeokuta
Abeokuta, OG 110252

# ACTION REQUESTED

Subject: Overdue Balance - Account No. : 10955677

Your account balance is $ 16,300.69. Please note that $ 15.89 of this amount is past due.

Please make arrangements to bring your account current by September 29, 2025.

If you have any questions, please call us at 1-800-891-4596.

You may view your current account statement at the myOleMiss web portal (http://my.olemiss.edu). After you log in with your WebID, select the Student role, then apps in the Financials box. Click the Account Statement link to view your statement.

Your records have been placed on hold pending payment of your account. You will not be able to obtain a class schedule for future semesters, receive a transcript or a diploma, or cash a check in the Bursar's Office.

# Exhibit W ~ Official Transcript Pg 1

TRANSCRIPT LEGEND IS PRINTED ON REVERSE SIDE    AUTHENTICITY TEST IS LOCATED AT THE BOTTOM OF THIS DOCUMENT

**THE UNIVERSITY OF MISSISSIPPI**

## Issued to Student

Name: Eduabasi, Philemon Bernard
Student ID: 10935677/0379
SSN: *******
Birthdate: 06/14/****
Address: No 5, Quarry road, Abeokura
Abeokura, OG 110252

From Date: June 25, 2025

**Academic Program:**

Current Program: PhD in Pharmaceutical Sciences
College/School: Graduate School
Major: Pharmaceutical Sciences
Pharmacy Administration

Degrees Awarded: ---

Academic Achievements: ---

PHI KAPPA PHI

**Transfer Credit:**
Beginning of Records

**Dates of Attendance**
09/03/2012 - 11/14/2019

Official/Academic University

---

### Fall Semester 2023
#### Graduate

| Course | Description | Attempt | Grade |
|--------|-------------|---------|-------|
| Psy 703 | Quantative Methods in Psychology I | 3.00 | A |
| Phad 543 | Seminar in Current Health Topics | 1.00 | A |
| Phad 774 | Research in Pharmacy Administration | 2.00 | A |
| Phad 688 | Research Methodology and Techniques | 3.00 | A |
| Phad 794 | Pharmacoeconomics | 3.00 | A |

SEM: ATM 12.00  ERN 12.00  GRD 11.00  PTS 44.00  GPA 4.00
CUM: ATM 12.00  ERN 12.00  GRD 11.00  PTS 44.00  GPA 4.00

---

### Spring Semester 2024
#### Graduate

| Course | Description | Attempt | Grade |
|--------|-------------|---------|-------|
| Psy 704 | Quantitative Methods in Psychology II | 3.00 | A |
| Phad 544 | Seminar in Current Health Topics | 1.00 | A |
| Phad 679 | Primary Data Techniques | 3.00 | A |
| Phad 783 | Adv Pharmaceutical Mkting & Patient Beha | 3.00 | A |

SEM: ATM 10.00  ERN 10.00  GRD 9.00  PTS 36.00  GPA 4.00
CUM: ATM 22.00  ERN 22.00  GRD 20.00  PTS 80.00  GPA 4.00

---

### Full Summer Session 2024
#### Graduate

| Course | Description | Attempt | Grade |
|--------|-------------|---------|-------|
| Phad 697 | Thesis | 3.00 | |

SEM: ATM 6.00  ERN 6.00  GRD 3.00  PTS 12.00  GPA 4.00
CUM: ATM 28.00  ERN 28.00  GRD 23.00  PTS 92.00  GPA 4.00

---

### Fall Semester 2024
#### Graduate

| Course | Description | Attempt | Grade |
|--------|-------------|---------|-------|
| Phad 543 | Seminar in Current Health Topics | 1.00 | A |
| Phad 780 | General Linear Models | 3.00 | A |
| Phad 687 | Secondary Data Techniques | 3.00 | A |
| Phad 689 | Pharmaceutical and Healthcare Policy | 3.00 | A |

SEM: ATM 10.00  ERN 10.00  GRD 9.00  PTS 36.00  GPA 4.00
CUM: ATM 38.00  ERN 38.00  GRD 32.00  PTS 128.00  GPA 4.00

---

Any questions regarding the accuracy of this transcript can be directed to the Office of the University Registrar. All transfer work is reflected in hours earned. Only course work attempted at the University of Mississippi is posted on the official transcript.

The educational record is subject to the Family Educational Rights and Privacy Act of 1974, as amended. This record is furnished for official use only and may not be released to or accessed by outside agencies or third parties without the written consent of the student concerned.

Danielle E. Ambrose
REGISTRAR

Page 1 of 2
06/25/2025 12:46:37
Rev. 01/2006

This officially sealed and signed transcript is printed on blue SCRIP-SAFE® security paper with the name of the university printed in white type across the face of the document. A raised seal is not required. When photocopied the name of the school and the word copy will appear. A BLACK ON WHITE OR A COLOR COPY SHOULD NOT BE ACCEPTED AS AN OFFICIAL DOCUMENT.

