**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**EHIREMEN BENNARD ERIAKHA**                                                  **PLAINTIFF**

v.                                                          **NO. 3:25-CV-250-DMB-RP**

**UNIVERSITY OF MISSISSIPPI, et al.**                                 **DEFENDANTS**

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

Plaintiff Ehiremen Bennard Eriakha, a doctoral student in the University of Mississippi's Department of Pharmacy Administration, refused to complete a required self-assessment unless the Department provided him with a mentor of his choice and excused him from an in-person meeting with that mentor. After several warnings, he was placed on "provisional status" but was not removed from his program of study. Because he was on provisional status, Plaintiff was not eligible to serve as a graduate assistant during the Fall 2025 semester. Plaintiff has now sued the University and four of its employees for alleged violations of his constitutional rights, unlawful discrimination, and breach of contract. The individual Defendants are entitled to qualified immunity, and Plaintiff has otherwise failed to state a claim. The Court should dismiss the Complaint in its entirety.

**FACTS**

Plaintiff is a doctoral student in the University's Department of Pharmacy Administration. Compl., at p. 5 [Doc. 1]. Plaintiff was assigned a faculty mentor, Defendant Yinan Huang, in 2024. *Id*. at pp. 6-7. In July 2024, Plaintiff and Dr. Huang signed a document titled "Agreement Between University of Mississippi School of Pharmacy (UMSOP), Pharmacy Administration

Graduate Students, and Their Developmental Mentors." [Doc. 9-1].[1] This document discussed the parameters of the mentoring relationship between Plaintiff and Dr. Huang, but it did not prohibit the Department from assigning Plaintiff a different mentor for any reason.

Plaintiff and Dr. Huang corresponded between June 11 and 13, 2025, to discuss a time to meet to discuss and complete his Abilities Transcript, a project he acknowledged was "required" to be completed by June 15. [Doc. 9-2]. On June 13, 2025, Defendant Yi Yang, the Department Chair, informed Plaintiff that she would "serve as [Plaintiff's] co-developmental mentor with Dr. Huang." *Id*. at 3-4. Dr. Yang scheduled an in-person meeting for herself, Plaintiff, and Dr. Huang on June 18, and she confirmed that the deadline for Plaintiff to submit his Abilities Transcript would be extended through June 19. *Id*.

Plaintiff responded the same day and told Dr. Yang he had "reviewed the departmental policies and did not see any provision stating that developmental mentors can be reassigned or restructured without mutual agreement between the mentor and mentee." *Id*. at 4. Plaintiff also expressed a preference for a virtual meeting rather than the in-person meeting Dr. Yang had proposed. *Id*. Dr. Yang responded that "[t]he change in [Plaintiff's] developmental mentor structure was approved by all tenured faculty recently in the department to support Dr. Huang's professional development as a faculty member." *Id*. at 5. She also stated that she had confirmed Dr. Huang had intended for the developmental meeting to be in person. *Id*. Dr. Huang confirmed that the developmental meeting would be in person. *Id*. at 6.

Plaintiff responded with an email the next day challenging Dr. Yang's participation in his

---

[1] Plaintiff's Complaint references numerous documents. The referenced exhibits appear to be attached to his Motion for Preliminary Injunction [Doc. 9] rather than the Complaint itself [Doc. 1]. Because the exhibits to that Motion are incorporated into the pleadings by reference, Defendants will cite to the existing docket entry for each such document.

2

mentoring process, asserting without explaining that her involvement would "override [his] right to a safe, supportive, and non-coercive mentoring environment" and "bypass[] [his] agency or compromis[e] the autonomy that is fundamental to effective mentorship." *Id*. at 8. Plaintiff also objected to meeting in person, claiming that "[i]mposing an in-person format without clear justification or mutual agreement risks compromising psychological safety and may diminish the openness and quality of the mentoring exchange." *Id*. at 8.

Dr. Yang told Plaintiff that "[t]he developmental mentor for PHAD graduate students is assigned by the department chair." *Id*. Plaintiff responded that his concerns about the mentoring process and preference for a virtual meeting "were neither acknowledged nor addressed." *Id*. at 9. On the date and time of the scheduled June 18 meeting, Dr. Huang emailed to ask whether Plaintiff intended to attend. *Id*.

