# UNITED STATES DISTRICT COURT

for the

Northern District of Mississippi

Oxford Division

RECEIVED
OCT 09 2025
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| Ehiremen Bennard Eriakha | ) | Case No.   3:25-cv-00250 |
| *Plaintiff(s)* | ) | |
| -v- | ) | |
| | ) | |
| University of Mississippi; Dr. Yi Yang; Dr. Marie Barnard; Dr. Annette Kluck; Dr. Yinan Huang | ) ) ) | |
| *Defendant(s)* | | |

**CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

1

I.  **INTRODUCTION**

Defendants' oppositions (Doc. 31–34) to Plaintiff's motion for temporary restraining order and preliminary injunction confirm, rather than contest, the need for immediate equitable relief. They do not dispute the central facts: Plaintiff, an international doctoral student with a 4.0 GPA, an unblemished record, and no history of misconduct, was summarily downgraded to provisional status and deprived of his Graduate Research Assistantship and tuition remission mere days into the semester.

Unable to reconcile these undisputed facts with the requirements of due process, Defendants retreat behind procedural abstractions—qualified immunity, sovereign immunity, and jurisdictional formalities—leaving the constitutional injury itself untouched. Such technical defenses cannot obscure what the record unmistakably demonstrates: a sequence of retaliatory, pretextual, and procedurally defective actions that stripped Plaintiff of his academic standing, livelihood, and dignity in violation of the First and Fourteenth Amendments.

The issue before this Court is not one of academic discretion, but of constitutional restraint and equitable urgency. The question is straightforward: may state officials invoke the language of academic governance to conceal retaliation, suppress protected advocacy, and disregard their own written procedures? May a public university extinguish a student's only means of subsistence and lawful status for raising good-faith concerns about fairness and mentoring integrity?

The answer, grounded in both principle and precedent, is no. The record leaves no doubt that Plaintiff's conduct was ethical, transparent, and compliant with institutional policy, while the punishment that followed was retaliatory, coercive, and constitutionally indefensible.

Immediate intervention under *Rule 65* is therefore not only warranted but imperative—to halt ongoing harm, restore the *status quo ante*, and reaffirm the principle that constitutional rights do not yield to administrative expediency. The equitable relief sought here serves not only the Plaintiff's interests but the broader integrity of constitutional governance within public higher education.

## II. IRREPARABLE HARM

The harm at issue is neither speculative nor remote—it is immediate, concrete, and compounding. The Court has already acknowledged Plaintiff's indigence by granting *in forma pauperis* status, thereby confirming the depth of his financial vulnerability. The Graduate Research Assistantship that Defendants terminated without notice, cause, or process was Plaintiff's sole source of livelihood—the means by which he secured food, rent, health insurance, and lawful F-1 visa maintenance.

Its abrupt termination, occurring at the very outset of the semester, has inflicted a continuing injury that no post-hoc monetary remedy can redress. Plaintiff is now more than two months behind on rent and faces escalating housing instability and the imminent risk of displacement—all directly traceable to the abrupt loss of his assistantship. This is not a case of financial inconvenience; it is the deprivation of subsistence itself—the precise form of harm that courts have long recognized as irreparable per se. See ***Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 295 (5th Cir. 2012)***.

Out of necessity, Plaintiff and his twin brother have established a verified GoFundMe campaign to secure minimal support for food, rent, and other basic living expenses during this period of deprivation (available at *https://shorturl.at/Qzkr0*). This step underscores the immediacy of the

harm and the absence of alternative means of survival—it is not an appeal for sympathy, but factual confirmation of the ongoing human cost of Defendants' unlawful acts.

The consequences extend far beyond financial loss. The continuing deprivation of livelihood and tuition remission threatens irreversible damage to Plaintiff's academic progress, immigration status, and physical and mental wellbeing. The uncertainty surrounding his basic sustenance and educational future has caused sustained psychological distress, impairing his ability to concentrate on coursework and research—harms that deepen with each passing day and cannot be undone by later relief.

The equitable purpose of **Rule 65** is to prevent exactly this kind of cascading, multifaceted injury—where constitutional rights, educational opportunity, and the means of survival are endangered long before a final judgment can be reached. Every additional day of deprivation compounds the harm and magnifies the injustice.

To delay intervention now would be to allow irreparable harm to harden into permanent loss—a result wholly inconsistent with the equitable mandate of this Court and the constitutional values it is sworn to uphold.

### III.   LIKELIHOOD OF SUCCESS ON THE MERITS

The record—comprising contemporaneous emails, internal memoranda, and official University documents—establishes a clear, unbroken chronology linking Plaintiff's protected advocacy to the retaliatory actions that swiftly followed. Within mere weeks of Plaintiff's written appeals for procedural fairness and mentoring integrity, Defendants escalated from informal pressure to formal sanction. They first unilaterally restructured his mentoring relationship in violation of the signed Mentor–Mentee Agreement, then issued the **June 30** "disciplinary memorandum", downgraded

his academic status on **August 21**, ratified that downgrade on the morning of **August 22**, and terminated his Graduate Research Assistantship that same evening—all within a compressed window of administrative activity that directly followed his protected communications.

