IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**EHIREMEN BENNARD ERIAKHA**                                       **PLAINTIFF**

v.                                                                                NO. 3:25-CV-250-DMB-RP

**UNIVERSITY OF MISSISSIPPI, et al.**                                 **DEFENDANTS**

**DEFENDANTS' REBUTTAL IN SUPPORT OF MOTION TO DISMISS**

      The facts of this case are simple and undisputed. Plaintiff Ehiremen Bennard Eriakha, a graduate student in the University of Mississippi's Department of Pharmacy Administration, was assigned a developmental mentor from the Department faculty. Plaintiff was required to meet with his mentor to complete an evaluation tool called an "Abilities Transcript." When Plaintiff's mentor announced she was leaving the University, the Department Chair stepped in as a "co-mentor" during the transition. Plaintiff did not meet with his mentors or complete the Abilities Transcript because he did not want to attend an in-person meeting and because he claimed the Chair could not serve as his co-mentor. When he failed to complete the project after several extensions, he was placed on provisional enrollment status, which made him ineligible for a graduate assistantship during the Fall 2025 semester. Plaintiff has now sued the University and four of its employees for alleged constitutional violations and breach of contract. The Court lacks jurisdiction over certain of Plaintiff's claims, and he fails to state a claim as to the rest.

1.      ***The record does not support Plaintiff's characterization of the facts.***

      The bulk of Plaintiff's Response to Defendants' Motion to Dismiss is dedicated to disputing Defendants' "characterizations" of his pleadings and the incorporated documents. Plaintiff does not, however, argue that any of the documents referenced in Defendants' Motion and accompanying Brief are not properly before the Court at this stage. While Plaintiff may not

agree with Defendants' choice of words, his own wordsmithing does not change the facts in the record or the legal issues before the Court.

For example, Plaintiff repeatedly claims he did not "refuse" to meet with his mentors and complete the Abilities Transcript as instructed by the Department, claiming instead that he "sought only to ensure that its completion occurred within lawful, policy-compliant mentoring conditions," "exercised his right and duty to seek clarification," and/or "paused participation pending clarification of a newly imposed and procedurally irregular structure." Brf., at 4, 13, 17 [Doc. 36]. However, it is undisputed that Plaintiff did not meet with Drs. Yang and Huang when asked to do so and that he did not complete the Abilities Transcript despite being warned of the consequences.

Plaintiff also claims he was constructively expelled from his academic program because the Department did not renew his graduate assistantship, which he claims was "the foundation of [his] academic continuity." *Id*. at 6. However, there is no dispute he is still a graduate student at the University – his own Complaint alleges as much. *See* Compl., at p.5 [Doc. 1]. Moreover, while there is no Fifth Circuit caselaw recognizing "constructive expulsion" in this context, at least one district court faced with such a claim found that "the closest legal analogy would be constructive discharge cases under Title VII." *Campbell v. Lamar Inst. of Tech.*, No. 1:14-cv-399, 2015 U.S. Dist. LEXIS 194447, at *26 (E.D. Tex. Aug. 13, 2015). Constructive discharge cases, of course, ask whether an otherwise voluntary resignation constitutes an adverse employment action. *See Haley v. All. Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004) ("Constructive discharge occurs when an employee has quit her job under circumstances that are treated as an involuntary termination of employment."). There is no allegation that Plaintiff has withdrawn from school.

Plaintiff also repeatedly claims that his mentorship agreement with Dr. Huang did not allow Dr. Yang to participate in his mentorship program, arguing that this document "was not a mere formality; it was a bilateral commitment that bound both parties – and, by extension, the Department itself – to a relationship founded on trust, transparency, mutual respect, and psychological safety." Brf., at 9 [Doc. 36]. However, nothing in that document precluded the Department or its Chair from assigning a new mentor or a "co-mentor," particularly where the current mentor is preparing to leave the institution. [Doc. 9-1].

Plaintiff further tries to downplay the importance of the Abilities Transcript, arguing that it is "not an academic 'project' or graded deliverable" and thus should not have been "[r]epurpos[ed] … into a mechanism for sanction…." Brf., at 9 [Doc. 36]. However, there is no dispute that the Abilities Transcript was a program requirement – Plaintiff's own emails acknowledge this was the case. [Doc. 9-2]. The Graduate Program Coordinator confirmed this requirement, told Plaintiff the faculty needed his Abilities Transcript to discuss his progress, and told him that reappointment for his graduate assistantship could hang in the balance if he did not complete it. [Docs. 9-2, 9-3].

Plaintiff has not identified any potential issues of fact or demonstrated any need for discovery beyond the pleadings. His Complaint should be dismissed.

2.      *The Individual Defendants are entitled to qualified immunity.*

Plaintiff claims the Individual Defendants are not entitled to qualified immunity because they engaged in "intentional misconduct far outside lawful discretion: transforming a self-reflective mentoring tool into a disciplinary weapon, downgrading academic status in disregard of due process, and terminating employment within twenty-four hours." Brf., at 27 [Doc. 36]. Plaintiff has failed to show that any of the acts he alleges violate his clearly-established

3

constitutional rights, and his allegations do not defeat the Individual Plaintiffs' qualified immunity defense.

To defeat the defense, Plaintiff must show that "existing precedent [has] placed the statutory or constitutional question confronted by the official beyond debate." *Plumhoff v. Rickard*, 572 U.S. 765, 79 (2014) (internal citations omitted). In other words, Plaintiff must cite a specific Fifth Circuit or Supreme Court case on point that does not define the law at a "high level of generality." *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (*citing Cass v. City of Abilene*, 814 F.3d 721, 732-33 (5th Cir. 2016)).

