RECEIVED
JAN 09 2026
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

| | | |
|---|---|---|
| OMOKHODION ALFRED ERIAKHA | | PLAINTIFF |
| | ) | |
| v. | ) CIVIL ACTION NO.: 3:25-cv-226-MPM-JMV | |
| | ) | |
| UNIVERSITY OF MISSISSIPPI, ET AL. | | DEFENDANTS |

*Consolidated With*

| | | |
|---|---|---|
| EHIREMEN BENNARD ERIAKHA | | PLAINTIFF |
| | ) | |
| v. | ) CIVIL ACTION NO.: 3:25-cv-250-DMB-RP | |
| | ) | |
| UNIVERSITY OF MISSISSIPPI, ET AL. | | DEFENDANTS |

**MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR RECUSAL**

*(28 U.S.C. § 455(a) and § 455(b); and, to the extent applicable, 28 U.S.C. § 144)*

*(Filed by Plaintiff Omokhodion Alfred Eriakha)*

1

Plaintiff Omokhodion Alfred Eriakha, proceeding *pro se*, respectfully moves for recusal/disqualification of the presiding judge pursuant to *28 U.S.C. § 455(a)* and, to the extent applicable, *§ 455(b)*. Plaintiff brings this motion reluctantly and in good faith, solely to preserve the appearance of impartiality and maintain public confidence in the adjudication of this matter.

To the extent *28 U.S.C. § 144* may be implicated, Plaintiff notes that *§ 144* provides an affidavit-based procedure for asserting personal bias or prejudice. Plaintiff does not invoke *§ 144* absent a timely and legally sufficient affidavit as required by statute, and therefore proceeds primarily under the objective appearance-of-impartiality standard of *28 U.S.C. § 455(a)*.

## I. GOVERNING LEGAL STANDARDS

### A. 28 U.S.C. § 455(a): Objective Appearance-of-Impartiality Standard

Under *28 U.S.C. § 455(a)*, a judge must disqualify himself "*in any proceeding in which his impartiality might reasonably be questioned.*" The standard is objective and asks whether a reasonable person, fully informed of the relevant facts, would question the judge's impartiality. A showing of actual bias is not required.

Accordingly, the inquiry is not whether impartiality in fact exists, but whether an objective, fully informed observer would reasonably question the Court's impartiality under the circumstances presented.

### B. 28 U.S.C. § 455(b): Enumerated Disqualification Grounds

*Section 455(b)* sets forth additional, enumerated grounds for mandatory disqualification, including circumstances such as personal bias or prejudice concerning a party, prior involvement as counsel or witness, personal knowledge of disputed evidentiary facts, or a financial or other disqualifying interest.

2

Plaintiff does not assert that any ground for mandatory disqualification under *§ 455(b)* is definitively established, except to the extent the Court determines from the record that a *§ 455(b)* basis is implicated. Plaintiff references *§ 455(b)* solely to preserve the statutory framework governing disqualification beyond *§ 455(a)*'s appearance standard.

### C. 28 U.S.C. § 144: Affidavit-Based Procedure for Alleged Personal Bias (Not Invoked Absent Affidavit)

Under *28 U.S.C. § 144*, a party may seek disqualification based on personal bias or prejudice by filing a timely and legally sufficient affidavit stating specific facts and reasons supporting the belief that such bias or prejudice exists.

Plaintiff does not invoke *§ 144* absent compliance with its affidavit requirement. Plaintiff does not allege personal bias or prejudice within the meaning of *§ 144* in this motion, and therefore proceeds primarily under the objective appearance-of-impartiality standard of *§ 455(a)*.

## II. RECORD-BASED CLARIFICATIONS RELEVANT TO § 455(a)

Plaintiff respectfully submits the following record-based clarifications, each supported by docket entries and/or documentary materials already part of the record. Plaintiff does not contend that any discrepancy was intentional. Plaintiff submits only that, considered cumulatively, these circumstances bear on the appearance of impartiality contemplated by *28 U.S.C. § 455(a)*.

### A. Service and Notice of Service

The Court's *September 19, 2025 Memorandum Opinion* stated that "*the Defendants in this matter have not been served*" (***Order, Dkt. No. 16 at 4***). The docket reflected otherwise at the time the Memorandum Opinion issued.

3

On September 10, 2025, the United States Marshal executed service on the University of Mississippi and the named defendants. Proofs of service were filed on September 15, 2025 (***Dkt. No. 15, Summons Returned Executed***). The Memorandum Opinion issued on September 19, 2025 (***Dkt. No. 16***).

This clarification is significant because the Memorandum Opinion referenced the absence of service, although proofs of service had been filed on the docket prior to issuance of the Memorandum Opinion.