TO VERIFY TRANSLUCENT GLOBES MUST BE VISIBLE FROM BOTH SIDES OF TRANSCRIPT WHEN HELD TOWARD A LIGHT SOURCE

THE UNIVERSITY NAME APPEARS IN WHITE PRINT ACROSS THE FACE OF THIS 11 X 8.5 INCH RECORD

## Exhibit W ~ Official Transcript Pg 2



TRANSCRIPT LEGEND IS PRINTED ON REVERSE SIDE    AUTHENTICITY TEST IS LOCATED AT THE BOTTOM OF THIS DOCUMENT

THE UNIVERSITY OF MISSISSIPPI

Issued to Student

Name:
Student ID:
SSN:
Birthdate:
Address:

**Spring Semester 2025**
Graduate

| Course | Description | Attempt | Grade |
|---|---|---|---|
| Phad 644 | Seminar in Current Health Topics | 1.00 | N |
| Phad 781 | Applied Multivariate Analysis | 3.00 | A |
| Phad 792 | Biopharmaceutical Development and Mfg | 3.00 | A |
| Phad 697 | Thesis | 3.00 | A |
| HR 711 | Management Theory and Practice | 3.00 | A |
| SEM: ATM 15.00 | EGH 15.00 | GRP 9.00 | PTS 36.00 | GPA 4.00 |
| CUM: ATM 51.00 | EGH 51.00 | GRD 41.00 | PTS 164.00 | GPA 4.00 |

------ End of Transcript ------

TO VERIFY: TRANSLUCENT GLOBES MUST BE VISIBLE FROM BOTH SIDES OF TRANSCRIPT WHEN HELD TOWARD A LIGHT SOURCE

Danielle E. Ambrose
REGISTRAR

Page 2 of 2
06/25/2025 12:46:37
Rev. 01/2006

This officially sealed and signed transcript is printed on blue SCRIPSAFE security paper with the name of the university printed in white repeat across the face of the document. A raised seal is not required. When photocopied the name of the school and the word copy will appear. A BLACK ON WHITE OR A COLOR COPY SHOULD NOT BE ACCEPTED AS AN OFFICIAL DOCUMENT.

THE UNIVERSITY NAME APPEARS IN WHITE PRINT ACROSS THE FACE OF THIS 11 X 8.5 INCH RECORD

Exhibit W ~ Awards Pg 1

# Phi Kappa Phi



This certifies that

## Ehiremen Bennard Eriakha

is a member of The Honor Society of Phi Kappa Phi

by election of the Chapter at

## The University of Mississippi

and is hereby granted all the honors and privileges

pertaining to membership in the Society

November 3, 2024

_President_

_Executive Director_

CS CamScanner

Exhibit W ~ Awards Pg 2



# Phi Eta Sigma National Honor Society

*This is to Certify That*

## Ehiremen Eriakha

because of outstanding scholastic achievement and worthy character,
has been accorded membership in the

## University of Mississippi

Chapter of The Gamma Beta Phi Society and as a
member in good standing is entitled to all the
honors, privileges, and responsibilities of the Society.

NATIONAL PRESIDENT

NATIONAL EXECUTIVE DIRECTOR

Fall 2024

CamScanner



# The Rho Chi Society

Pharmaceutical Honor Society

*This is to Certify that*

## Chiremen Bennard Eriakha

*has been initiated as an*

active member of

## Chi Chapter

*at*

### The University of Mississippi School of Pharmacy

Given this 4th day of April, 2025



_____
National President

_____
Chapter President

FOUNDED 1922
THE RHO CHI SOCIETY

Exhibit W ~ Awards Pg 3



THE UNIVERSITY OF
**MISSISSIPPI**
**School of Pharmacy**

## 2023 - 2024

## Teaching Assistant Award

### Presented by the P1 Class to

# Bennard E. Eriakha

❖

## UNIVERSITY OF MISSISSIPPI

## SCHOOL OF PHARMACY

CamScanner

Exhibit W ~ Awards Pg 5

# Certificate of Recognition

TOP 5% FINALIST RESEARCH PRESENTATION

## Ehiremen Eriakha

FOR THE PRESENTATION TITLED:

Cost-Effectiveness of Chondroitin Sulfate Plus Glucosamine Versus
Celecoxib for Moderate To Severe Knee Osteoarthritis

FOR
**ISPOR 2024**
HEOR: A TRANSFORMATIVE FORCE FOR WHOLE HEALTH

Atlanta, GA, USA



ISPOR
Improving healthcare decisions

5- 8 May 2024
Date

*Brian O'Rourke*
Brian O'Rourke, PharmD, CD, OMM
ISPOR President