Plaintiff emailed Dr. Yang again on June 24 to repeat his complaints about her participation in the mentoring process and the in-person meeting requirement. *Id*. at 11. He again acknowledged the importance of completing the Abilities Transcript and noted that Dr. Marie Barnard, the Graduate Program Coordinator, had "recently followed up" to remind him about that requirement. *Id*. Plaintiff told Dr. Yang he was "eager" to complete the task, but only "in a mentoring environment that is respectful, student-centered, and aligned with institutional expectations." *Id*. In other words, he would only agree to complete the assignment on his own terms.

The Dean of the Graduate School, whom Plaintiff had added to this email exchange several days earlier, responded the same day and confirmed that "[t]he change in mentor structure is appropriate as outlined in the information provided by Dr. Yang." *Id*.

Dr. Barnard also responded to Plaintiff's June 24 email to inform him that the faculty

3

needed his Abilities Transcript to discuss his performance and progress and that his reappointment for a graduate assistantship hung in the balance:

> Marie Barnard <mbarnard@olemiss.edu>
> To: "eberiakh@go.olemiss.edu" <eberiakh@go.olemiss.edu>
> Cc: Yi Yang <yiyang@olemiss.edu>
> Tue, Jun 24, 2025 at 4:34 PM
>
> Hi Bennard,
>
> I appreciate being copied on this email. Please see the email I sent you yesterday. As I noted in that email, we need your Abilities Transcript for the discussion at the faculty retreat that begins Thursday morning. Submission of the Abilities Transcript is a program requirement. As is indicated in our Department Policies and Procedures Guide, reappointment for assistantship is contingent on several factors including a student's performance and progress. If you do not submit this by end of business tomorrow, June 25, 2025, the faculty will not have this to guide their discussion of your performance and progress. I encourage you to please submit your Abilities Transcript.
>
> Thank you,
> mb
>
> **Marie Barnard, Ph.D.**
> *Associate Professor of Pharmacy Administration*
> *Research Associate Professor in the Research Institute of Pharmaceutical Sciences*
> *Associate Professor of Public Health*
> *Graduate Program Coordinator, Pharmacy Administration*
> **Department of Pharmacy Administration**
> **University of Mississippi**
> mbarnard@olemiss.edu | www.olemiss.edu

*Id.* at 12.

When Plaintiff still did not submit his Abilities Transcript, Dr. Barnard sent him a "formal warning" on June 30 informing him that his failure to do so by August 15 would "result in a recommendation to the Graduate Dean that you have a change of status to provisional status." [Doc. 9-3]. Plaintiff responded to Dr. Barnard with an eleven-page memorandum that relitigated his complaints about the mentorship process and the in-person meeting requirement but did not dispute the fact that he had not completed the Abilities Transcript. [Doc. 9-4].

On July 17, Dr. Huang informed Plaintiff that Dr. Yang was serving as his co-mentor because Dr. Huang would be leaving the University within the next year and asked him to meet with Drs. Yang and Huang to complete the Abilities Transcript by the August 15 deadline. [Doc. 9-6].

On July 18, Dr. Yang emailed Plaintiff and again reminded him that the Abilities Transcript was a mandatory requirement for all students, that he must complete it by August 15, and that failure to do so would result in a recommendation to the Graduate Dean to change his enrollment status to provisional. [Doc. 9-5]. After Plaintiff again complained about the change to his mentorship arrangement and the in-person meeting requirement, the Graduate Dean responded to the email thread:

> I am writing to provide clarification regarding questions you raised in the email below.
>
> First, there are no policies that prohibit program faculty from making changes to mentoring assignments when the faculty deem such changes to be appropriate. In addition, programs can set reasonable expectations about the format of meetings. When a program is a face-to-face full-time program, it is not unreasonable for a program to require students to attend meetings in person, on campus, during regular university business hours.
>
> I also want to be sure that you understand that even when a student has concerns about some aspect(s) of their program, they still need to complete program requirements. As such, I encourage you to complete the Abilities Transcript by the deadline set by the program.

*Id*.