At no point did Defendants identify a single instance of academic deficiency, misconduct, or performance concern that could plausibly justify their actions. Each adverse measure directly contravened both the University's internal policies and the procedural safeguards guaranteed by the Fourteenth Amendment. The close temporal proximity between Plaintiff's good-faith procedural inquiries and the swift imposition of punitive measures—coupled with the absence of any legitimate academic rationale—creates a strong presumption of retaliatory motive and administrative coercion rather than bona fide academic judgment.

Taken together, these facts establish a compelling inference of retaliation, procedural due-process violations, and arbitrary deprivation of a protected property and liberty interest. The evidence easily surpasses the plausibility threshold required under *Rule 65*, rendering Plaintiff's likelihood of success on the merits not merely credible, but manifest.

Where the record itself reveals undisputed deviations from established policy, shifting justifications for adverse action, and a clear causal nexus between protected speech and retaliation, the merits weigh decisively in favor of equitable relief.

### IV. BALANCE OF EQUITIES

The balance of equities in this case weighs decisively in favor of preservation, not punishment. The relief Plaintiff seeks—temporary reinstatement of his academic standing and Graduate Research Assistantship pending adjudication—imposes no extraordinary burden on the University.

It simply restores the *status quo ante* and requires Defendants to honor the procedural fairness, institutional integrity, and constitutional protections that their own policies already mandate.

By contrast, continued deprivation inflicts cascading and irreversible harm on Plaintiff's livelihood, education, and lawful immigration status. The assistantship was Plaintiff's sole means of sustenance—supporting food, housing, tuition, and visa compliance. Its ongoing denial jeopardizes not only his academic progress but his basic survival. The harm to Plaintiff is immediate and existential; the burden on Defendants is administrative and minimal.

Equity does not permit public officials to invoke procedural formality or immunity as a shield while their actions extinguish a student's means of survival and undermine constitutional guarantees. When one party faces the loss of food, housing, and lawful status, and the other faces only the duty to comply with established law, the balance of equities is not merely tilted—it is categorical.

## V.   PUBLIC INTEREST

The public interest is not advanced by silence in the face of constitutional violations. It is advanced by ensuring that public institutions—particularly universities entrusted with educating future leaders—uphold the foundational principles of fairness, transparency, and due process. Enforcing these principles protects not only the rights of this Plaintiff, but also the broader integrity of academic governance and public confidence in higher education.

When retaliation, arbitrariness, or procedural abuse are left unchecked, faith in the fairness of public education erodes, and constitutional protections lose meaning precisely where they should carry their greatest force. The rule of law demands that no public university, however esteemed, may convert ethical advocacy or policy compliance into grounds for punishment.

Granting equitable relief here would reaffirm that public universities are governed by law, not discretion; by fairness, not retaliation. It would send a clear message that constitutional norms are not aspirational ideals but binding commitments that define the legitimacy of public institutions.

In preserving those commitments, this Court would act not only in Plaintiff's interest, but in the public's enduring interest in justice, accountability, and the integrity of higher education. Upholding those values through timely intervention strengthens the very trust upon which the authority of public institutions depends.

## VI.  CONCLUSION AND RELIEF REQUESTED

Plaintiff has met, and exceeded, each element required for emergency equitable relief under *Rule 65*. The record demonstrates a compelling likelihood of success on the merits, establishes ongoing and irreparable harm, confirms that the balance of equities overwhelmingly favors preservation over punishment, and shows that the public interest is best served by enforcing constitutional fairness and accountability within public education.

The relief sought is narrow, temporary, and restorative—not disruptive. It neither adjudicates the ultimate merits nor intrudes upon legitimate academic discretion. It merely restores the *status quo ante*, the condition that existed before the contested acts occurred, so that this Court may later resolve the issues on a full and undistorted record.

Each day of continued deprivation compounds both constitutional injury and human hardship. Equity exists to prevent precisely this—to halt irreparable harm before it calcifies into permanent loss.

WHEREFORE, for the reasons set forth above and in prior filings, Plaintiff respectfully requests that this Honorable Court:

1. GRANT the Motion for Temporary Restraining Order and Preliminary Injunction;

2. ORDER the immediate restoration of Plaintiff's academic standing, Graduate Research Assistantship, and tuition remission pending final adjudication; and

3. AWARD such other and further equitable relief as justice and the Court's conscience may require.

Respectfully submitted, this 9th day of October 2025.

_____

Ehiremen Bennard Eriakha

Plaintiff, Pro se

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2025, I delivered the foregoing to the Clerk of Court for filing and served a true and correct copy by email upon:

**Paul B. Watkins, Esq.**

Mayo Mallette PLLC

Email: pwatkins@mayomallette.com

(cc: Brooke Jackson, bjackson@mayomallette.com)

Executed this 9th day of October, 2025, in Oxford, Mississippi.

_____

Ehiremen Bennard Eriakha

Plaintiff, pro se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhabernard@gmail.com