Plaintiff's briefing invokes constitutional rights only at the most general level: "[t]he rights at stake – freedom from retaliation (*Pickering*), procedural due process in disciplinary actions (*Dixon*; *Goss*), and equal protection from arbitrary treatment (*Olech*) were long and clearly established." Brf., at 27 [Doc. 36]. These broad statements do not show that the Individual Defendants had "fair warning" that their specific alleged conduct was unconstitutional. *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (*citing Tolan v. Cotton*, 572 U.S. 650, 656 (2014)); *see id*. at 732 (holding plaintiff's statement that "it is clearly established in the law that citizens are protected against unjustified, excessive police force" insufficient to overcome qualified immunity).

Plaintiff has not cited any case in support of his assertion that he engaged in "protected advocacy" or that the Individual Defendants violated his First Amendment rights when they told him to complete his Abilities Transcript and placed him on provisional status after he failed to do so. Brf., at 27 [Doc. 36]. In fact, the only case Plaintiff cites for a specific point of law is *Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999), a Second Circuit case allowing a third-party First Amendment retaliation claim. As Defendants pointed out in their primary brief, district courts in

4

this Circuit have already rejected the argument that any such right – much less a clearly established right – exists in the Fifth Circuit. See Brf., at 11 [Doc. 29]; *see also Vann*, 884 F.3d at 310 (affirming qualified immunity defense where plaintiff cited only one out-of-circuit case in support of argument).

Nor has Plaintiff plausibly alleged that any Defendant "singled out a particular group for disparate treatment and selected [her] course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (*citing Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)). None of the statements he attributes to the Individual Defendants reflect discriminatory animus. Moreover, the Complaint does not plausibly allege that Dr. Yang stepped in as a co-mentor in advance of Dr. Huang's departure from the University *as an act of intentional race discrimination*, and Plaintiff does not allege that white students were *not* placed on provisional status after they failed to complete an Abilities Transcript.

Finally, Plaintiff – who is still enrolled in his graduate program at the University – has not cited any specific caselaw identifying a protected property interest or putting the Individual Defendants on notice that their actions deprived him of that interest without due process. Plaintiff asserts his mentorship agreement with Dr. Huang gave him a "legitimate expectation of stability within the mentoring relationship" that constituted a protected property interest. Brf., at 34 [Doc. 36]. However, that document did not preclude the Department from assigning him a new mentor or a co-mentor, and Plaintiff cites no caselaw identifying a property interest in a mentorship relationship. Plaintiff also argues he "held a protected property interest in his Graduate Research Assistantship, renewed for two consecutive years and serving as his sole source of income." *Id*. at 34-35. This argument fails for the reasons set forth in Defendants' primary brief. *See* Brf., at

15 [Doc. 29] (citing *Wigginton v. Jones*, 964 F.3d 329, 336 (5th Cir. 2020)).

The Individual Defendants are entitled to qualified immunity, both because Plaintiff has failed to cite specific caselaw identifying their purported constitutional violations, and because he has failed to plead the essential elements of those claims.

3.  ***Plaintiff has not pleaded facts sufficient to invoke* Ex parte Young.**

Plaintiff does not dispute that the Eleventh Amendment bars his constitutional and contractual claims for money damages against the University, but he claims he can pursue prospective relief under *Ex parte Young*, 209 U.S. 123 (1908). However, his response to the Motion to Dismiss mentions only the *past* acts with which he charges the Defendants without identifying which of them are in "a position to provide the requested relief." *Fairley v. Stalder*, 294 F. App'x 805, 812 (5th Cir. 2008):

> Dr. Marie Barnard *initiated* the downgrade to "provisional" status with deliberate indifference to procedural safeguards; Dr. Yi Yang *approved* and *implemented* the downgrade and termination despite full knowledge of their illegality; Dr. Annette Kluck, as Dean, *ratified* both actions, conferring institutional legitimacy on conduct she had the authority – and duty – to prevent; Dr. Yinan Huang, Plaintiff's assigned mentor, *acquiesced* in and *enforced* the coercive "co-mentorship" structure that served as the retaliatory pretext.

Brf., at 26 [Doc. 36] (emphasis added). In any event, the actions with which he charges these Defendants – assigning him a co-mentor and placing him on provisional status after he failed to complete an Abilities Transcript – did not violate his constitutional rights for the reasons discussed above and in Defendants' primary brief.

## Conclusion

Plaintiff has failed to state a claim or rebut Defendants' jurisdictional arguments. His claims should be dismissed in their entirety.

Respectfully submitted, this the 16th day of October 2025.

6

                                            **UNIVERSITY OF MISSISSIPPI, DR. YI YANG, DR. MARIE BARNARD, DR. ANNETTE KLUCK, AND DR. YINAN HUANG**

                                            */s/ Paul B. Watkins, Jr.*
                                            PAUL B. WATKINS, JR. (MB No. 102348)
                                            *Their Attorney*

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
*pwatkins@mayomallette.com*

## CERTIFICATE OF SERVICE

  I, Paul B. Watkins, Jr., the attorney for the Defendants, University of Mississippi, Dr. Yi Yang, Dr. Marie Barnard, Dr. Annette Kluck, and Dr. Yinan Huang, do certify that I have electronically filed this document in the ECF system with the Clerk of the Court which sent notification of the filing to all attorneys of record and have forwarded a copy of this document via U.S. Mail to the following:

  Ehiremen Bennard Eriakha
  1802 Jackson Avenue West, Apt. 83
  Oxford, MS 38655
  662-281-4676
  PRO SE

  THIS, the 16th day of October 2025.

            */s/ Paul B. Watkins, Jr.*
            PAUL B. WATKINS, JR. (MB NO. 102348)