### B. Procedural Posture and Interpretive Frame at Time of Ruling

At the time the Court issued its *September 19, 2025 Memorandum Opinion* denying Plaintiff's motions for temporary restraining order and preliminary injunction (***Dkt. No. 16***), Defendants had not filed an answer or other responsive pleading, and the record had not been developed through discovery. The ruling therefore issued at an early procedural stage, in which the factual record before the Court consisted principally of Plaintiff's pleadings and sworn submissions filed in support of emergency relief under ***Rule 65***.

Plaintiff submits this procedural context solely to note that, at such an early stage, the customary framework for evaluating emergency ***Rule 65*** relief generally contemplates assessment of the movant's sworn submissions on the existing record, without resolving disputed factual issues or making credibility determinations in the absence of an evidentiary record.

Against that backdrop, Plaintiff notes that the *September 19, 2025 Memorandum Opinion* appeared to adopt certain factual characterizations—addressed below—that are not readily aligned with the customary early-stage posture of emergency ***Rule 65*** proceedings, in which the record is undeveloped and material factual disputes are ordinarily not resolved through factual findings.

4

Plaintiff raises this point solely to the extent that a reasonable, fully informed observer could view the cumulative, record-based circumstances described in this motion as bearing on the appearance of impartiality contemplated by *28 U.S.C. § 455(a)*.

### C. Sequence of Accommodation Requests

The Court's *September 19, 2025 Memorandum Opinion* stated that Plaintiff was "*directed to go through the University's Student Disability Services (SDS)*" when seeking accommodations and that *faculty examiners declined to alter the examination format despite Plaintiff's request* (***Order, Dkt. No. 16 at 1***). Plaintiff's contemporaneous records reflect a different sequence.

As documented in the record, at the time Plaintiff submitted his accommodation requests, those requests were denied by the Department, and the contemporaneous records do not reflect that any Department official directed Plaintiff to SDS during April or May 2025, the period in which the accommodation requests were made.

The chronology reflected in the record is as follows:

1. On April 25, 2025, Plaintiff independently contacted Student Disability Services (SDS) to inquire about exam accommodations (***Exhibit Z10***).
2. SDS advised that, absent any written policy barring such requests, Plaintiff could submit directly to the Department, and that once submitted, the Department was responsible for responding and determining how to proceed (***Exhibit Z10***).
3. Relying on this guidance, Plaintiff submitted written requests to the Department Chair on April 27, 2025 (***Exhibit A***).
4. The Department categorically denied those requests on May 5, 7, and 9, 2025, without engaging in the required interactive process (***Exhibit B***).

5

5. Following the Department's denials, on May 9, 2025, Plaintiff again contacted SDS and escalated his concerns to senior administrators, including the Provost and the Graduate School Dean (***Exhibits Z10, D, C***).

6. Senior administrators responded and affirmed the Department's position (***Exhibits E and C – Dean Kluck's June 2, 2025 letter and June 25, 2025 correspondence***).

7. SDS provided a substantive response on June 4, 2025, more than one month after Plaintiff's initial inquiry (***Exhibit Z10***).

This clarification is offered only because, when considered alongside the other record-based circumstances described in this motion, a reasonable and fully informed observer could view the sequencing reflected in the Memorandum Opinion as differing from the chronology documented in the record, and could consider that divergence relevant to the appearance of impartiality contemplated by *28 U.S.C. § 455(a)*.

### D. Tension Between the Characterization of "Failure" to Appeal and the Acknowledged Absence of Factual Detail

The Court's *September 19, 2025 Memorandum Opinion* stated that Plaintiff "failed to" use the University's formal appeal procedures after being directed to do so (***Order, Dkt. No. 16 at 3***). The Memorandum Opinion also expressly noted that the June 30, 2025 disciplinary memorandum contained no factual details and that "*the details of the incident were not shared with the Court*" (***id. at 2***). Plaintiff acknowledges that the June 30, 2025 disciplinary memorandum lacked factual specification.

After receiving the memorandum, Plaintiff repeatedly requested identification of the specific conduct, words, or policy provisions alleged to constitute "disruption." The record reflects that no

6

administrator or faculty member provided those particulars, either in the memorandum itself or in subsequent correspondence. In the absence of any factual specification, Plaintiff lacked the information necessary to meaningfully respond to the allegation or to pursue an informed appeal addressing the factual basis of the charge.

Plaintiff did not refuse to appeal. Between July 7 and July 15, 2025, Plaintiff submitted written rebuttals and due-process objections expressly stating that he was prepared to pursue the University's formal appeal procedures once the necessary factual and policy particulars were provided (***Exhibits L and N***). Plaintiff's written submissions reflected that he could not pursue a meaningful appeal because the University had not provided the foundational information necessary to frame or substantively present appellate review—namely: (1) identification of the conduct alleged, (2) citation to the governing rule or policy purportedly violated, and (3) disclosure of supporting evidence (***Exhibit Z11***).