Plaintiff did not complete the Abilities Transcript. On August 21, Dr. Barnard sent Plaintiff a memorandum informing him the Department was recommending to the Graduate Dean that Plaintiff be placed on provisional status. [Doc. 9-10]. The memo also informed Plaintiff he could return to full standing for the Spring 2026 semester if he met with his mentor and completed the Abilities Transcript, met weekly with his thesis advisor to make progress on his thesis, and successfully completed his Fall 2025 classes. *Id*. The Graduate Dean accepted this recommendation. [Doc. 9-13]. Dr. Yang, the Department Chair, confirmed to Plaintiff by email that he was not eligible for a graduate assistantship during the Fall 2025 semester because of his provisional status. [Doc. 9-12].

5

**STANDARD OF LAW**

A Rule 12(b)(1) motion challenges the plaintiff's invocation of federal subject matter jurisdiction. *See Krim v. PCOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). When one party challenges subject matter jurisdiction, the party asserting jurisdiction bears the burden of establishing jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 189 (5th Cir. 2011).

Rule 12(b)(6) authorizes dismissal for failure to state a claim. "To avoid dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570 (internal quotation omitted). While the Court must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff, *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008), it does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (*quoting Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion, the Court must decide whether the plaintiff's "pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Patterson v. Off. Of the AG Child Supp. Div.*, 2024 U.S. Dist. LEXIS 111639, *9 (W.D. Tex. Jun. 25, 2024) (citation omitted). A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to

6

draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id*. (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)).

**ARGUMENT**

Plaintiff has sued the University, Dr. Yi Yang (the Department Chair), Dr. Marie Barnard (the Graduate Program Coordinator), Dr. Annette Kluck (the Dean of the Graduate School), and Dr. Yinan Huang (a faculty member in the Department). Plaintiff purports to state claims against the University and all the Individual Defendants (in their individual and official capacities) for First Amendment retaliation, violation of his equal protection rights, and substantive and procedural due process violations. Plaintiff also purports to state a breach of contract claim against the University. The Individual Defendants are entitled to qualified immunity, and the official-capacity claims and the claims against the University fail to state a claim. The Court lacks jurisdiction over Plaintiff's breach of contract claim. This action should be dismissed in its entirety, with prejudice.

**1.**     ***The Individual Defendants are entitled to qualified immunity.***

Designed to protect "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), the qualified immunity defense "protects public officials from suit unless their conduct violates a clearly established constitutional right." *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (*citing Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)). The qualified immunity standard "gives ample room for mistaken judgments." *DePree*, 588 F.3d 282 at 287 (*citing Malley*, 475 U.S. at 343).

The Fifth Circuit asks a "standard two-part qualified immunity question: whether the conduct was unconstitutional and whether the unconstitutionality was 'clearly established' at the

7

time the challenged conduct occurred." *Doe v. Jewell*, No. 24-50480, 2025 U.S. App. LEXIS 20941, at *7 (5th Cir. Aug. 15, 2025). "Plaintiffs carry the burden of demonstrating that qualified immunity is inappropriate." *Id*. at *8.

The question of qualified immunity is to be determined as a matter of law and requires a conduct-based inquiry, not an abstract legal or factual inquiry. *E.g., Elder v. Holloway*, 510 U.S. 510, 515-16 (1994). A Section 1983 plaintiff "must specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). The plaintiff must point to controlling authority or a robust consensus of persuasive authority that placed his rights beyond debate. *See Wigginton v. Jones*, 964 F.3d 329, 337 (5th Cir. 2020) (*citing Morgan v. Swanson*, 659 F.3d 359, 371-72, 382 (5th Cir. 2011)).

    a.    ***The Defendants did not violate the First Amendment.***

Plaintiff contends Defendants violated his First Amendment rights by placing him on provisional status after he objected to Dr. Yang's participation in his mentoring process and the requirement of an in-person developmental meeting. Compl., at p. 6 [Doc. 1]. However, Plaintiff has not alleged that any Defendant violated his clearly established First Amendment rights. A university student alleging First Amendment retaliation by school staff must plausibly allege that he engaged in constitutionally protected speech and that his speech was a substantial or motivating factor in decision to subject him to an adverse action. *See Doe v. Harrell*, 841 Fed. App'x 663, 669 (5th Cir. 2021) (*citing Kelleher v. Flawn*, 761 F.2d 1079, 1083 (5th Cir. 1985)). A plaintiff may meet this burden through direct evidence or "a chronology of events from which retaliation may plausibly be inferred." *See Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997) (*citing Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995)). If a plaintiff meets this burden, the burden shifts to the defendant to show that it would have taken the same action