On July 10, 2025, Assistant Provost Dr. Jennifer Simmons acknowledged these objections in writing (***Exhibit M***). The record further reflects that the requested particulars were not supplied and that, thereafter, the University attempted to characterize Plaintiff's written rebuttals and due-process objections as an "appeal," notwithstanding Plaintiff's stated position that appellate review could not be meaningfully pursued absent disclosure of the underlying factual basis (***Exhibit O***).

Plaintiff submits this context solely because, when viewed cumulatively with the other record-based circumstances described in this motion, a reasonable and fully informed observer could perceive tension between the acknowledged absence of factual detail and the characterization that Plaintiff "failed" to appeal.

7

### E. Tension Between the Characterization of the Abilities Transcript as a "Non-Coursework Academic Performance Expectation" and the Department's Written Materials

The Court's *September 19, 2025 Memorandum Opinion* stated that Plaintiff was threatened with provisional status for *"failing to meet required non-coursework academic performance expectations"* (***Order, Dkt. No. 16 at 2***). Plaintiff's contemporaneous submissions reflected that the basis for the threatened status action concerned the Abilities Transcript ("AT"), rather than any identified deficiency in academic performance.

The Department's Abilities Transcript Manual described the AT as a developmental self-assessment process intended to promote reflection and structured faculty–student dialogue, and expressly stated that the AT was not a grading instrument and was not a report-card mechanism for passing or failing (***Exhibit Z9***). The Manual characterized the AT as a tool to facilitate mentoring discussions and professional development, rather than an evaluative academic measure.

The Department's Policies and Procedures Guide likewise did not identify completion of the AT as a degree milestone, graduation prerequisite, or formal condition of degree progression comparable to required coursework, comprehensive examinations, dissertation milestones, or other academic requirements (***Exhibit BB***).

Plaintiff submits this clarification solely to provide context regarding the procedural narrative reflected in the Memorandum Opinion. Specifically, the AT was characterized as a *"non-coursework academic performance expectation,"* whereas the Department's written materials described it as a developmental self-assessment and mentoring tool rather than an evaluative academic milestone.

8

Plaintiff raises this point only insofar as, when viewed cumulatively with the other record-based circumstances described in this motion, a reasonable, fully informed observer could consider the distinction relevant to the appearance of impartiality contemplated by *28 U.S.C. § 455(a)*.

### III.  APPEARANCE OF IMPARTIALITY CONCERN

Plaintiff does not contend that any single record-based circumstance identified above, considered in isolation, mandates recusal. Plaintiff further recognizes that adverse rulings, standing alone, do not constitute a basis for disqualification. Rather, Plaintiff submits that, when viewed cumulatively and in light of the continuing posture of Plaintiff's claims, the circumstances described above could lead a reasonable, fully informed observer to question whether continued presiding would maintain the appearance of impartiality required by *28 U.S.C. § 455(a)*.

Plaintiff brings this motion prior to further merits determinations and does so reluctantly and in good faith, solely to preserve public confidence in the fairness, neutrality, and integrity of these proceedings.

### IV.  RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Recuse or disqualify itself from further proceedings in this matter pursuant to *28 U.S.C. § 455(a)* and, to the extent applicable, *§ 455(b)*;
2. Direct that this matter be reassigned by the Clerk of Court in accordance with the Court's ordinary reassignment procedures; and
3. Grant such other and further relief as the Court deems just and proper.

9

Plaintiff further requests, only to the extent the Court deems appropriate, that further merits proceedings be stayed pending resolution of this motion, in order to preserve the appearance of impartiality and to avoid unnecessary merits determinations while disqualification is under consideration.

Respectfully submitted this 9th day of January, 2026.

_/s/ Antedri_

Omokhodion Alfred Eriakha

Plaintiff, Pro Se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhab@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, a true and correct copy of the foregoing Memorandum brief in support of Motion for Recusal was filed with the Clerk of Court and served by electronic mail upon:

**Paul B. Watkins**, Esq.

Mayo Mallette PLLC

Email: pwatkins@mayomallette.com

(cc: Brooke Jackson, bjackson@mayomallette.com)

Executed this 9th day of January, 2026, in Oxford, Mississippi.

_____

Omokhodion Alfred Eriakha

Plaintiff, pro se

1802 Jackson Ave. W., Apt. 83

Oxford, MS 38655

Tel: (662) 281-4676

Email: eriakhab@gmail.com