8

even in the absence of the protected speech. *Mooney v. Lafayette Cty. Sch. Dist.*, 538 Fed. App'x 447, 455 (5th Cir. 2013).[2]

The question of whether speech is entitled to First Amendment protection is a question of law. *Kelleher*, 761 F.2d at 1084. The University has found no clearly established law holding that a student's refusal to accept department instructions related to his academic program constitutes protected activity. In fact, at least in the public employment context, "[i]t is firmly established that the First Amendment's shield does not extend to speech and conduct amounting to insubordination directed at school officials." *Id*. The "speech" for which Plaintiff seeks protection was his repeated refusal to attend a developmental meeting and complete his Abilities Transcript unless the Department met his demands. Even if Plaintiff plausibly alleged that his series of obstinate emails was a motivating factor in the decision to move him to provisional status, he cannot establish that those emails were protected speech.

Plaintiff has also failed to plausibly allege that any of the Defendants took steps to place him on provisional status *because* he sent a series of emails refusing to comply with their instructions. He does not allege there is any direct evidence of such a motive, and the chronology of events formed by documents referenced in the pleadings makes clear that he was placed on provisional status because he failed to complete the Abilities Transcript, even after his deadline to do so had been extended three times. Each of the Individual Defendants told him the Abilities Transcript was a program requirement, and Plaintiff himself acknowledged the requirement. Dr. Yang and Dr. Barnard specifically told him that his failure to complete the Abilities Transcript

---

[2] Plaintiff also purports to state a claim for retaliation in violation of the First Amendment's Petition Clause. This claim fails for the same reason his Speech Clause retaliation claim fails. *Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016) (holding that First Amendment retaliation claims under the Speech Clause and the Petition Clause "are analyzed in the same way").

9

would lead to a recommendation for provisional status. Plaintiff never disputed that he Abilities Transcript was a program requirement, and he does not do so in his Complaint. Dr. Barnard even informed him that he could be restored to full status in the spring semester if he completed the Abilities Transcript.

The record is also clear that the Defendants would have taken the same action if Plaintiff had failed to complete the Abilities Transcript but had not complained about it. Dr. Yang's July 18 email specifically addressed this:

> We understand that you may have concerns regarding the AT process. However, please be advised that annual submission of the AT is a mandatory requirement for all students in our program. To ensure compliance with program requirements, please contact your Development Mentors, Dr. Yinan Huang (copied on this email) and myself, to schedule a meeting, complete, and submit your AT by August 15, 2025. Please be aware that failure to do so will result in a formal recommendation to the Graduate Dean for a change of your status to provisional status.

[Doc. 9-5]. Dr. Kluck echoed this:

> I also want to be sure that you understand that even when a student has concerns about some aspect(s) of their program, they still need to complete program requirements. As such, I encourage you to complete the Abilities Transcript by the deadline set by the program.

*Id*. In other words, Plaintiff was specifically warned that he would face consequences for refusing to complete the Abilities Transcript regardless of whether he shared concerns about the process. Plaintiff cannot use the First Amendment to forestall these consequences by simply complaining about the mentoring process.

Plaintiff also alleges he exercised his First Amendment rights by "maintaining familial association" with his twin brother, Omokhodion Alfred Eriakha ("Alfred"), who is also a graduate student in the same Department and also made "complaints" within the Department.

10

Compl., at pp. 6-7 [Doc. 1].[3] It is true that, under certain circumstances, the association clause of the First Amendment protects "the choice to enter into and maintain certain intimate human relationships…." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1051 (5th Cir. 1996) (citing *City of Dallas v. Stanglin*, 490 U.S. 19 (1989)). However, the contours of a First Amendment retaliation claim for a family member's speech are not at all clear.

Plaintiff's Complaint cites *Adler v. Pataki*, in which the Second Circuit allowed a First Amendment retaliatory discharge claim based solely on litigation by the plaintiff's spouse. 185 F.3d 35, 45 (2d Cir. 1999). However, there is no clearly established law in the Fifth Circuit giving rise to such a cause of action, much less extending it to a relationship between siblings. *See Atkinson v. Pustilnik*, No. 4:22-cv-04315, 2024 U.S. Dist. LEXIS 80141, at *17 (S.D. Tex. May 2, 2024) (holding defendant entitled to qualified immunity where plaintiff had not "pointed to any authority showing that a sister's right to be free from retaliation for her brother's speech is clearly established in this circuit"); *Corkern v. Hammond City*, 2013 U.S. Dist. LEXIS 114848, No. 11-1828, at *9 (E.D. La. Aug. 14, 2013) (granting qualified immunity from First Amendment claim where in absence of "binding or persuasive authority that recognizes the right to be free from retaliation based on the conduct of one's spouse"). The Individual Defendants are entitled to qualified immunity.

Even if Plaintiff's relationship with his brother could give rise to a potential associational claim, Plaintiff has failed to plausibly allege that his brother's "complaints" were the cause of Plaintiff's change to provisional status. As discussed above, the pleadings and the record documents referenced therein make clear that Plaintiff understood the Abilities Transcript was a

---

[3] Alfred has filed his own lawsuit in this Court challenging certain alleged actions within the same Department. *See Eriakha v. Univ. of Miss. et al.*, No. 3:25-cv-226-MPM-JMV (N.D. Miss).

11

program requirement, that he was told that his failure to complete it would lead to provisional status, and that he nonetheless refused to do so. Plaintiff does not allege he completed the Abilities Transcript. The fact that Plaintiff has a twin brother who also complained about aspects of his own graduate study program does not insulate Plaintiff from the consequences of that refusal. Plaintiff has failed to state a viable First Amendment claim, and the Individual Defendants are entitled to qualified immunity.

      b.      ***Plaintiff fails to state an equal protection claim.***

Plaintiff alleges Defendants discriminated against him because of his race (Black) and national origin (Africa) in violation of the Equal Protection Clause. "To state a claim of sex discrimination under the Equal Protection Clause and Section 1983, the plaintiff must allege that he 'received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (*citing Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)). "A discriminatory purpose 'implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group.'" *Id*. (*citing Taylor*, 257 F.3d at 473).

A Section 1983 claim against an individual defendant requires a plaintiff to plead "that each Government-official defendant, through *the official's own individual actions*, has violated the Constitution." *Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)) (emphasis added). Only when a complaint pleads and proves "that each defendant individually engaged in actions that caused the unconstitutional harm" can that plaintiff seek relief under Section 1983. *Id*. at 239; *see*, *e.g.*, *Yul Chu v. Mississippi State Univ.*, 592 F. App'x 260, 267 (5th Cir. 2014) (professor's bare allegation that university

12

discriminated against him by denying him tenure differently from white faculty failed to state equal protection claim).

Plaintiffs must allege specific facts to support each element required for an equal protection claim, and failure to do so warrants 12(b)(6) dismissal. *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018). For instance, a general statement "that other similarly situated individuals were treated differently," without pointing to a specific person or providing specifics as to their violations, is not sufficient to state an equal protection claim. *Id*. Even though the Court takes factual allegations as true at the motion to dismiss stage, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (*quoting Iqbal*, 556 U.S. at 678).

Plaintiff's allegations fail to state an equal protection claim. As to the Individual Defendants, Plaintiff alleges only that:

- "On one occasion, Dr. Yi Yang, Chair of the Department, told Plaintiff that 'other faculty members are concerned that you and your brother dominate conversations.'" Compl., at p. 15 [Doc. 1].

- Dr. Huang told Plaintiff his mentoring program was being changed to "protect" her "in light of her anticipated departure from the University." *Id*. at pp. 8, 16.

- Plaintiff's twin brother "was labeled 'disruptive' by four faculty members," including Drs. Barnard and Yang. *Id*. at p. 17.

None of these statements, even if true, are evidence of discriminatory intent. Moreover, only one of the statements, Dr. Yang's purported statement that Plaintiff and his brother "dominate conversations," was both about Plaintiff and made by a Defendant with supervisory authority within the Department.

Plaintiff also alleges that "[u]pon information and belief," he was treated differently that "similarly situated white or U.S.-born student[s]," *id*., but he points to no specific person and

13

makes no factual allegations about their circumstances. He notably does not allege that any non-Black student who refused to complete an Abilities Transcript was treated differently than himself. Plaintiff has failed to state an equal protection claim.[4]

### c. *Plaintiff fails to state a due process claim.*

Plaintiff alleges Defendants violated his procedural and substantive due process rights when they placed him on provisional status. The threshold question in reviewing a due process claim is whether a protected property interest exists. *Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020); *see also Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992) ("If there is no protected property interest, there is no process due."). The U.S. Supreme Court "has not held college academic decisions implicate property or liberty interests, entitling a student to constitutional due-process protections." *Smith v. Davis*, 507 F. App'x 359, 362 (5th Cir. 2013). In the Fifth Circuit, "a student who is not denied access to public education does not have a property or liberty interest implicated," and the "common practice" in reviewing such academic decisions is to avoid constitutional questions by focusing on whether the law was clearly established at the time of the decision. *Id.* at 362-63.

Here, the Individual Defendants are entitled to qualified immunity because there is no clearly established law creating a property interest in "good standing" or non-provisional status. Even in the disciplinary context, the Fifth Circuit has held only that "due process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct." *Plummer v. Univ. of Hous.*, 860 F.3d 767, 773 (5th Cir. 2017) (*citing Dixon v. Ala.*

---

[4] To the extent Plaintiff's allegations can be read to potentially state a claim for race discrimination under Title VI, that claim fails for the same reasons because the statute only prohibits "racial discrimination of the same character as that forbidden by the Equal Protection Clause." *Rollerson v. Brazos River Harbor Navigation Dist.*, 6 F.4th 633, 639 (5th Cir. 2021).

*State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961)); *see also Pickett v. Tex. Tech. Univ. Health Sci. Ctr.*, No. 24-10304, 2024 U.S. App. LEXIS 30592, at *3 (5th Cir. Dec. 4, 2024) (rejecting dismissed graduate student's due process claim cased on an academic dismissal because "continued enrollment in that program is not a protected interest"). Plaintiff has not alleged he was removed – even temporarily – from his graduate program, and his status change was not disciplinary in nature.

Nor does the mentor-mentee document create a cognizable property interest, as it does not limit the University's ability to change the mentorship program. Plaintiff does not, as he suggests, have a property interest in the renewal of his graduate assistantship because he has not alleged a "legitimate claim of entitlement" to it. *Wigginton*, 964 F.3d at 336 (*citing Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)); *see also id* (rejecting *de facto* right to tenure for non-tenured university instructors based on positive performance reviews or informal expectations).

Even if there was an arguable property interest, "[a] public university is not required to afford significant process before dismissing a student on academic grounds; the university need only provide notice explaining the reasons for the 'faculty's dissatisfaction'" and the danger it posed to the student's continued enrollment. *Doe v. Harrell*, 841 F. App'x 663, 670 (5th Cir. 2021) (*citing Bd. of Curators v. Horowitz*, 435 U.S. 78, 85 (1978)). Again, Plaintiff was not dismissed from his program. He was, however, repeatedly informed that the Abilities Transcript was required and specifically warned that his failure to do so could result in placement on provisional status. Plaintiff cannot state a procedural due process claim.

Nor could Plaintiff state a substantive due process claim if he had alleged the existence of a property interest. "Public officials violate substantive due process rights if they act arbitrarily or capriciously." *Jones v. Bd. of Supervisors*, 809 F.3d 231, 240 (5th Cir. 2015); *Finch v. Fort*

15

*Bend Indep. Sch. Dist.*, 333 F.3d 555, 562-63 (5th Cir. 2003). Plaintiff must show that the challenged decision "'so lacked a basis in fact' that it could be said to have been made 'without professional judgment.'" *Id*. (*citing Texas v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998)). Here, Plaintiff himself acknowledged that completion of the Abilities Transcript was an important part of his graduate studies. Defendants' conduct cannot be said to have been arbitrary and capricious, and Plaintiff cannot state a substantive due process claim.

2. ***Plaintiff's claims against the University are barred by the Eleventh Amendment.***

The University is immune from Plaintiff's Section 1983 and breach of contract claims. The Eleventh Amendment provides that: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. The Amendment "grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002) (citation omitted). The University is an arm of the State of Mississippi and is immune from Plaintiff's claims in federal court. *See Doe v. Univ. of Miss.*, 361 F. Supp. 3d 597, 604-06 (S.D. Miss. 2019) (dismissing Section 1983 and breach of contract claims against University of Mississippi due to Eleventh Amendment). Moreover, "[t]he Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought."). *Id*. at 604. Plaintiff's claims against the University should be dismissed for lack of jurisdiction.

3. ***The University is not a "person" for purposes of Section 1983.***

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or

16

causes to be subjected, any citizen of the United State or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. Neither a State, an arm of the State, nor an individual employed by such entity acting in his or her official capacity is considered a "person" acting under color of law. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70, 109 S. Ct. 2304 (1989); *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014); *McNair v. Mississippi*, 43 F. Supp. 3d 679, 685 (N.D. Miss. 2014). Plaintiff's Section 1983 claims against the University fail.

### 4. *Plaintiff's official capacity claims under Section 1983 fail.*

Plaintiff's claims for declaratory and prospective injunctive relief against the individual defendants named in their official capacities are not barred by the Eleventh Amendment because of *Ex parte Young*, 209 U.S. 123 (1908). However, for a state officer to face liability under *Ex parte Young*, that officer must have "some connection" to the requested relief. *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). A defendant who "is not in a position to provide the requested relief" is not a proper party under *Ex parte Young*. *Fairley v. Stalder*, 294 F. App'x 805, 812 (5th Cir. 2008).

Plaintiff's pleadings do not clearly spell out which of the Defendants he believes can provide the requested relief. However, the documents referenced in his Complaint reflect that Dr. Kluck, the Dean of the Graduate School, accepted the Department's recommendation to place him on provisional status. The pleadings do not reflect that Drs. Yang or Barnard had authority to do so on their own, or that Dr. Huang, a non-administrative faculty member, had any say in the matter. Because Plaintiff has failed to adequately plead which Defendants can provide him

17

with relief, Plaintiff's official-capacity claims under Section 1983 should be dismissed against all Defendants.

Regardless of which Defendants remain in their official capacities, though, Plaintiff has not pleaded sufficient facts to support a claim for declaratory or injunctive relief under Section 1983 for the reasons discussed above. He has failed to plausibly allege that he was placed on provisional status because of activity protected by the First Amendment. He has not alleged that any decision-maker singled him out for different treatment because of his race of national origin. He has not identified a protected property interest, and he has not alleged facts that would show a deprivation of any such interest without due process. Plaintiff's official-capacity claims against the Individual Defendants should be dismissed.

## CONCLUSION

Plaintiff recognized the importance of completing a required assignment and was warned about the consequences of failing to do so. He chose not to complete the assignment, and he faced the consequences of which he was warned. His Complaint fails to plausibly state some claims and seeks to pursue other claims from which the Defendants are immune. The Complaint should be dismissed in its entirety.

Respectfully submitted, this the 1st day of October 2025.

UNIVERSITY OF MISSISSIPPI, DR. YI YANG, DR. MARIE BARNARD, DR. ANNETTE KLUCK, AND DR. YINAN HUANG

*/s/ Paul B. Watkins, Jr.*
PAUL B. WATKINS, JR. (MB No. 102348)
*Their Attorney*

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
*pwatkins@mayomallette.com*

Case: 3:25-cv-00250-MPM-JMV Doc #: 29 Filed: 10/01/25 20 of 20 PageID #: 679

## CERTIFICATE OF SERVICE

I, Paul B. Watkins, Jr., the attorney for the Defendants, University of Mississippi, Dr. Yi Yang, Dr. Marie Barnard, Dr. Annette Kluck, and Dr. Yinan Huang, do certify that I have electronically filed this document in the ECF system with the Clerk of the Court which sent notification of the filing to all attorneys of record and have forwarded a copy of this document via U.S. Mail to the following:

> Ehiremen Bennard Eriakha
> 1802 Jackson Avenue West, Apt. 83
> Oxford, MS 38655
> 662-281-4676
> PRO SE

THIS, the 1st day of October 2025.

> */s/ Paul B. Watkins, Jr.*
> PAUL B. WATKINS, JR. (MB NO. 102348)